**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE FARM MUTUAL AUTOMOBILE** | : | CIVIL ACTION |
| **INSURANCE COMPANY, <u>et al.</u>,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **STEPHEN FICCHI, <u>et al.</u>,** | : | |
| | : | |
| **Defendants.** | : | NO. 10-555 |

<u>**M E M O R A N D U M**</u>

G<span style="font-variant:small-caps">ENE</span> E.K. P<span style="font-variant:small-caps">RATTER</span>                                                           J<span style="font-variant:small-caps">UNE</span> 10, 2011
U.S. D<span style="font-variant:small-caps">ISTRICT</span> C<span style="font-variant:small-caps">OURT</span> J<span style="font-variant:small-caps">UDGE</span>

**Introduction**

State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty

Company (jointly, "State Farm") filed an eight-count Amended Complaint against several

doctors and their associated medical offices. In this insurance fraud action, State Farm alleges

that Drs. Ficchi, Knox, and Shenko, along with their respective practices, worked together to bilk

State Farm of money by, *inter alia*, submitting false claims for services that were not actually

rendered to State Farm insureds, by providing State Farm insureds with unnecessary services, and

by referring patients to each other for unnecessary services. Accordingly, State Farm alleges that

the doctors and their practices committed fraud, statutory insurance fraud, conspiracy, and

concerted tortious action. State Farm also claims the defendants violated and conspired to

violate the civil Racketeering and Corrupt Influence Organizations Act ("RICO"). In addition,

State Farm contends that the doctors and their practices were unjustly enriched by their actions,

and that the Court should order disgorgement and restitution.

The Defendants move to dismiss State Farm's claims. For the reasons explained below, the Court will grant the Motion, but will permit State Farm to file a second amended complaint.

**Factual and Procedural Background**

As described in the Amended Complaint, Ficchi P.C. provided chiropractic, medical, diagnostic, and/or physical therapy treatment to persons injured in accidents. Am. Compl. ¶ 2. Dr. Ficchi operated Ficchi P.C. at locations in Bensalem, South Philadelphia, and Olney. Earnings from these facilities (each of which is a named defendant) were paid out to him. Id. ¶ 19. Dr. Shenko operated Ortho-Sport and receipts from that practice were paid to him. Id. ¶ 20. Dr. Knox, in turn, operated a business in his personal name and money from that business was paid over to him. Id. ¶ 21. These individuals, in conjunction with the medical centers they operated, are referred to together as the "Ficchi Defendants" where appropriate in this Memorandum. The medical centers are collectively referred to as "Defendant Medical Offices."

State Farm contends that the Ficchi Defendants were active participants in a conspiracy and scheme to defraud State Farm by producing and submitting "false, misleading, inaccurate, and/or fraudulent medical records, statements, reports, bills and/or documents and/or representations." Id. ¶ 14. These documents relate to patients who were involved in motor vehicle accidents and who went to the Defendant Medical Offices for post-accident treatments. Id. The Ficchi Defendants submitted allegedly false medical reports, bills, statements and other documents with the intention that they would generate payments from State Farm for allegedly reasonable and necessary treatment, testing, and other services performed on either State Farm's

insureds, individuals allegedly harmed by State Farm's insureds, or individuals allegedly harmed by individuals without, or without sufficient, motor vehicle insurance.  <u>Id.</u> ¶ 15-17.  State Farm paid bills related to these alleged services, examples of which State Farm provides in paragraph 49 of its Amended Complaint.  <u>Id.</u>

According to State Farm, after motor vehicle accidents, individuals claiming to be injured went to the Defendant Medical Offices and were placed on a predetermined treatment plan established by Dr. Ficchi.  This predetermined treatment plan was not implemented because of medical necessity or expected benefit to the patients.  <u>Id.</u> ¶ 22.  Instead, the predetermined treatment plan allegedly was created to support past and future billing for services used to support injury claims, and to magnify or misstate the condition of the patients.  <u>Id.</u>  Documented services ostensibly provided to allegedly injured individuals were not actually provided, were not provided for medical necessity, or were excessive.  <u>Id.</u> ¶ 24.  The Ficchi Defendants also prepared records, statements, bills and other documents which listed false, misleading, or exaggerated medical conditions or injuries allegedly caused by motor vehicle accidents.  <u>Id.</u> ¶ 25.  Additionally, they generated standard medical reports that contained false or exaggerated reports about individuals with whom there was no doctor-patient relationship, and which were used by attorneys who referred patients to the Ficchi Defendants in order to support personal injury claims.  <u>Id.</u> ¶ 26.  Fraudulent reports and bills were prepared by the Ficchi Defendants and sent in order to obtain payments from State Farm with the knowledge and consent of Drs. Ficchi, Shenko, and Knox.  <u>Id.</u> ¶ 36.

State Farm identifies approximately 80 purportedly unique records that it alleges were sent through mails or wires in furtherance of the scheme to defraud described above.  <u>See</u> <u>id.</u> ¶

49. Some of these identified records include detail as to the claim number and the sender, and some also include the attorney recipient and the approximate range or specific date on which the records were sent to State Farm.  Id.  State Farm alleges that the Ficchi Defendants knew that the submissions were false and that State Farm would rely on the false submissions when making payment decisions.  Id. ¶ 50.

State Farm contends that Drs. Ficchi, Knox and Shenko all communicated with each other regarding the alleged patient services and all knew that the patients were to be treated according to the standardized plan (which included referrals for unnecessary consultations, examinations, and/or services).  The Defendants understood how the actions of the others benefitted them all.  Id. ¶ 35.  Drs. Shenko and Knox paid kickbacks to Dr. Ficchi and his offices for the opportunity to provide extraneous services for which they could bill State Farm.  Id. ¶ 28, 31-33.  As part of the alleged kickback arrangement, Dr. Shenko would also confirm the diagnosis of the first doctor, falsely conclude that the patient had an abnormal condition as a result of an accident, and recommend additional, but unnecessary, treatment.  Id. ¶ 29.  The scheme to defraud State Farm by submitting fraudulent records was facilitated by the alleged independent diagnosis/conclusions of Drs. Knox and Shenko, which supported the need to make payments.  Id. ¶ 54.  The Ficchi Defendants advanced their scheme by falsifying documents, by providing false testimony, and by altering patient files (among other things) to keep State Farm from discovering the scheme.  Id. ¶ 56.  Due to the concerted efforts of all the Ficchi Defendants to conceal their fraudulent activities, State Farm contends it did not discover its injury and the source of the injury until February 8, 2008.  Id. ¶ 57.

State Farm alleges eight counts: fraud, statutory insurance fraud, RICO, conspiracy to

violate RICO, conspiracy to commit fraud, concerted tortious action (a scheme to defraud),

unjust enrichment, and restitution. As a result of the described behavior, from 2004 to the

present, State Farm asserts that it paid at least $1.5 million to the Ficchi Defendants. State Farm

seeks to recover this amount as compensatory damages, in addition to costs. Id. ¶ 44.

The Ficchi Defendants timely filed a motion to dismiss the claims.


**Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson,

355 U.S. 41, 45-46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires

only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.

R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007)

(quoting Conley, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." Id. (citations

omitted). The question is, briefly stated, has the claimant presented a "plausible" claim for

relief? Specifically, "[f]actual allegations must be enough to raise a right to relief above the

speculative level . . . ." Id. at 1965 (citations omitted). The question is not whether the claimant

will ultimately prevail but whether the complaint is "sufficient to cross the federal court's

threshold." Skinner v. Switzer, 131 S.Ct. 1289, 1296 (2011) (citations omitted); see also

Matrixx Initiatives, Inc. v. Siracusano, 131 S.Ct. 1309, 1323 (2011). Nonetheless, to survive a

motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.

Iqbal, 129 S.Ct. 1937, 1949 (2009) (confirming that <u>Twombly</u> applies to all civil cases).

The Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." <u>ALA, Inc. v. CCAIR, Inc.</u>, 29 F.3d 855, 859 (3d Cir. 1994) (citing <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)); <u>see also</u> <u>Twombly</u>, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). Although the Court must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party, <u>Rocks v. Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989), the Court need not accept as true "unsupported conclusions and unwarranted inferences," <u>Doug Grant, Inc. v. Greate Bay Casino Corp.</u>, 232 F.3d 173, 183-84 (3d Cir. 2000) (citing <u>City of Pittsburgh v. West Penn Power Co.</u>, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d. 902, 906 (3d Cir. 1997).


**Discussion**

In their Motion to Dismiss, the Ficchi Defendants argue that the allegations in the Amended Complaint do not meet the pleading standards of Rule 9(b) or of Rule 8(a) as interpreted by <u>Twombly</u> and <u>Iqbal</u>. Specifically, the Ficchi Defendants argue that the counts of fraud, conspiracy to commit fraud, unjust enrichment (based on fraud), restitution (based on fraud), concerted tortious action (scheme to defraud), and statutory fraud are not pled with the particularity required by Fed. R. Civ. P. 9(b). In particular, the Ficchi Defendants contend that the allegedly fraudulent communications underlying each of these counts do not meet the pleading requirements of Fed. R. Civ. P. 9(b).

The Ficchi Defendants further contend that State Farm's RICO claims fail because they: (1) contain insufficient allegations that the named defendants worked together; (2) contain insufficient allegations of an association in fact enterprise; (3) violate the "intracorporate conspiracy doctrine" which precludes a RICO charge where an individual allegedly conspires with the organization for which that individual works; and (4) implicate statute of limitations issues. The Ficchi Defendants also argue that the state law claims for conspiracy and concerted tortious action fail because they are pled only in a conclusory manner; that fraudulent concealment is insufficiently pled as a reason to extend the statute of limitations on the state law claims; and that unjust enrichment and restitution are pled with insufficient particularity.

The Court addresses these arguments in turn.

## A. Sufficiency of the Fraud Allegations

The Ficchi Defendants contend, and State Farm does not dispute, that Counts I-VI of State Farm's Amended Complaint – Fraud, Statutory Insurance Fraud, RICO (with mail and wire fraud as the identified predicate offenses), Conspiracy to Violate RICO (mail and wire fraud), Concerted Tortious Action (where the tortious acts are fraud), and Conspiracy (to commit statutory insurance fraud, fraud, and concerted tortious acts) – sound in fraud and rest upon the allegedly fraudulent communications made by the Ficchi Defendants to State Farm.[1] Federal

---

[1] To state a claim for fraud under Pennsylvania law, State Farm's Amended Complaint must contain allegations of "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Giordano v. Claudio, 714 F. Supp. 2d 508, 518 (E.D. Pa. 2010); see also Gibbs v. Ernst, 647

(continued...)

7

Rule of Civil Procedure 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The first step, then, in analyzing the Ficchi Defendants' Motion to Dismiss as to the first six counts requires determining whether State Farm has pled fraud with sufficient particularity to satisfy Fed. R. Civ. P. 9(b).[2]

To satisfy the pleading requirements of Rule 9(b), a complaint may either describe "the circumstances of the alleged fraud with precise allegations of date, time, or place" or may use

---

[1](...continued)
A.2d 882, 889 (Pa. 1994). Similarly, "Pennsylvania's Insurance Fraud Statute, 18 Pa. C.S. § 4117, makes it a crime to, *inter alia*: (1) knowingly; (2) present any false, incomplete or misleading information; (3) concerning any fact or thing material to a claim; (4) to any insurer." State Farm Mut. Auto. Ins. Co. v. Lincow, 715 F. Supp. 2d 617, 632 (E.D. Pa. 2010) (citing 18 Pa.C.S. § 4117(a)(2)).

To state a claim for mail fraud State Farm must allege (1) a scheme or artifice to defraud, (2) participation by defendants with specific intent to defraud, and (3) use of the mail in furtherance of the scheme. United States v. Carey, 337 F. App'x 256, 263 n.9 (3d Cir. 2009) (citing United States v. Copple, 24 F.3d 535, 544 (3d Cir.1994)). "[A] scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528 (3d Cir. 1998) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991)).

[2] Whether or not State Farm has sufficiently alleged a false representation will be dispositive as to these six counts, because a RICO claim requires the identification of fraudulent misrepresentation, a fraud claim requires the identification of a material, false representation, and a statutory insurance fraud claim requires the identification of false information submitted to an insurer. See Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) (where plaintiffs "rely on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply" with Rule 9(b)); Allied Medical Assocs. v. State Farm Mut. Auto. Insur. Co., No. 08-2434, 2009 WL 1066932, at *6 (E.D. Pa. Apr. 16, 2009) (Pennsylvania's insurance fraud statute "sounds in fraud" and Rule 9(b) applies); Performance HR, Ltd., Inc. v. Archway Insurance Services LLC, No. 08-3432, 2008 WL 4739381, at *6 (E.D. Pa. Oct. 23, 2008) (a plaintiff alleging fraud must plead, *inter alia*, a specific false representation of material fact).

"some [other] means of injecting precision and some measure of substantiation into their

allegations of fraud." Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296

F.3d 164, 172 n.10 (3d Cir. 2002); see also Rolo v. City Investing Company Liquidating Trust,

155 F.3d 644, 658 (3d Cir. 1998), abrogation on other grounds recognized, Forbes v. Eagleson,

228 F.3d 471 (3d Cir. 2000) (complaint alleging mail fraud was deficient where it failed to

describe when, by whom and to whom mailing was sent and precise content of each particular

mailing was not detailed); Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786

(3d Cir. 1984). At the very least, "plaintiffs also must allege who made a misrepresentation to

whom and the general content of the misrepresentation." Lum, 361 F.3d at 224. A claim

satisfies the requirements of Rule 9(b) if it adequately delineates the acts and transactions

constituting fraud to apprise defendants fairly of the claim, and if its allegations are sufficiently

clear to enable defendants to answer. Jairett v. Montauk First. Sec. Corp., 203 F.R.D. 181, 186

(E.D. Pa. 2001).[3] This heightened pleading standard of 9(b) not only gives defendants notice of

the claims against them, but also it combats "frivolous suits brought solely to extract settlements"

---

[3] In the context of the Private Securities Litigation Reform Act, the particularity requirements for pleading of which are "comparable to" that of Rule 9(b), the Third Circuit Court of Appeals has described the burden of pleading with particularity as requiring "plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story." Institutional Investors Grp. v. Avava, Inc., 564 F.3d 242, 253 (3d Cir. 2009); see also Kolar v. Preferred Real Estate Investments, Inc., No. 07-3864, 2008 WL 2252860, at *6 (E.D. Pa. June 19, 2008); Cooper v. Broadspire Svcs., Inc., No. 04-5289, 2005 WL 1712390, at *5 (E.D. Pa. July 20, 2005). The Court of Appeals has also framed the particularity requirement in that same fashion in the context of a shareholder derivative action. Kanter v. Barella, 489 F.3d 170, 175 (3d Cir. 2007). Research has not revealed any *appellate* case in this circuit and outside of the securities law context in which a plaintiff pleading fraud under Rule 9(b) had to include "who, what, when, where, and how" content. Because the Court concludes the pleadings are insufficiently pled under Rule 9(b) as interpreted by Lum, the Court declines to measure the Amended Complaint against the "newspaper story" standard, even though the journalism lesson is instructive generally.

from defendants and "provides an increased measure of protection for their reputations." In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1418 (3d Cir. 1997).

While the purpose of Rule 9(b) is to provide notice of the precise misconduct, courts "should apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by defendants." Rolo, 155 F.3d at 658. For example, where factual information remains within the defendant's control, the particularity rule is somewhat relaxed. In re Burlington Coat Factory Securities Litigation, 114 F.3d at 1418. "Relaxation," however, does not translate into boilerplate and conclusory allegations, and plaintiffs "must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." Id. Allegations "based upon information and belief" are permissible, "but only if the pleading sets forth specific facts upon which the belief is reasonably based." Hollander v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 10-0836, 2010 WL 4159265, at *4 (E.D. Pa. Oct. 21, 2010); see also Carpenters Health & Welfare Fund of Phila. V. Kia Enterprises, Inc., No. 09-116, 2009 WL 2152276, at *3 (E.D. Pa. July 15, 2009).

The Court first notes that State Farm certainly has alleged the general outline of an insurance fraud in superficially rigorous detail. Obviously, State Farm believes the Ficchi Defendants submitted false, fraudulent or misleading bills and/or medical records for individuals who had been involved in automobile accidents that implicated State Farm insurance coverage on some basis for which State Farm made payments for insurance claims based on these submissions.[4] State Farm asserts that these records and/or bills were false, fraudulent or

---

[4] Specifically, State Farm has alleged that Defendants' acts include, but are not limited to, "producing and submitting false, misleading, inaccurate and/or fraudulent medical records,

(continued...)

10

misleading for a variety of reasons – the paperwork either documented treatment that did not occur, treatment that was not performed by the identified doctor, or treatment that was not medically necessary. See, e.g., Am. Compl. ¶¶ 40-42. State Farm contends the documentation was periodically submitted in support of false claims for insurance payments to either the insured, the insured injured by an uninsured motorist, or the individual harmed by the insured, see id. ¶¶ 22, 25, 26, and that Drs. Shenko and Knox would submit reports confirming false diagnoses by other doctors to validate the false reports, see id. ¶¶ 25, 27, 29, 31. State Farm relied upon this information in making payment decisions, and has paid the Ficchi Defendants at least $1.5 million since 2004. See id. ¶¶ 39, 43, 45. Thus, the Ficchi Defendants allegedly profited by receiving payments for treatments they did not provide, and Dr. Ficchi further received "kickback" payments from Drs. Shenko and Knox for referring individuals to their services. Id. ¶¶ 28, 32, 48, 52-53.

Alleging the contour of a fraud, regardless of the extent of the detail contained in that description of the fraud's general design, or the ardor and passion that underscores the

---

[4](...continued)
statements, reports, bills and/or documents and/or representations" which "involve patients who presented to the Defendant Medical Offices after motor vehicle accidents. Some of these individuals were insureds of Plaintiffs and/or brought claims for personal injuries against Plaintiffs and/or their insureds." Am. Compl. ¶ 14. These submissions were intended to induce payment by State Farm for "treatment, testing, services and/or goods which were allegedly provided to individuals insured by Plaintiffs and were allegedly reasonable and necessary treatment, testing, services and/or goods." Id. ¶ 15. "[M]any of [the] documented examinations, modalities, testing, consultations, other treatments, or services purportedly provided at the Defendant Medical Offices" were not provided, were not provided for the medical benefit of the patient, were misrepresented as to the service provider, were excessive, were inappropriate, deviated from accepted standards of care, or were not reimbursable under applicable law. Id. ¶ 24. "From at least 2004 to the present, Plaintiffs paid at least $1,500,000.00 to Defendants", id. ¶ 45, in reliance upon these fraudulent documents, see id. ¶ 39.

allegations, is not sufficient in and of itself to overcome a motion to dismiss.  By way of

example, in Rolo v. City Investing Company Liquidating Trust, the Third Circuit Court of

Appeals found that while plaintiffs alleged the execution of a land-sale fraud in detail, the subject

complaint lacked necessary specific allegations.  The appellate court explained:

> While many of the allegations relating to the allegedly fraudulent scheme are quite
> detailed, the Complaint lacks any specific allegations about the presentations made to any
> of the named plaintiffs. The Complaint includes no information about the actual
> presentations made to either the Rolos or the Tenerellis, including who made the
> presentation, when it took place, or with reference to what property it was made. The
> same is true with regard to the allegedly fraudulent mailings. The content of the mailings
> is described in reasonably specific terms, but when, by whom, and to whom a mailing
> was sent, and the precise content of each particular mailing are not detailed.

155 F.3d at 658-59 (emphasis added).  Because the plaintiffs had not provided the specific level

of detail as to the allegedly fraudulent representations and mailings, the Court of Appeals in Rolo

found that plaintiffs had not pled fraud with the specificity required by Rule 9(b).  Id. at 659.

Consistent with the requirements articulated in Rolo and in contrast to the pleadings in

that case, in State Farm Mutual Automobile Insurance Company v. Makris the district court

found that State Farm's allegations were sufficient for purposes of pleading mail fraud because

the third amended complaint described, for each predicate act, "the sender, the contents of the

mailing, the date of mailing, the recipient, and the date of receipt."  No. 01-5351, 2003 WL

924615, at *7 (E.D. Pa. Mar. 4, 2003).  In Makris, State Farm alleged "the existence of a

conspiracy to defraud State Farm through the staging of automobile accidents."  Id. at *1.  The

third amended complaint in Makris contained allegations that a number of individuals would pay

drivers to rear-end cars and then refer passengers to two attorneys who would help the passengers

make false and fraudulent insurance claims to State Farm.  Id.  These passengers were also

referred to medical facilities, which would prepare fraudulent medical reports, bills, and other records concerning physical examinations and other treatments that were unnecessary or that were never provided, documentation that would be sent to State Farm to obtain payment for injuries allegedly arising out of accidents.  Id.  The third amended complaint described five such accidents in detail, id. at *1-3, and alleged that four additional accidents, identified by claim and date but with no other detail, also occurred, id. at *3.  State Farm also presented a list of ten specific acts of mail fraud, and identified the specific date on which the mail was sent, by whom it was sent, the date on which it was received, by whom it was received, the specific contents, and the specific individual to whom those bills related.  Id. at *3-4.

Here, in the present case, State Farm maintains that it has injected more than sufficient precision into its allegations of fraud.  State Farm contends "that the Amended Complaint identifies eighty-seven (87) specific instances in which bills and medical records containing misrepresentations were submitted to Plaintiffs by Defendants. (Am. Complt. ¶ 49). For each of these eighty-seven (87) examples, Plaintiffs list an identifier for the records (claim number), the dates the misrepresentations were made, as well as the recipients of the misrepresentations for over half of the listed claims. (Am. Complt. ¶ 49)."  State Farm later reiterates that it "identified at least eighty-seven (87) examples of the fraud. (Am. Compl. ¶ 49)."

To be sure, State Farm's contention that these examples more than provide the pleading precision required by Rule 9(b) merits close examination.  The identification of these examples occurred in the context of describing the use of the mails and wires in furtherance of the fraud, Am. Compl. ¶ 49, and the contents thereof (referred to as Records in the list) are described as, *inter alia*, "not provided", "not provided for the medical necessity and/or medical benefit to the

patient", "misrepresented as if provided specifically by Ficchi and/or a licensed provider when in fact that did not occur", "were excessive", "and/or not provided pursuant to applicable law", Am. Compl. ¶ 24.

Upon careful review of the "87 examples of the fraud," the Court concludes that these "87 examples" actually relate to 42 actual claim numbers. For those claim numbers with multiple entries, the Court discerns a distinct pleading pattern. State Farm first alleges that a series of actors, together or in the alternative, sent records relating to the claim number during a particular time period to an attorney and/or to State Farm. Then, the companion allegation as to that claim number relates only to records sent by Drs. Shenko and/or Knox to an unidentified recipient on a specific date. The "examples" relating to Claim No. 38-K795-778 follow by way of illustration:

> (pp) Records sent by Defendants, Ficchi, Shenko, Knox, South Philly, Bensalem, Ortho-Sport, and/or Bensalem to Ricky Liss, Esquire, George Marion, Esquire and/or Plaintiffs concerning claim number 38-K795-778 (12/10/05-5/11/06)
>
> (dddd) Records sent by Knox dated 12/13/05 concerning claim number 38-K795-778
>
> (eeee) Records sent by Knox dated 3/9/06 concerning claim number 38-K795-778
>
> (ffff) Records sent by Knox dated 12/13/05 and Shenko dated 1/11/06, 2/22/06 and 3/6/06 concerning claim number 38-K795-778

Am. Compl. ¶ 49. In this example, State Farm appears to have alleged that the Ficchi Defendants – or some subset thereof – sent flawed records about a particular claim number over a period of time to either an attorney or to State Farm. State Farm has then alleged that Doctors Shenko and Knox sent records to an unidentified recipient, related to the specific claim number, on a specific date.

The examples of fraud that are pled in a manner similar to subsection (pp) of paragraph 49, quoted above, do not insert the particularity with which Rule 9(b) requires misrepresentations be pled. Likewise, none of these pleadings identify the actor who made the material misrepresentation at issue, but instead list groups of actors or medical offices associated with a claim number and assert that those people "and/or" entities made a misrepresentation. See Kester v. Zimmer Holdings, Inc., No. 10-523, 2010 WL 4103553 (W.D. Pa. Oct. 18, 2010) (dismissing a case where plaintiff failed to identify a particular person who made an alleged misrepresentation and failed to specify the time or place such misrepresentations were allegedly made); Champlost Family Medical Practice, P.C. v. State Farm Insurance, No. 02-3607, 2003 WL 115475 (E.D. Pa. Jan. 9, 2003) (finding State Farm pleaded fraud with sufficient particularity where it identified, in addition to the dates upon which the alleged fraud started and ended, the name and related claim numbers of the "limited number" of insureds who received treatment from unlicensed therapists employed by Champlost, the form Champlost submitted to State Farm, and the name of the physician who signed this form). Furthermore, none of these pleadings either provide a date for or mention the type of action alleged to be contained in the misrepresentation, either of which could provide the specificity required of Rule 9(b). See Frederico v. Home Depot, 507 F.3d 188, 200-01 (3d Cir. 2007) (affirming the dismissal a fraud claim where the allegations did not satisfy the "stringent pleading restrictions of Rule 9(b)" because Plaintiff's "broad statements [did not] disclose the particular argument . . . as to the substance of the misrepresentation" and Plaintiff failed to allege any particular statement made by Defendant that was in fact false); Seville, 742 F.2d 786 (finding allegations of fraud were pleaded with sufficient particularity where the pieces of machinery that were the subject of the

alleged fraud were not only identified with great specificity but also linked each piece of machinery to specific alleged fraudulent transactions); Plum Property Associates, Inc. v. Mineral Trading Company, LLC, No. 09-1059, 2009 WL 5206013, at *1 (W.D. Pa. Dec. 23, 2009) (determining that plaintiff failed to allege fraud with the particularity required of Rule 9(b) where "there are no specific particular false statements included in the Complaint," because "[m]ention of false invoices, memos, and other financial documents to Plaintiffs and others are also not specific or particularized as required by F.R.C.P. 9(b)"); Kolar, 2008 WL 2552860 (finding that Plaintiff had not pled fraud with sufficient particularity because he "wholly failed to explain with particularity how these or any other communication were false or misleading" because a simple assertion that a communication is false or misleading does not contain the precision or substantiation necessary to satisfy Rule 9(b)'s heightened pleading standard (emphasis added)); State Farm Mutual Automobile Insurance Co. v. Rios, No. 06-2048, 2006 WL 3043084 (E.D. Pa. Oct. 24, 2006) (finding allegations that a chiropractor and members of his practice did not perform examinations and treatments and that the related bills submitted were fraudulent pled with sufficient particularity for purposes of Rule 9(b)).

State Farm injects nearly sufficient particularity into its allegations regarding Drs. Knox and Shenko. See McHale v. NuEnergy Group, No. 01-4111, 2002 WL 321797, at *3-5 (E.D. Pa. Feb. 27, 2002) (finding that Plaintiffs' "numerous specific allegations concerning defendants' fraudulent conduct and [descriptions of] specific examples of how defendants committed such conduct using the mails and wires", including specific dates on which Mr. McHale was fraudulently paid less than he was owed in commissions, specific accounts for which he was fraudulently underpaid, and specific allegations as to how the defendant calculated the difference

between the commissions it charged its customers and the commissions it actually paid to Mr. McHale, met the requirement of Rule 9(b) even though the plaintiffs did not plead "which individuals mailed, faxed, or e-mailed particular checks, reconciliations, faxes, and e-mails at issue in this case").  As the examples cited above demonstrate, State Farm has alleged that Drs. Knox and Shenko made misrepresentations on specific dates regarding specific claims.  See, e.g., Am. Compl. ¶ 49 (w), (zz), (bbb), (fff), (mmm), (sss).  These alleged misrepresentations relate to, *inter alia*, the provision of medically unnecessary services or to the magnification or misstatement of a patient condition.  Am. Compl. ¶¶ 30, 34.  It is not clear, however, to whom these misrepresentations were made, information which should be specified for these allegations to be pled with the sufficient particularity required by Rule 9(b).  See Hemispherx Biopharma, Inc. v. Arsenio, No. 98-5204, 1999 WL 144109, at *10 (E.D. Pa. Mar. 15, 1999) (allegations that others acted in reliance on misrepresentations and that Plaintiff suffered loss as a result are not sufficient to state a claim for fraud).  Furthermore, the substance of the misrepresentation should be clarified.  Allied Medical Assocs. v. State Farm Mutual Automobile Insur. Co., No. 08-2434, 2009 WL 1066932, at *5 (E.D. Pa. Apr. 16, 2009) (stating that "State Farm's liberal use of the phrase "and/or" creates alternative misrepresentations on which State Farm attempts to base its fraud claim.  Rather than placing counterclaim-defendants 'on notice of the precise misconduct with which they are charged,' counterclaim-defendants must defend multiple theories.  Rule 9(b) is designed to eliminate this type of guesswork.").

Because State Farm failed to employ sufficient precision in its allegations of the misrepresentations by which Defendants allegedly executed their fraud, Defendants' Motion to

Dismiss must be granted. As it does not appear to the Court that amendment would be futile, the Motion is granted without prejudice to State Farm to further amend its complaint.

## B. RICO

State Farm contends in Count III of its Amended Complaint that the Ficchi Defendants violated civil RICO. To establish a claim for civil RICO under 18 U.S.C. § 1962(c), a plaintiff must appropriately plead four basic elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. Lum, 361 F.3d at 223.[5] Among the conduct defined by the statute as predicate acts that serve to establish "racketeering activity" are mail fraud and wire fraud, the predicate acts State Farm has alleged here. See 18 U.S.C. § 1961(a). The sufficiency of State Farm's pleading as to the fraudulent misrepresentations underlying those predicate acts is discussed above. Because the Court concludes that State Farm has not pled fraud with sufficient particularity, the Court need not engage in any further analysis of State Farm's allegations regarding civil RICO violations allegedly committed by the Ficchi Defendants.[6]

---

[5] The RICO statute provides that: "[i]t shall be unlawful for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

[6] "Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)." Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002); see also Silverstein v. Percudani, 207 F. App'x 238 (3d Cir. 2006); Franks v. Food Ingredients International, Inc., 2010 WL 3046416, at *4 (E.D. Pa. July 30, 2010). In Warden, the Third Circuit Court of Appeals remanded a case to the district court for a more thorough parsing of the complaint where the complaint identified several communications allegedly constituting acts of wire fraud, but did not state clearly how those or any other communications were false or misleading, or how they contributed to the alleged fraudulent scheme (which was itself presented in a reasonably clear overall picture). 288 F.3d at 114-16.

However, assuming for the sake of argument that State Farm did plead the fraudulent misrepresentations with sufficient particularity to satisfy the requirements of Rule 9(b) and thus the racketeering activity element of civil RICO, the Court turns to the question of whether State Farm sufficiently pled the other elements of RICO.  In particular, the Ficchi Defendants maintain that State Farm has insufficiently pled the existence of a RICO enterprise.

For purposes of RICO, an enterprise can be a "group of individuals associated in fact although not a legal entity."  See 18 U.S.C. § 1961(4); United States v. Turkette, 452 U.S. 576, 581-82 (1981).  "[T]he very concept of an association in fact is expansive."  Boyle v. United States, 129 S.Ct. 2237, 2243 (2009).  Showing that an enterprise exists requires a plaintiff to demonstrate: (1) an ongoing organization, formal or informal; (2) various associates that function as a continuing unit; and (3) an organizational existence separate and apart from the alleged pattern of racketeering activity.  Turkette, 452 U.S. at 583.  "In Boyle, the Court added that 'an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'"  United States v. Bergrin, 2011 WL 1366388, at *4 (3d Cir. Apr. 20, 2011) (quoting  Boyle, 129 S.Ct. at 2244); see also In re Insur. Brokerage Antitrust Litig., 618 F.3d 300, 369-70 (3d Cir. 2010).  "Such a group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles; different members may perform different roles at different times."  Boyle, 129 S.Ct. at 2245.

"The statutory language of § 1962(c) requires the RICO defendant or person to be

separate and distinct from the alleged enterprise." Kolar, 2008 WL 2552860, at *4. Furthermore, "while corporate officers may be held liable for conducting a pattern of racketeering activity through a corporate enterprise, the corporation itself cannot be held liable under § 1962(c) unless it engages in racketeering activity as a 'person' in another distinct enterprise." Oglesby v. Saint Gobain Corp., No. 97-4038, 1997 WL 570925, at *4 (E.D. Pa. Sept. 4, 1997). It remains the case, however, that an association in fact can both exist and satisfy the distinctiveness requirement "when it is comprised of members that are a mixture of individual persons and 'entities that they control.'" Bergrin, 2011 WL 1366388, at * 5.

The Ficchi Defendants argue that State Farm has failed to adequately plead that the alleged RICO enterprise has a common purpose, that an organizational structure exists, and that the alleged RICO enterprise is distinct from the named defendants. In particular, the Ficchi Defendants contend that the Amended Complaint does not contain allegations that depict a unified enterprise, but instead describes two separate sets of actors – Drs. Ficchi and Shenko and Drs. Ficchi and Knox. The Ficchi Defendants maintain that in the absence of allegations demonstrating a commonality of purpose between Drs. Shenko and Knox, State Farm fails to adequately allege the existence of a RICO enterprise. The Ficchi Defendants further assert that the Amended Complaint contains no allegations of actions of the Defendant Medical Offices by which they participated in purpose of the purported RICO enterprise. The Ficchi Defendants also argue that the Amended Complaint does not sufficiently allege the existence of relationships between the members of the association in fact enterprise, failing to establish the second element described in Boyle. Finally, the Ficchi Defendants contend that State Farm has failed to allege persons who are distinct from the enterprise such that State Farm fails to allege a RICO claim.

In response, State Farm maintains that its pleadings and reasonable inferences therefrom establish that Drs. Ficchi, Knox, and Shenko shared medical offices, worked closely together at these facilities, and that all three communicated regarding the placement of patients on a standardized treatment plan that resulted in medically unnecessary treatments and consequently falsely inflated bills. State Farm also contends that its Amended Complaint contains sufficient allegations regarding the Defendant Medical Offices; that it sufficiently alleges the purpose, relationships, and longevity of the enterprise; and that it sufficiently alleges that the Defendants are distinct from the enterprise.

In its Amended Complaint, State Farm does allege that Drs. Shenko and Knox worked at the Defendant Medical Offices. Am. Compl. ¶¶ 8, 9. These offices, during the relevant time period, were in the business of providing chiropractic, medical, diagnostic, and/or physical therapy treatment to people injured in accidents. Id. ¶¶ 2-6. State Farm claims it was injured when all Defendants – the Doctors and the Medical Offices – allegedly submitted false medical records for the purpose of inducing payment by State Farm. Id. ¶ 14-17. Furthermore, individuals who went to the Defendant Medical Offices for treatment of injuries after accidents were placed on a standardized treatment plan involving a host of services, a treatment plan that State Farm alleges was implemented by the Ficchi Defendants for their financial benefit rather than for the medical benefit of the individuals. Id. ¶ 22. This treatment plan was established by Dr. Ficchi along with Drs. Shenko and Knox. Id. At Dr. Ficchi's direction, the Defendant Medical Offices generated template medical reports, under his name, listing false medical conditions allegedly caused by motor vehicle accidents. Id. ¶ 26. Drs. Shenko and Knox performed services at the Defendant Medical Offices that were not for the medical benefit of

patients, but instead were for the financial benefit of the Ficchi Defendants. <u>Id.</u> ¶¶ 27-28, 30-32, 34. Drs. Ficchi, Shenko, and Knox communicated with each other regarding alleged patient services at the Defendant Medical Offices and all knew that patients would be treated pursuant to the standardized treatment plan (which included unnecessary services and referrals). <u>Id.</u> ¶ 35. False bills related to services were prepared at the Defendant Medical Offices at the direction of Drs. Ficchi, Shenko, and Knox. <u>Id.</u> ¶ 36.

Recognizing the Ficchi Defendants' argument that certain allegations in the Amended Complaint arguably tend to the conclusory, *e.g.*, "each Defendant conducted or participated directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity consisting of, but not limited to, the multiple instances of mail and wire fraud as set forth above," Am. Compl. ¶ 89, the Court nonetheless finds that State Farm has sufficiently alleged the existence of a RICO enterprise. As demonstrated by the allegations of the Amended Complaint cited above, State Farm described different roles for all the Defendants in a known and understood collective effort to fraudulently induce payment by State Farm. The businesses of the Defendants was not solely to defraud State Farm, <u>see</u> Am. Compl. ¶ 23 (not all individuals who came for services from the Ficchi Defendants were insured by State Farm), but instead in the course of conducting their regular affairs, the Defendants also worked together for the purpose of inducing payment by State Farm, <u>see id.</u> ¶¶ 22, 35. <u>See</u> <u>Makris</u>, 2003 WL 924625, at *6.[7]

_____

[7] The Ficchi Defendants argue forcefully that State Farm has only alleged a hub-and-spoke configuration amongst the various defendants, and that such a configuration cannot serve as a RICO enterprise. The Court finds this argument unavailing, in light of the allegations of the Amended Complaint regarding the design and implementation by all Defendants of standardized treatment plans created for their financial benefit and not for the medical benefit of patients. <u>See</u> Am. Compl. ¶ 22, 35. The Court likewise finds these allegations of joint decision-making regarding the treatment plan sufficient to address the Ficchi Defendants' arguments regarding the

(continued...)

## C. RICO Conspiracy and Conspiracy

In Counts IV and VI of its Amended Complaint, State Farm contends that the Ficchi Defendants are liable for conspiracy to violate RICO, in violation of 18 U.S.C. § 1962(d), and for state law conspiracy to violate the Pennsylvania Insurance Fraud statute and to commit fraud.[8] Just as the sufficiency of State Farm's RICO allegations rested in part on whether fraud had been pled with sufficient particularity, the sufficiency of State Farm's conspiracy allegations rest initially upon the adequacy of State Farm's pleadings as to fraud. Assuming, *arguendo*, that State Farm adequately pled fraud and noting that State Farm sufficiently alleged the existence of a RICO enterprise, the Court now turns to the issue of whether State Farm sufficiently pled the other elements of conspiracy.

"Under Pennsylvania common law, to plead a claim for civil conspiracy, [State Farm] must show that two or more persons 'combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means.'" Wenglicki v. Tribeca Lending Corp., No. 07-4522, 2009 WL 2195221, at *6 (E.D. Pa. July 22, 2009) (quoting Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466 (Pa. 1979)). In turn, to state a claim for RICO conspiracy, a plaintiff

---

[7](...continued)
failure of State Farm to allege indicia of structure of the enterprise. See id.

As to the Ficchi Defendants' argument that State Farm's allegations violate the requirement that RICO "persons" be distinct from the "enterprise," a plaintiff can allege an enterprise made up of natural persons and various separate corporate entities and satisfy the distinctiveness requirement of RICO where those natural persons and corporate entities are separable and legally distinct from the RICO enterprise alleged. Walther v. Patel, No. 10-706, 2011 WL 382752, at *4 (E.D. Pa. Feb. 4, 2011). The Court finds that State Farm has satisfied this distinctiveness requirement, *i.e.*, that the "enterprise" alleged by State Farm is not "simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001).

[8]As the Ficchi Defendants chose to address their arguments regarding these two conspiracy counts together, the Court will also address them together.

must allege that "Defendant intended 'to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense.'" <u>Contawe v. Crescent Heights of Am., Inc.</u>, No. 04-2304, 2004 WL 2244538, at *1 (E.D. Pa. Oct. 1, 2004) (quoting <u>Salinas v. United States</u>, 522 U.S. 52, 65 (1997)).

To plead conspiracy, a plaintiff's allegations "must be sufficient to 'describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy.'" <u>Rose v. Bartle</u>, 871 F.3d 331, 366 (3d Cir. 1989) (quoting <u>Alfaro v. E.F. Hutton & Co., Inc.</u>, 606 F. Supp. 1100, 1117-18 (E.D. Pa. 1985)). A plaintiff must also allege the period of a conspiracy, the object of the conspiracy, and the actions of the alleged conspirators to achieve that purpose. <u>See</u> <u>Shearin v. E.F. Hutton Group, Inc.</u>, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by* <u>Beck v. Prupris</u>, 529 U.S. 494 (2000). "It is not sufficient to simply make 'conclusory allegations of concerted action . . . devoid of facts actually reflecting joint action.'" <u>Walker v. Hensley</u>, 2009 WL 5064357, at *8 (E.D. Pa. Dec. 23, 2009) (quoting <u>Abbott v. Latshaw</u>, 164 F.3d 141, 148 (3d Cir. 1998)). A plaintiff alleging conspiracy must "present material facts showing that the purported conspirators reached some understanding or agreement or plotted, planned, and conspired together." <u>Id.</u>

Here, the Ficchi Defendants contend that State Farm's claims for both RICO and common law conspiracy must be dismissed because, they contend, the Ficchi Defendants have alleged a hub-and-spoke conspiracy that lacks a requisite "rim" – *i.e.*, agreement – between the "spokes." Underlying the Ficchi Defendants' argument in this regard is the premise that State Farm has alleged two separate conspiracies, one between Drs. Ficchi and Knox and another between Drs. Ficchi and Shenko. The Ficchi Defendants maintain that the Amended Complaint

contains only conclusory allegations that they were all aware of each others' actions, and that State Farm failed to allege any specific overt act taken in furtherance of the alleged conspiracy. The Ficchi Defendants further assert that State Farm's conspiracy claims violate the intracorporate conspiracy doctrine, citing Parker v. Learn the Skills Corp., 219 F. App'x 187 (3d Cir. 2007) (unpublished), for the general proposition that absent narrow exceptions, agents of an entity cannot conspire with their employer/principal.

State Farm maintains that the Amended Complaint clearly delineates the general composition of the conspiracy, the broad objectives, and each Defendants' general role in the conspiracy. State Farm further contends that it provided sufficient factual allegations to support its companion allegations upon information and belief regarding all Defendants' awareness and negotiation of the arrangements whereby Drs. Shenko and Knox confirmed diagnoses and paid for access to Dr. Ficchi's patients. As to the Ficchi Defendants' argument regarding the intracorporate conspiracy doctrine, State Farm counters that the facts of Parker are distinguishable from the allegations of the Amended Complaint, and that the Court instead should look to the analysis in and conclusions of State Farm Mut. Auto. Ins. Co. v. Lincow, 715 F. Supp. 2d 617 (E.D. Pa. 2010). In Lincow, the district court stated that the "Third Circuit has never decided whether the intracorporate conspiracy doctrine bars [RICO conspiracy] claims" and determined that a RICO conspiracy could be maintained where "the alleged conspiracy is one between several distinct corporate entities and their employees." 715 F. Supp. 2d at 240-41. State Farm does not, however, explain how the discussion of a dearth of Third Circuit case law regarding RICO conspiracy and the intracorporate conspiracy doctrine in Lincow affects its arguments regarding state law conspiracy claims.

Regarding the Ficchi Defendants' arguments about the lack of allegations of agreement, particularly between Drs. Shenko and Knox, State Farm pled that all the doctors performed services at the Defendant Medical Offices, all had access to the same patient files, "all communicated with each other relating to alleged patient services at the Defendant Medical Offices, and all knew that all patients were to be treated according to the standardized and predetermined treatment plan." Am. Compl. ¶ 35. Furthermore, services provided pursuant to the standardized predetermined treatment plan were provided not for the medical benefit of patients, but for the financial benefit of the Defendants. See id. ¶ 22. Although these allegations do not form the entirety of the scheme as detailed in the Amended Complaint and discussed by all parties in their papers, the Court finds that these allegations sufficient to establish that the Defendants had an agreement to do an unlawful act. See Wenglicki, 2009 WL 2195221; Contawe, 2004 WL 2244538.

While it may be the case, as described by the court in Lincow, that the intracorporate conspiracy doctrine does not bar RICO conspiracy claims, for state-law conspiracy claims in Pennsylvania the intracorporate conspiracy doctrine holds that no claim for conspiracy can arise between an entity and its employees. See General Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) ("an entity cannot conspire with one who acts as its agent"); Nix v. Temple Univ., 596 A.2d 1132, 1137 n.3 (Pa. Super. Ct. 1991) ("[A] corporation cannot conspire within itself. Generally, the acts of the agents of a corporation are the acts of the corporation."). Narrow exceptions to this rule exist, see Parker, 219 F. App'x at 189; notably, the doctrine does not bar state law conspiracy claims when the employees have acted for their sole personal benefit, see Heffernan v. Hunter, 189 F.3d 405, 412 (3d Cir. 1999).

As alleged by State Farm, Defendants Ficchi, P.C., Olney Pain Management, LLC, Bensalem Pain Management Center, LLC, South Philadelphia Pain Management, LLC, and Ortho-Sport Rehabilitation, LLC are all Pennsylvania corporations.  Am. Compl. ¶¶ 2-6. Stephen Ficchi, an adult individual, is an owner, employee, and/or agent of Ficchi, P.C., Olney, Bensalem, and South Philadelphia.  Id. ¶ 7.  Frank Shenko, an adult individual, is an owner, employee, and/or agent of Ortho-Sport.  Id. ¶ 8.  J. William Knox, an adult individual, works at the aforementioned offices.  Id. ¶ 9.

As described, State Farm has alleged that Drs. Ficchi and Shenko are agents and/or employees of corporations with whom they allegedly engaged in a common law conspiracy.  As the intracorporate conspiracy doctrine would otherwise preclude such a claim, to maintain its state law conspiracy claim State Farm must demonstrate how a "narrow exception" to this doctrine applies to the conspiracy claim at issue.  State Farm does not argue how its state law conspiracy claims fit into such an exception, and the Court declines to engage in that analysis on behalf of the party.  Absent this clarification, the Court finds that the intracorporate conspiracy doctrine precludes the assertion of a state law conspiracy claim as presently pled.  See Parker, 219 F. App'x at 189.

This same conclusion does not apply to the RICO conspiracy claim, however.  The Court finds the discussion of law and policy in Lincow to be persuasive, and thus finds the intracorporate conspiracy doctrine does not preclude the assertion of a RICO conspiracy claim where the defendants accused of conspiracy are several distinct corporate entities and their employees/agents.

**D. State Law Claims – Concerted Tortious Action, Unjust Enrichment and Restitution**

The Ficchi Defendants argue that these three claims are predicated on the fraudulent conduct alleged by State Farm, and must be dismissed because State Farm did not plead fraud with sufficient particularity. They also contend that State Farm failed to plead facts to satisfy the elements of concerted tortious action, further mandating dismissal of that claim.

State Farm maintains that the allegations of its Amended Complaint are sufficient to establish that the Ficchi Defendants substantially assisted each other, resulting in financial benefit to all. It thus argues that it has adequately pled the tort of Concerted Tortious Action. In response to the Ficchi Defendants' argument that the unjust enrichment and restitution claims are predicated on fraud, State Farm merely asserts – without substantiation – that those claims are, in fact, not predicated on fraud and maintain, without reference to the elements of those claims or the allegations of the Amended Complaint, that they are appropriately pled.

In Pennsylvania, a viable cause of action for concerted tortious conduct stems from Section 876 of the Second Restatement of Torts. Skipworth by Williams v. Lead Indus., Inc., 690 A.2d 169 (Pa. 1997). One is subject to liability for harm resulting from tortious conduct where one does that tortious act in concert with another "or pursuant to a common design with him." Id. at 174. Where the underlying tortious act is not sufficiently pled, a claim for concerted tortious conduct necessarily fails. Guy Chemical Co., Inc. v. Romaco S.p.A., No. 3:2006-96, 2009 WL 840396, at *17 (W.D. Pa. Mar. 27, 2009). As the Ficchi Defendants contend, the allegations contained within this Count are arguably conclusory. See Am. Compl. ¶¶ 104-116. However, as discussed, State Farm has sufficiently alleged that the Defendants took actions together for the purpose of their collective financial gain. See supra Section C. The Court finds

these allegations sufficient to make out a claim of concerted tortious action should State Farm cure the defects in its allegations of fraud.

Because the parties address the counts of restitution and unjust enrichment together, so, too, will the Court. "Restitution is a remedy for unjust enrichment." Giordano v. Claudio, 714 F. Supp. 2d 508, 530 (E.D. Pa.. 2010). The equitable doctrine of unjust enrichment prevents one party from retaining benefits conferred upon it by another party under inequitable circumstances. See Mack v. Bear Stearns Residential Mortg. Corp., 755 F. Supp. 2d 651, 655 (E.D. Pa. 2010), citing Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct.1993). Under Pennsylvania law, to state a claim for unjust enrichment State Farm must allege that: (1) it conferred benefits upon the Ficchi Defendants; (2) the Ficchi Defendants realized those benefits; and (3) the Ficchi Defendants retained those benefits under circumstances in which it would be inequitable to do so without payment of value in return. Hartford Fire Ins. Co. v. Lewis, No. 08-1198, 2009 WL 174105, at *6 (E.D. Pa. Jan. 21, 2009). In Hartford, the court stated that a count of unjust enrichment is measured "under the more liberal Rule 8 pleading standard" instead of under the Rule 9(b) particularity standard. Id. at *2. By way of contrast, in Virginia Surety Co., Inc. v. Macedo, the court found that where a count of unjust enrichment rested on the obtaining of money by an alleged fraud, that count fails if the underlying fraud is not pled with sufficient particularity. No. 08-5586, 2009 WL 3230909, at *11 (D.N.J. Sept. 30, 2009).

State Farm has alleged that it paid money to the Ficchi Defendants and that the Ficchi Defendants realized those benefits. These allegations satisfy the first two elements of an unjust enrichment claim. The third element requires State Farm to plead that this conferral and retention of benefits occurred under inequitable circumstances. Regarding these inequitable

circumstances, in its Amended Complaint State Farm alleges that it "would not have paid [the Ficchi] Defendants' bills if it had known at the time it paid these claims that Defendants acts were wrongful, fraudulent and/or illegal." Am. Compl. ¶ 125. Furthermore, State Farm contends that the Ficchi Defendants' "retention of amounts paid by [State Farm] was wrongful because these monies were obtained as a direct result of fraud." Id. ¶ 124. State Farm thus seeks recovery because the retention of fraudulently-induced payment is inequitable. Given the specific reference to alleged fraudulent conduct, the Court finds the analysis of Virginia Surety to be persuasive, and concludes that the claims for restitution and unjust enrichment fail where the fraudulent conduct on which they are predicted is not pled with sufficient particularity.

**E. Statutes of Limitations**

The Ficchi Defendants argue that State Farm's RICO and state law claims must be dismissed because they violate applicable statutes of limitations. In the alternative, the Ficchi Defendants suggest that State Farm should be barred from recovery, if any, for conduct that occurred beyond the applicable limitations periods. The Ficchi Defendants also maintain that State Farm has not pled fraudulent concealment with sufficient specificity to permit tolling of the limitations period. State Farm otherwise seeks to hold the Ficchi Defendants liable for injuries dating "from at least the year 2004 to the present." Am. Compl. ¶ 45.

State Farm contends that statutes of limitations implicate factual determinations that are better addressed at a later stage in the proceeding. State Farm further argues that its earlier claims remain viable either pursuant to the discovery rule, which tolls the statute of limitations until a plaintiff could or should have reasonably discovered an injury and its cause, or pursuant to

the fraudulent concealment doctrine, which stops the defendant from invoking the statute of limitations if the defendant caused the plaintiff to cease investigation through fraud or concealment. State Farm identifies the allegations of its Amended Complaint in which it describes the actions by the Ficchi Defendants which precluded State Farm from discovering the alleged bad acts until February 2008. In their Reply, the Ficchi Defendants reiterate their contention that the fraudulent concealment alleged by State Farm is insufficiently specific to satisfy the pleading requirements of Rule 9(b).

The Ficchi Defendants may raise a statute of limitations defense by motion under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. United States Veterans Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975). In other words, raising this defense via a motion to dismiss is only permissible when the affirmative defense appears on the face of the complaint. ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978). The Ficchi Defendants thus "bear a heavy burden in attempting to establish as a matter of law that the challenged claims are time-barred." Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 425 (3d Cir. 1999).

Here, the Court concludes that the affirmative defense that all claims are time-barred does not appear on the face of the complaint. In fact, it is clear that at least some of the injuries alleged by State Farm occurred well within the applicable statutes of limitations. For example, date ranges associated with particular fraudulent claim numbers fall in mid-to-late 2008. See, e.g., Am. Compl. ¶ 49(z), (aa), (bb), (ee). The parties have not briefed whether or how the Court might parse the effect of statutes of limitations on each of the identified actions that form the

basis of the alleged injuries, and the Court declines to determine, at this stage in the litigation, whether recovery on some subset of State Farm's alleged injuries should be precluded on the basis of a statute of limitations defense.

## F. Dismissal with Prejudice

At both the end of their Response and at oral argument, State Farm requested, to the extent the Motion to Dismiss is granted, leave to further amend their Amended Complaint. The Ficchi Defendants functionally argue that the Amended Complaint should be dismissed with prejudice, by contending that leave to amend should be denied.

"[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility. Grayson v. Mayview State Hosp., 293 F.3d 103, 115 (3d Cir. 2002); see also Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 166 at fn. 28 (3d Cir. 2004) (district court properly dismissed claims with prejudice where the district court found that further amendment would be futile).

Because it appears to the Court that State Farm may be able to cure the identified deficiencies in its Amended Complaint, the Court concludes that amendment would not be futile and declines to dismiss the Amended Complaint with prejudice.

**Conclusion**

Consistent with the analysis above, the Court grants the Motion to Dismiss without prejudice.

An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE