THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY<br><br>vs.<br><br>STEPHEN FICCHI, D.O., and FRANK SHENKO, MSPT, CPT, and J. WILLIAM KNOX, Ph.D., and ORTHO-SPORT REHABILITATION, LLC, and FICCHI, STEPHEN, D.O.P.C., and OLNEY PAIN MANAGEMENT, LLC, and BENSALEM PAIN MANAGEMENT CENTER, LLC, and SOUTH PHILADELPHIA PAIN MANAGEMENT, LLC, | CIVIL ACTION<br><br>NO: 10-0555<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm

Fire and Casualty Company, by and through their attorneys, Goldberg, Miller & Rubin,

P.C., bring this action against Defendants, Ficchi, Stephen, D.O.P.C., Olney Pain

Management, LLC, Bensalem Pain Management Center, LLC, South Philadelphia Pain

Management, LLC, Stephen Ficchi, D.O., Frank Shenko, Ortho-Sport Rehabilitation,

LLC  and J. William Knox, Ph.D. and allege violations of the Racketeering Influenced

and Corrupt Organizations Act (RICO), and the Pennsylvania Insurance Fraud statute,

along with claims for fraud, conspiracy, concerted tortious action, unjust enrichment and

restitution for mistaken payment.  In support of their claims, Plaintiffs state the

following:

## THE PARTIES

1.      Plaintiffs, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (hereinafter "Plaintiffs" or "State Farm") are corporations existing under the laws of Illinois with principal places of business in Bloomington, Illinois.  Plaintiffs are duly organized and licensed to engage in the writing of automobile insurance policies in the Commonwealth of Pennsylvania.  Plaintiffs provide insurance coverage to their customers for, *inter alia*, medical payments, uninsured motorist benefits, underinsured motorist benefits and liability for bodily injury arising out of automobile accidents.

2.      Ficchi, Stephen, D.O.P.C., also known as Stephen Ficchi, D.O., P.C., (hereinafter "Ficchi P.C.") was and is a Pennsylvania Professional Corporation with a place of business located at 3101 Bristol Road, Bensalem, Pennsylvania.  During the relevant time period, the purported business of Ficchi P.C. was to provide chiropractic, medical, diagnostic, and physical therapy treatment, testing, services and goods to persons injured in accidents.

3.      Olney Pain Management, LLC (hereinafter "Olney") was and is a Pennsylvania corporation with a place of business located at 6201 North Front Street, Philadelphia, Pennsylvania.  During the relevant time period, the purported business of Olney was to provide chiropractic, medical, diagnostic, and physical therapy treatment, testing, services and goods to persons injured in accidents.

4.      Bensalem Pain Management Center, LLC (hereinafter "Bensalem") was and is a Pennsylvania corporation with a place of business located at 3101 Bristol Road, Bensalem, Pennsylvania.  During the relevant time period, the purported business of

Bensalem was to provide chiropractic, medical, diagnostic, and physical therapy treatment, testing, services and goods to persons injured in accidents.

5.      South Philadelphia Pain Management, LLC (hereinafter "South Philadelphia") was and is a Pennsylvania corporation with a place of business located at 1732 South Broad Street, Pennsylvania.  During the relevant time period, the purported business of South Philadelphia was to provide chiropractic, medical, diagnostic, and physical therapy treatment, testing, services and goods to persons injured in accidents.

6.      Ortho-Sport Rehabilitation, LLC (hereinafter "Ortho-Sport") was and is a Pennsylvania corporation with a place of business located at 5 Hazelwood Circle, Plymouth Meeting, Pennsylvania.  During the relevant time period, the purported business of Ortho-Sport was to provide medical and physical therapy treatment, testing, services and goods to persons injured in accidents.

7.      Stephen Ficchi, D.O., (hereinafter "Ficchi") is an adult individual who has a business address of 3101 Bristol Road, Bensalem, Pennsylvania and is a citizen and resident of the Commonwealth of Pennsylvania.  During the relevant time period, Ficchi was and continues to be a proprietor, owner, officer, employee, agent and shareholder of Ficchi P.C., Olney, Bensalem and South Philadelphia (hereinafter collectively referred to as the "Defendant Medical Offices").

8.      Frank Shenko (hereinafter "Shenko") is an adult individual who has a business address of 5 Hazelwood Circle, Plymouth Meeting, Pennsylvania and is a citizen and resident of the Commonwealth of Pennsylvania.  During the relevant time period, Shenko was and continues to be a proprietor, owner, officer, agent, employee and

3

shareholder of Ortho-Sport.  Additionally, during the relevant time period, Shenko was and continues to work out of the Defendant Medical Offices.

9.     J. William Knox (hereinafter "Knox") is an adult individual who has a business address of 1000 Cedar Knoll, Newtown Square, Pennsylvania and is a citizen and resident of the Commonwealth of Pennsylvania.  During the relevant time period, Knox was and continues to work out of the Defendant Medical Offices.

## VENUE AND JURISDICTION

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, based upon the diverse citizenship of the parties and the amount in controversy, which exceeds $75,000.00, exclusive of interest and costs.

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 whereas a federal question is at issue, based upon the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1964(c).

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1367, based upon the pendent and ancillary jurisdiction of this Court.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a).

## FACTS

14.     This Second Amended Complaint is brought by Plaintiffs to recover damages from Defendants, Ficchi P.C., Bensalem, South Philadelphia, Olney, Ortho-Sport, Ficchi, Shenko, and Knox, who were, and continue to be, active participants in a conspiracy and scheme to defraud Plaintiffs by doing acts including, but not limited to, producing and submitting false, misleading, inaccurate and fraudulent medical records, reports, bills, statements, and other documents and representations to State Farm as well

as others.  These false, misleading, inaccurate and fraudulent medical records, reports, bills, statements, and other documents and representations relate to patients who presented to the Defendant Medical Offices after motor vehicle or other alleged accidents.  Some of these patients were insured by State Farm and brought claims for personal injuries against State Farm while other patients brought claims for personal injuries against insureds of State Farm.  During the relevant times, and continuing to the present, the Defendants, without the knowledge or consent of Plaintiffs, devised and participated in the scheme to defraud Plaintiffs by means of making false and fraudulent representations.  These false and fraudulent representations, which include, *inter alia*, the herein identified medical records, reports, bills, statements and other documents, were prepared to support claims of the Defendants and their patients against insurance companies, including State Farm, and their insureds.

15.      These false, misleading, inaccurate and fraudulent medical records, reports, bills, statements, and other documents and representations including, but not limited to, the examples listed herein and in paragraphs 38 and 51 were intended, and continue to be intended, to generate payment for themselves and did induce payments from Plaintiffs for treatment, testing, services and goods which, although allegedly reasonable and necessary and provided to individuals insured by Plaintiffs, was not reasonable and necessary and, in part at least, was not even provided to the patients.

16.      These false, misleading, inaccurate and fraudulent medical records, reports, bills, statements, documents and representations were intended, and continue to be intended, to assist individuals, who claimed injuries as the result of accidents allegedly caused by individuals insured by Plaintiffs, in obtaining payments from Plaintiffs.  One

of the purposes of creating these records, reports, bills, statements and other documents and representations by Defendants was to encourage the referral of patients/plaintiffs from personal injury attorneys to the Defendant Medical Offices. As a result of the preparation and submission of these false, misleading, inaccurate and fraudulent medical records, reports, statements, bills, and other documents and representations by Defendants, Plaintiffs were caused to make payments to these patients/plaintiffs on their bodily injury claims.

17.     These false, misleading, inaccurate and fraudulent medical records, reports, bills, statements, and other documents and representations were intended, and continue to be intended, to assist individuals insured by Plaintiffs, who claimed injuries as the result of accidents allegedly caused by individuals without motor vehicle insurance (hereinafter "uninsured motorist claims") or insufficient motor vehicle insurance (hereinafter "underinsured motorist claims"), in obtaining payments from Plaintiffs on their uninsured and underinsured motorist claims.   One of the purposes of creating these records, reports, bills, statements and other documents and representations by Defendants was to encourage the referral of patients/plaintiffs from personal injury attorneys to the Defendant Medical Offices. As a result of the preparation and submission of these false, misleading, inaccurate and fraudulent medical records, reports, statements, bills, and other documents and representations, Plaintiffs were caused to make payments to these patients/plaintiffs on their uninsured motorist claims and underinsured motorist claims.

18.     The ongoing conspiracy and scheme to defraud is further outlined as follows:

19.     Ficchi and others established Ficchi P.C., Bensalem, South Philadelphia, and Olney, and operate these Defendant Medical Offices.  Through the operation of the Defendant Medical Offices, false, misleading, inaccurate and fraudulent medical records, reports, bills, statements, and other documents have been, and continued to be, created.  These above noted medical records, reports, statements, and other documents along with bills are submitted to insurance companies, including, but not limited to State Farm seeking payment for the identified treatment, testing, services and goods.  Due to these submissions by Defendants, State Farm has paid monies to the Defendant Medical Offices.  The monies paid by State Farm, and others, to the Defendant Medical Offices were, in turn, paid to Ficchi, the other Defendants, and other individuals and entities.

20.     Shenko established and operates Ortho-Sport and money from the conspiracy and scheme to defraud was transferred directly to Shenko or to Shenko through Ortho-Sport.  Through the operation of Ortho-Sport, false, misleading, inaccurate and fraudulent medical records, reports, bills, statements, and other documents have been, and continued to be, created.  These above noted medical records, reports, statements, and other documents along with bills are submitted to insurance companies, including, but not limited to State Farm seeking payment for the identified treatment, testing, services and goods.  Due to these submissions by Shenko and Ortho-Sport, State Farm has paid monies to Ortho-Sport.  The monies paid by State Farm, and others, to Ortho-Sport, in turn, are paid to Shenko and the other Defendants.

21.     Knox established and operates a business in his personal name and money from the conspiracy and scheme to defraud was transferred directly to Knox.  Through the operation of his business, false, misleading, inaccurate and fraudulent medical

records, reports, bills, statements, and other documents have been, and continued to be, created by Knox. These above noted medical records, reports, statements, and other documents along with bills are submitted to insurance companies, including, but not limited to State Farm seeking payment for the identified treatment, testing, and services. Due to these submissions by Knox, State Farm has paid monies to him. The monies paid by State Farm, and others, to Knox, in turn, are paid, in part, to the other Defendants.

22.     After motor vehicle and other accidents, individuals, claiming to be injured, presented and continue to present to the Defendant Medical Offices, often at the referral of their personal injury attorneys. Many of the patient referrals by the personal inury attorneys were due to direct solicitation of these referrals by the Defendants.

23.     Rather than properly assess the patients, identify their injuries, and provide them individualized treatment according to the proper standard of care, the patients were, and continue to be, placed on a standardized and predetermined treatment plan established and implemented by Ficchi, Shenko, Knox along with other individuals. This standardized and predetermined treatment plan consisted of, but was not limited to, physical therapy services, kinesio taping or strapping, psychological services, biofeedback, electromyography (EMG) and nerve conduction testing, MRIs, orthopedic consultations and other purported medical, physical therapy and chiropractic testing and services. This plan was implemented by the Defendants for the personal financial benefit of Ficchi, Shenko, Ortho-Sport, Knox, and the Defendant Medical Offices. The plan was also implemented by the Defendants to support past and future billing for services, to support uninsured, underinsured and bodily injury claims brought by individuals who presented to the Defendant Medical Offices, to magnify and misstate the condition of the

patients which in turn further encouraged the referral of patients/plaintiffs from personal injury attorneys to the Defendants' financial benefit, and to further the conspiracy and scheme to defraud.

24.     Many of these individuals presenting to the Defendant Medical Offices were either insured by Plaintiffs or claimed injuries as the result of motor vehicle or other accidents allegedly caused by or involving insureds of the Plaintiffs.

25.     It was a further part of the conspiracy and scheme to defraud that many of the documented examinations, modalities, testing, consultations, and other treatments and services purportedly provided at the Defendant Medical Offices and by the Defendants and their staff, including but not limited to, the examples listed in paragraphs 38 and 51, were not provided, were not provided for the medical necessity or medical benefit to the patient, were misrepresented as if provided specifically by Ficchi or a licensed provider when in fact that did not occur, were excessive, were inappropriate and represent significant, gross and intentional deviations from accepted standards of care, were not reimbursable under applicable law, and were not provided pursuant to applicable law.

26.     It was a further part of the conspiracy and scheme to defraud that the Defendants prepared, and continue to prepare, records, statements, bills, reports and other documents listing false, misleading and exaggerated medical conditions, complaints and injuries which were allegedly caused by motor vehicle and other accidents.

27.     It was a further part of the conspiracy and scheme to defraud that the Defendant Medical Offices, through the direction of Ficchi, generated standard, template, and non-patient specific, medical reports.  These reports were often generated in Ficchi's name even though he had no doctor-patient relationship with the patient.  As noted, these

reports list false, nonexistent, misleading and exaggerated medical conditions, complaints

and injuries, which were allegedly caused by motor vehicle and other accidents.  These

reports are addressed to attorneys and were created to support uninsured, underinsured

and bodily injury claims brought by individuals who presented to the Defendant Medical

Offices and to ensure continued patient referrals from attorneys.  These reports also were

created to support past and future billing for unnecessary and unreasonable treatment and

services purportedly rendered by the Defendants, rather than for the medical necessity or

medical benefit to the patient.

     28.    It was a further part of the conspiracy and scheme to defraud that

individuals involved in motor vehicle and other accidents, including individuals insured

by Plaintiffs, were purportedly provided services by Shenko at the Defendant Medical

Offices, which included consultations and evaluations, physical therapy services and

kinesio taping or strapping.

     29.    It was a further part of the conspiracy and scheme to defraud that Shenko

and Ortho-Sport paid money to Ficchi and the Defendant Medical Offices, directly or

indirectly, for the privilege of seeing and purportedly treating virtually all patients at the

Defendant Medical Offices and billing insurance companies, including State Farm, for

these examinations and services.  Shenko's monetary payments were part of a kickback

arrangement with the Defendants for the right to provide and bill for services to patients

at the Defendant Medical Offices.  In return, the Defendant Medical Offices do not refer

patients to other physical therapists for physical therapy services, evaluations, kinesio

taping or strapping.  Additionally, as part of the agreed upon arrangement between the

Defendants, Shenko and Ortho-Sport saw and provided services to patients of Ficchi,

10

Ficchi, P.C., Olney, Bensalem and South Philly at the Defendant Medical Offices without any referral.  Shenko and Ortho-Sport billed for the services purportedly provided by Shenko to patients knowing that the services allegedly rendered were done so as part of a kickback/payment arrangement and not for the medical benefit to the patient.  Defendants were aware that the services purportedly provided to patients by Shenko and billed by Shenko and Ortho-Sport were not medically necessary and that Shenko's actions were geared toward helping the scheme and conspiracy.

30.     It is a further part of the conspiracy and scheme to defraud that Shenko pays, as part of the kickback arrangement with the Defendants, for the right and ability to bill for services purportedly rendered at the Defendant Medical Offices and, as a result and as part of the kickback arrangement, confirms and supports the evaluation and diagnosis(es) of the doctor(s) at the Defendant Medical Offices, falsely concludes that the patient sustained abnormal condition(s) due to the accident and recommends additional and continued unnecessary treatment at the Defendant Medical Offices.  Defendants were aware of the above-noted arrangement and participated in the negotiation of the arrangement with Shenko.

31.     It is a further part of the conspiracy and scheme to defraud that the services provided by Shenko were conducted for his sole financial benefit and to support past and future billing and services, to support uninsured, underinsured and bodily injury claims brought by individuals who treated at the Defendant Medical Offices, to magnify and misstate the condition of the patient, and to further the conspiracy and scheme to defraud, rather than for the medical necessity or medical benefit to the patients.

11

However, despite this fact, his conduct financially benefitted the other Defendants, and other entities and individuals.

32.     It was a further part of the conspiracy and scheme to defraud that individuals involved in motor vehicle and other accidents, including individuals insured by Plaintiffs, were purportedly provided services by Knox at the Defendant Medical Offices which included consultations and evaluations, psychological services and biofeedback.

33.     It was a further part of the conspiracy and scheme to defraud that Knox pays money to Ficchi and the Defendant Medical Offices, directly or indirectly, for the privilege of seeing and purportedly providing services to virtually all patients at the Defendant Medical Offices and billing insurance companies for these examinations and services.  Knox's monetary payments were part of a kickback arrangement with the Defendants for the right and ability to bill for services allegedly rendered to patients at the Defendant Medical Offices.  In return, the Defendant Medical Offices do not refer patients to other psychologists for psychological evaluations and biofeedback treatment. Additionally, as part of the agreed upon arrangement between the Defendants, Knox saw and provided services to patients of Ficchi, Ficchi, P.C., Olney, Bensalem and South Philly at the Defendant Medical Offices without any referral.  Knox billed for the services purportedly provided to patients knowing that the services allegedly rendered were done so as part of a kickback arrangement and not for the medical benefit to the patient.  Defendants were aware that the services purportedly provided to patients by Knox and billed by Knox were not medically necessary, and that Knox's actions were geared toward helping the scheme and conspiracy.

34.     It is a further part of the conspiracy and scheme to defraud that Knox, as a result of and as part of the kickback arrangement, falsely concludes that the patient sustained abnormal condition(s) due to the accident.  Defendants were aware of the above-noted arrangement and participated in the negotiation of the arrangement with Knox.

35.     It is a further part of the conspiracy and scheme to defraud that the services provided by Knox were conducted for his sole financial benefit and to support past and future billing and services, to support uninsured, underinsured and bodily injury claims brought by individuals who treated at the Defendant Medical Offices, to magnify and misstate the condition of the patient, and to further the conspiracy and scheme to defraud, rather than for the medical necessity or medical benefit to the patients. However, despite this fact, his conduct financially benefitted the other Defendants, and other entities and individuals.

36.     All patients at the Defendant Medical Offices, according to Ficchi, are referred to Knox and Shenko regardless of the patients' complaints, injuries, prognosis, or actual medical needs.  Rather, this practice was actually done for the pecuniary gain of Ficchi, Knox, and Shenko

37.     Ficchi, Knox, and Shenko worked and were physically present at the Defendant Medical Offices, all purportedly provided services to patients at the Defendant Medical Offices, all had access to the medical files of patients at the Defendant Medical Offices, all communicated with each other relating to alleged patient services at the Defendant Medical Offices, and all knew that all patients were to be treated according to the standardized and predetermined treatment plan.  The standardized and predetermined

treatment plan also included referrals to both Shenko and Knox for unnecessary consultations, examinations and services, which they were aware of. Knox, Shenko, Ficchi, the Defendant Medical Offices, and others understood their roles and the roles of the other Defendants and others in the conspiracy and how the actions of each person and entity benefited them all. They also were aware that each played a critical role in the overall conspiracy and were cogs in its success.

38.     It was a further part of the conspiracy and scheme to defraud that false, fraudulent, misleading, and inaccurate medical reports, statements, records, bills, other documents, and representations were prepared by the Defendants and at the Defendant Medical Offices at the direction, consent and knowledge of Ficchi, Shenko, and Knox and sent to Plaintiffs to obtain payment.

39.     The medical records prepared for the patients who have treated with the Defendants are false, misleading, inaccurate and fraudulent. The following, in addition to those identified in paragraph 52, are examples of the Defendants' false, misleading, inaccurate and fraudulent medical records, reports, bills, representations and statements:

(a)  patient Deena Bovain (hereinafter "Bovain") presented to the Defendant Medical Offices, specifically Olney, for accidents that occurred on April 11, 2005 (hereinafter "first accident") and September 12, 2005 (hereinafter "second accident"). She was represented for both claims by Christopher Giddings, Esquire. In a discharge report addressed to Mr. Giddings and dated May 4, 2006, for the second accident, the report makes no mention of the first accident or the treatment for that accident in an attempt to conceal this fact. Additionally, in a discharge report addressed to Mr. Giddings dated June 15, 2006 for first accident, which is approximately five (5)

14

weeks after the discharge report for her second accident was prepared, the report did not identify her second accident or the injuries or treatment from the second accident in an attempt to conceal this fact.

Both discharge reports are in Ficchi's name and purportedly indicate Ficchi's opinions, patient diagnoses, and prognosis. In spite of these representations, Ficchi never provided any services to Bovain for either accident, which makes the representations false. The exact same diagnostic tests, specifically, cervical and lumbar MRIs performed on October 4, 2005, are listed in both the discharge reports for the first accident and the second accident as being ordered for each respective accident and the MRI findings are solely related by the Defendants to both accidents. The discharge reports were created by Defendants so that Mr. Giddings and Ms. Bovain could prosecute a personal injury claim against an insured of State Farm. The Defendants further attempted to conceal the occurrence of two separate accidents when they failed to mention, in therapy and progress notes, the occurrence of the other accident and went so far as to create separate progress notes for the same date of treatment to conceal the other accident and the patient's purported complaints and injuries therefrom. The Defendants deliberately failed to document the Bovains' purported injuries, complaints and objective findings in an attempt to support the Bovains' claims and increase their improper billing. The Defendants, specifically Ficchi, Ficchi, P.C. and Olney, documented Bovain's injuries from the accidents as permanent when she sustained no permanent injuries from the accidents. These material misrepresentations were directed to State Farm.

Bovain's children, Porsch and James, also presented to Olney after the first accident. They also were never seen by Ficchi; however, their discharge reports also

falsely identify Ficchi as their medical provider.  These reports are dated 3/20/06, 5/4/06,

and 6/15/06, addressed to Mr. Giddings, and were created by Defendants so that they and

Mr. Giddings could prosecute personal injury claims against an insured of State Farm.

Porsch testified that she received less treatment than that which was documented and

billed for by Ficchi, Ficchi, P.C. and Olney.

Shenko provided services to Bovain and her children on 7/22/05 and 8/19/05,

which were unnecessary and listed false and exaggerated injuries.  Knox provided

services to Bovain on 11/23/05, which was unnecessary and listed false and exaggerated

injuries.   These services were rendered pursuant to the predetermined treatment plan

identified above and pursuant to the kickback arrangement as described above.  Ficchi,

Shenko, and Knox knew that the records and reports would be used by Mr. Giddings in

prosecuting personal injury claims for Bovain and her children.  See also paragraph 52(f).

(b) patient Denise Mitchell (hereinafter "Mitchell") was purportedly

treated at the Defendant Medical Offices, specifically South Philly, for accidents on May

6, 2005 (hereinafter "first accident") and June 6, 2005 (hereinafter "second accident").

She was represented by Kenneth Saffren, Esq. for both accidents.  The initial report,

addressed to Mr. Saffren, dated June 9, 2005 for the second accident ignores the first

accident and the fact that Mitchell was treating for that accident at the Defendant Medical

Offices.  Additionally, on numerous occasions, for example June 7, 2005 and June 14,

2005, she allegedly received treatment for both accidents on the same day without

mention of the purported injuries or complaints from the other accident on the progress

notes in an effort to conceal the other accident and bill for the same services on the

separate claims for the two accidents.

The discharge report addressed to Mr. Saffren and dated September 11, 2006 for the first accident does not mention the second accident.  Conversely, the discharge report addressed to Mr. Saffren and dated October 16, 2006 for the second accident does not mention the first accident.  The concealing of prior and subsequent accidents through documentation was a standard practice at the Defendant Medical Offices to bolster the personal injury claims of their patients.  The reports are in Ficchi's name and purportedly indicate Ficchi's opinions, patient diagnoses, and prognoses.  These are all material misrepresentations.

Mitchell also presented to Knox for both accidents approximately one month apart.  The reports of Knox for both accidents are virtually verbatim and Knox recommended a pain management program, biofeedback therapy and a daily home relaxation program.  The first accident was not mentioned in Knox's report dated June 23, 2005 for the second accident.  Additionally, Shenko provided services to Mitchell on May 12, 2005, June 2, 2005, and June 16, 2005, which were unnecessary and listed false and exaggerated injuries.  Knox provided services on May 12, 2005 and June 23, 2005, which were unnecessary and listed false and exaggerated injuries.  These services were rendered pursuant to the predetermined treatment plan identified above and pursuant to the kickback arrangement as described above.  Ficchi, Shenko, and Knox knew that the records and reports would be used by Mr. Saffren in prosecuting personal injury claims for Mitchell.  See also paragraph 52(jj)

(c) patient Reuben Lee (hereinafter "Lee") presented to the Defendant Medical offices, specifically Olney, approximately ten (10) days after being involved in a motor vehicle accident at his attorney's referral.  Lee received treatment to an area of his

body, specifically his leg, that was not injured in the accident and Lee denied receiving

any treatment to that area. In spite of this, the Defendants' medical records and bills,

document a false injury to his leg and purported treatment to this injured area. Ficchi

testified as Lee's expert witness in his lawsuit and attempted to convince the jury to

accept his false testimony of fictitiously and exaggerated injuries so that the jury would

award damages against an insured of Plaintiffs.

Additionally, Shenko provided services to Lee on April 29, 2005, which were

unnecessary and listed false and exaggerated injuries. Knox provided services to Lee on

April 26, 2005, which were unnecessary and listed false and exaggerated injuries. These

services were rendered pursuant to the pre-determined treatment plan identified above

and pursuant to the kickback arrangement as described above. Ficchi, Shenko, and Knox

knew that the records and reports would be used to prosecute Lee's personal injury claim.

See also paragraph 52(hh).

(d) patient Nicole Anderson (hereinafter "Anderson") was involved in an

accident on April 29, 2007 and, thereafter, presented to the Defendant Medical Offices,

specifically South Philly. The Defendant medical records documented specific services

that were not rendered to this patient, for example "back school." Anderson also received

physical therapy services from unlicensed staff at South Philly. Defendants, Ficchi,

Ficchi, P.C. and South Philly, however, billed these services falsely under the name of a

licensed individual. See also paragraph 52(ss).

(e) patient Khalid Watson (hereinafter "Watson") was allegedly involved

in an accident on October 8, 2008 and presented to the Defendant Medical Offices,

specifically Olney. Watson did not receive injections which were identified in the

medical records and billed for.  Additionally, Knox provided services to Watson on

October 29, 2008, which were unnecessary and listed false or exaggerated injuries.

These services were rendered pursuant to the predetermined treatment plan identified

above and pursuant to the kickback arrangement as described above.  Shenko provided

services to Watson on October 31, 2008 and November 5, 2008, which were unnecessary

and listed false or exaggerated injuries.  These services were rendered pursuant to the

predetermined treatment plan identified above and pursuant to the kickback arrangement

as described above.

Watson also received physical therapy services from unlicensed staff at Olney.

Defendants, Ficchi, Ficchi, P.C. and Olney, however, billed these services falsely under

the name of a licensed individual.  See also paragraph 52(uu).

(f) patient Evette Curry (hereinafter "Curry") was involved in an accident

on August 15, 2007 and presented to Olney.  The Defendants created a discharge report

dated April 28, 2008 which lists treatment, injuries, diagnoses, and prognosis which are

attributed to Ficchi as his.  In spite of this, Ficchi never even evaluated Curry and,

therefore, the report was false.  The report also documents permanent injuries caused by

the accident when Curry did not suffer any permanent injuries in the accident.  The

discharge report was addressed to Andrew Gaber, Esquire and was created by Defendants

so that Mr. Gaber and Curry could prosecute a personal injury claim against an insured of

State Farm.  Shenko provided services to Curry on September 29, 2007, which were

unnecessary and listed false or exaggerated injuries.  Knox provided services to Curry on

September 29, 2007, which were unnecessary and listed false or exaggerated injuries.

These services were rendered pursuant to the predetermined treatment plan identified

above and pursuant to the kickback arrangement as described above.  Ficchi, Shenko, and Knox knew that the records and reports would be used to prosecute Curry's personal injury claim.  See also paragraph 52(g).

   (g) patient Leon Bird (hereinafter "Bird") was involved in an accident on September 12, 2005 and presented to the Defendant Medical Offices, specifically, Bensalem, at the referral of his attorney.  Shenko purportedly provided services to Bird on October 13, 2005 and October 26, 2005, which were unnecessary and listed false or exaggerated injuries.  Knox provided services to Bird on October 20, 2005, which were unnecessary and listed false or exaggerated injuries.  These services were rendered pursuant to the predetermined treatment plan identified above and pursuant to the kickback arrangement as described above.  Ficchi, Shenko and Knox knew that the records and reports would be used to prosecute Bird's personal injury claim.  See also paragraph 52(a).

   (h) patient Nardesha Jackson (hereinafter "Jackson") was involved in an accident on August 30, 2005 and presented to the Defendant Medical Offices, specifically South Philly.  The Defendants created a discharge report dated May 11, 2006 and addressed to Robert P. Weiner in the name of Ficchi which lists treatment, diagnoses, and prognosis which are  attributed to Ficchi, but these representations are false.  Shenko provided services to Jackson on September 29, 2005, which were unnecessary and listed false or exaggerated injuries.  Knox provided services to Jackson on November 8, 2005, which were unnecessary and listed false or exaggerated injuries.  These services were rendered pursuant to the predetermined treatment plan identified above and pursuant to the kickback arrangement as described above.  Ficchi, Shenko, and Knox knew that the

records and reports would be used to prosecute Jackson's personal injury claim.  See also paragraph 52(h).

(i) patient Harvey Boyd (hereinafter "Boyd") was involved in an accident on March 24, 2008 and presented to the Defendant Medical Offices, specifically South Philly.  Shenko provided services to Boyd on May 1, 2008 and May 20, 2008, which were unnecessary and listed false or exaggerated injuries.  Knox provided services to Boyd on April 1, 2008, which were unnecessary and listed false or exaggerated injuries. These services were rendered pursuant to the predetermined treatment plan identified above and pursuant to the kickback arrangement as described above.  Ficchi, Shenko, and Knox knew that the records and reports would be used to prosecute Boyd's personal injury claim.  See also paragraph 52(tt).

(j) patient Keith Brewer (hereinafter "Brewer") was involved in an accident on November 8, 2006 and presented to the Defendant Medical Offices, specifically South Philly.   Additionally, Shenko provided services to Brewer on December 6, 2006, which were unnecessary and listed false or exaggerated injuries. These services were rendered pursuant to the predetermined treatment plan identified above and pursuant to the kickback arrangement as described above.  See also paragraph 52(d).

(k) patient Helen Burroughs (hereinafter "Burroughs") was involved in an accident on January 25, 2007 and presented to the Defendant Medical Offices, specifically South Philly.  The Defendants created a discharge report dated September 13, 2007 and addressed to Michael Luber, Esquire in the name of Ficchi which lists treatment, diagnoses, injuries, prognosis which are purportedly attributed to Ficchi, but

these representations are false.  Additionally, Shenko provided services to Burroughs on February 21, 2007 and February 28, 2007, which were unnecessary and listed false or exaggerated injuries.  Knox provided services to Burroughs on February 7, 2007 and February 15, 2007, which were unnecessary and listed false or exaggerated injuries. These services were rendered pursuant to the predetermined treatment plan identified above and pursuant to the kickback arrangement as described above.  See also paragraph 52(e).

(l) patient Donald West (hereinafter "West") was involved in an accident on February 21, 2007 and presented to the Defendant Medical Offices, specifically Olney.  The Defendants created a report dated July 3, 2007 in the name of Ficchi, which lists treatment, diagnoses, injuries and prognosis, which are purportedly attributed to Ficchi, but these representations are false.  Ficchi never even provided any services to West.

Additionally, Shenko provided services to West on April 10, 2007, which were unnecessary and false or exaggerated injuries.  Knox provided services on April 11, 2007, April 25, 2007 and May 16, 2007, which were unnecessary and listed false or exaggerated injuries.  These services were rendered pursuant to the predetermined treatment plan identified above and pursuant to the kickback arrangement as described above.  See also paragraph 52(vv).

(m) patient Edward Russo (hereinafter "Russo") was involved in an accident on November 10, 2005 and presented to the Defendant Medical Offices, specifically Bensalem.  Additionally, Knox provided services to Russo on December 30, 2005, which were unnecessary and listed false or exaggerated injuries.  These services

were rendered pursuant to the predetermined treatment plan identified above and

pursuant to the kickback arrangement as described above.  See also paragraph 52(l).

   (n) patient Asa Berger (hereinafter "Berger") was involved in an accident

on January 18, 2005 and presented to the Defendant Medical Offices, specifically

Bensalem.  Additionally, Knox provided services to Berger on February 17, 2005, which

were unnecessary and listed false or exaggerated injuries.  These services were rendered

pursuant to the predetermined treatment plan identified above and pursuant to the

kickback arrangement as described above.  See also paragraph 52(o).

   (o) patient Williams Miles (hereinafter "Miles") was involved in an

accident on November 8, 2006 and presented to the Defendant Medical Offices,

specifically Bensalem.  Additionally, Shenko provided services to Miles on November

22, 2006, which were unnecessary and listed false or exaggerated injuries.  These

services were rendered pursuant to the predetermined treatment plan identified above and

pursuant to the kickback arrangement as described above.  See also paragraph 52(kk).

  40. It was a further part of the conspiracy and scheme to defraud

that Defendants created, produced, and sent, directly or indirectly, to Plaintiffs, false,

fraudulent, misleading and inaccurate medical reports, statements, records, bills, other

documents, and representations to induce and deceive Plaintiffs into making improper

and incorrect insurance coverage and payment decisions relating to uninsured and

underinsured motorist claims.

  41. It was a further part of the conspiracy and scheme to defraud that

Defendants created, produced, and sent, directly or indirectly, to Plaintiffs, false,

fraudulent, misleading and inaccurate medical reports, statements, records, bills, other

documents, and representations to assist patients in obtaining payments from Plaintiffs for alleged injuries arising out of motor vehicle and other accidents that were allegedly caused by individuals insured with Plaintiffs.

42. Defendants mailed to Plaintiffs the herein described medical reports, records, bills, statements, other documents, and representations. Defendants also mailed the herein described medical reports, records, bills, statements, other documents, and representations to others, including personal injury attorneys, patients and defense attorneys with the knowledge that the herein described medical reports, records, bills, statements, other documents, and representations would be relied upon by Plaintiffs, their employees, and others in making payment decisions and when making decisions regarding the presentation of personal injury claims.

43. These medical reports, records, bills, statements, other documents, and representations were false, fraudulent, misleading, and inaccurate for the reasons stated herein, including, but not limited to, that they concerned examinations, therapy, treatments, diagnostic testing, consultations and other related goods and services that were not provided, were provided pursuant to a standard and predetermined treatment plan, were not provided pursuant to applicable law, were provided in violation of applicable law, were not reimbursable under applicable law and were not provided for the medical necessity or medical benefit of the patient.

44. Additionally, these medical reports, medical records, statements, bills and other documents were false, fraudulent, misleading, and inaccurate as they inaccurately reflect and misrepresent the identity of the actual treatment provider and the author of the medical reports, medical records, other documents and records, list false, misleading, and

exaggerated medical conditions, complaints and injuries, and deviate from accepted standards of care and documentation.

45.     In order to secure payments from Plaintiffs, Defendants issued bills and invoices in their name, the name of the Defendant Medical Offices, and Ortho-Sport for patient services that were allegedly performed by their licensed and unlicensed employees.  The issued bills and invoices include certain current procedural terminology (hereinafter "CPT") codes to document the level of service and nature of service.  Under this system, the provider utilizes CPT codes to report services and treatment for reimbursement. 75 Pa. C.S.A. §1797, et. seq.  Plaintiffs reasonably relied upon representations set forth on Defendants' medical reports,  records, bills, statements, and other documents to form payment decisions.

46.     Defendants and other individuals and entities collected and retained a portion of the proceeds paid by insurance companies, including Plaintiffs, for the patient care services purportedly performed and provided at the Defendant Medical Offices and billed for by Defendants, their agents, and employees.

47.     From at least the year 2004 to the present, Defendants issued, or caused to be issued, medical reports, records, bills, statements, other documents, and representations, herein described, in the name of Ficchi, Shenko, Knox, Ortho-Sport, Ficchi P.C., Olney, Bensalem, and South Philadelphia, and their employees and agents, which were submitted to Plaintiffs in support of their bills.

48.     From at least the year 2004 to the present, Plaintiffs paid at least $1,500,000.00 to Defendants, which Plaintiffs seek to recover as compensatory damages in this case.  Plaintiffs also seek as damages monies paid and costs incurred in claims for

uninsured motorist benefits, underinsured motorist benefits and claims for bodily injury in an amount to be determined, along with damages described throughout this Second Amended Complaint and available pursuant to the causes of action described herein. Plaintiffs expect damages to continue to accrue throughout the litigation.

49.     Defendants issued, or caused to be issued medical reports, records statements, other documents and representations in the name of Defendants, the Defendant Medical Offices, their employees and agents, which were sent, directly or indirectly, to Plaintiffs in support of uninsured motorist, underinsured motorist and bodily injury claims and used against Plaintiffs and insureds of Plaintiffs in uninsured motorist, underinsured motorist and bodily injury claims.

50.     The medical reports, records, bills, statements, other documents and representations submitted by Defendants and the Defendant Medical Offices described herein contain false and fraudulent representations intended to extract payments from Plaintiffs in violation of 75 Pa. C.S.A. §1701 et. seq. and other applicable Pennsylvania law.

51.     In reasonable reliance on and in belief of the accuracy of the medical reports, records, bills, statements, other documents and representations from Defendants and the Defendant Medical Offices, Plaintiffs made payments to Defendants. Furthermore, Plaintiffs also incurred damages by making payments to individuals insured by Plaintiffs involved in alleged accidents with uninsured and underinsured motorists in reliance and due to the bills, medical records, medical reports, statements, other documents and representations from Defendants.  Plaintiffs also made payments for alleged bodily injuries to individuals involved in accidents allegedly caused by Plaintiffs'

insureds in reliance and due to the bills, medical records, medical reports, statements,

other documents and representations from the Defendants.  Plaintiffs also expended sums

of money on investigation, claims processing and legal defense in connection with the

aforesaid payments.  Plaintiffs seek to recover all of these payments and expended sums

as compensatory damages.

52.     In furtherance of and for the purpose of executing the conspiracy and

scheme to defraud, Defendants, on numerous occasions, used and caused to be used mail

depositories of the United States Postal Service and wires by both placing and causing to

be placed correspondence, medical bills, medical reports, medical records, statements,

and other mailable matter in said depositories and by removing and causing to be

removed letters and other mailable matter from said depositories and by the use of

facsimile machines to send and receive correspondence, medical bills, medical reports,

medical records, statements, and other documents.  The Defendants sent the false,

fraudulent, misleading, and inaccurate correspondence, medical bills, medical records,

medical reports, statements, and other documents to various individuals and entities,

including personal injury attorneys, defense attorneys, and insurance companies

including Plaintiffs.   Said use of the mails and wiring by the Defendants included, but

was not limited to, the following:

      (a)     Records for patient Leon Bird Jr. were sent by Defendants,
Ficchi, Knox, Shenko, Ficchi, P.C., Ortho-Sport, and Bensalem
to Leonard Hill, Esquire and Plaintiffs concerning claim number
38-V801-381.  The records sent by Ficchi, Ficchi, P.C., and
Bensalem include, but may not be limited to, those dated
10/13/05, 10/20/05, 10/26/05, 11/2/05, 11/4/05, 11/5/05,
11/9/05, 11/11/05, 11/17/05, 11/23/05, 12/1/05, 12/3/05,

12/8/05, 12/22/05, 12/29/05, and 1/6/06 and through 2/24/06.
The records sent by Knox include, but may not be limited to,
those dated 10/20/05. The records sent by Shenko and Othro-
Sport include, but may not be limited to, those dated 10/13/05
and 10/26/05.

(b)  Records for patient Lamar Jones were sent by Defendants,
Ficchi, Shenko, Ficchi, P.C., Ortho-Sport, and Bensalem to
Leonard Hill, Esquire and Plaintiffs concerning claim number
38-V801-381. The records sent by Ficchi, Ficchi, P.C., and
Bensalem include, but may not be limited to, those dated
10/13/05, 10/20/05, 10/24/05, 10/26/05, 11/3/05, 11/8/05,
11/10/05, and 11/16/05. The records sent by Shenko and Ortho-
Sport include, but may not be limited to, those dated 10/26/05.

(c)  Records for patient Kissundai Boodoo were sent by
Defendants, Ficchi, Shenko, Ficchi, P.C., Ortho-Sport, and
Olney to Plaintiffs concerning claim number 38-K403-839. The
records sent by Ficchi, Ficchi, P.C., and Olney include, but may
not be limited to, those dated 3/23/04, 3/26/04, 3/31/04, 4/01/04,
4/5/04, 4/7/04, 4/12/04, 4/13/04, 4/14/04, 4/21/04, 4/26/04,
4/28/04, 5/3/04, 5/5/04, 5/15/04, 5/12/04, 5/17/04, 5/26/04,
6/2/04, 6/9/04, 6/14/04, 6/16/04, 6/17/04, 6/23/04, 6/25/04,
6/30/04, 7/9/04, 7/14/04, 7/15/04, 7/19/04, 7/21/04, 8/4/04,
8/18/04, 8/19/04, 8/26/04, 9/1/04, 9/2/04, 9/8/04, 9/9/04,
9/13/04, and 12/08/04. The records sent by Shenko and Ortho-
Sport include, but may not be limited to, those dated 3/26/04,
6/25/04, and 7/9/04.

(d)  Records for patient Keith Brewer were sent by Defendants,
Shenko, Ficchi, P.C., Ortho-Sport, Olney, and South Philly to
Sander Gorberg, Esquire and Plaintiffs concerning claim
number 38-L128-251. The records sent by Shenko and Ortho-
Sport include, but may not be limited to, those dated 12/06/06
and 1/31/07. The records sent by Ficchi, P.C., South Philly, and
Olney include, but may not be limited to, those dated 12/6/06,
12/9/06, 12/12/06, 1/11/07, 1/22/07, 1/31/07, 2/12/07, 2/15/07,
and 4/25/07.

(e)  Records for patient Helen Burroughs were sent by
Defendants, Ficchi, Shenko, Knox, Ficchi, P.C., Ortho-Sport,
and South Philly to Michael Luber, Esquire and Plaintiffs
concerning claim number 38-L190-937. The records sent by
Shenko and Ortho-Sport include, but may not be limited to,
those dated 2/21/07 and 2/28/07. The records sent by Knox
include, but may not be limited to, those dated 2/15/07 and

28

2/7/07.  The records sent by Ficchi, P.C. and South Philly include, but may not be limited to, those dated 2/13/07, 2/15/07, 2/16/07, 2/19/07, 2/20/07, 2/21/07, 2/27/07, 2/28/07, 3/1/07, 3/5/07, 3/7/07, 3/8/07, 3/12/07, 3/13/07, 3/15/07, 3/20/07, 3/21/07, 3/22/07, 3/26/07, 3/28/07, 3/29/07, 4/3/07, 4/5/07, 4/10/07, 4/11/07, 4/17/07, 4/18/07, 4/24/07, 4/25/07, 5/1/07, 5/2/07, 5/10/07, 5/15/07, 5/22/07, 6/1/07, 6/5/07, 6/28/07, 7/2/07, 7/12/07, 7/31/07 and 8/7/07.

(f)      Records for patient Deena Bovain were sent by Defendants, Ficchi, Shenko, Ficchi, P.C., Ortho-Sport, and Olney to Christopher Giddings, Esquire and Plaintiffs concerning claim number 38-K652-729.  The records sent by Ficchi include, but may not be limited to, those dated  7/16/05, 7/18/05, 7/22/05, 7/26/05, 7/28/05, 8/1/05, 8/3/05, 8/8/05, 8/15/05, 8/19/05, 8/22/05, 8/31/05, 9/8/05, 9/16/05, 9/18/05, 9/19/05, 9/22/05, 9/29/05 and 10/1/05.  The records sent by Shenko and Ortho-Sport  include, but may not be limited to, those dated 7/22/05 and 8/19/05.  The records sent by Ficchi, P.C. and Olney include, but may not be limited to, those dated 7/16/05, 2/23/06, 3/9/06 and 3/13/06.

(g)      Records for patient Evette Curry were sent by Defendants, Ficchi, Shenko, Knox, Ficchi, P.C., Ortho-Sport, and Olney to Sander Gorber, Esquire and Plaintiffs concerning claim number 38-L286-438.  The records sent by Ficchi and Olney include, but may not be limited to, those dated 9/25/07 and 11/30/07.  The records sent by Knox include, but may not be limited to, those dated 9/26/07.  The records sent by Ficchi, P.C. include, but may not be limited to, those dated 9/25/07 and 11/30/07.  The records sent by Shenko and Ortho-Sport include, but may not be limited to those dated 9/29/07.  The records sent by Olney include, but may not be limited to, those dated 9/25/07, 9/26/07, 9/29/07, 10/2/07, 10/4/07, 10/5/07, 10/8/07, 10/10/07, 10/13/07, 10/16/07, 10/18/07, 10/22/07, 10/24/07, 10/26/07, 10/29/07, 10/31/07, 11/5/07, 11/8/07, 11/10/07, 11/12/07, 11/13/07, 11/17/07, 11/27/07, 11/28/07, 12/1/07, 12/4/07, 12/6/07, 12/10/07, 12/11/07, 12/12/07, 12/17/07, 12/18/07, 12/20/07, 12/27/07, 12/29/07, 1/5/08, 1/8/08, and 1/9/08.

(h)      Records for patient Nardesha Jackson were sent by Defendants, Ficchi, Shenko, Knox, Ficchi, P.C., Ortho-Sport, and South Philly to Robert Weiner, Esquire and Plaintiffs concerning claim number 38-K738-595.  The records sent by Ficchi, Ficchi, P.C., and South Philly include, but may not be limited to, those dated 9/29/05, 10/3/05, 10/10/05, 10/12/05,

10/14/05, 10/26/05, 11/1/05, 11/8/05, 11/10/05, 11/14/05, 12/7/05, 12/19/05, 12/28/05, 1/9/06, 1/10/06, 1/11/06 and 5/11/06.  The records sent by Shenko and Ortho-Sport include, but may not be limited to, those dated 9/29/05.  The records sent by Knox include, but may not be limited to, those dated 11/8/05. The records sent by South Philly include, but may not be limited to, those dated 1/19/06, 2/1/06, 2/4/06, 2/9/06, 3/13/06, and 3/22/06.

(i)     Records for patient Trina Lindsay were sent by Defendants, Ficchi and Ficchi, P.C. to James M. Turner, Esquire and Plaintiffs concerning claim number 38-K367-760.  The records sent by Ficchi include, but may not be limited to, those dated 2/16/04 and 1/10/05.  The records sent by Ficchi, P.C. include, but may not be limited to, those dated 2/16/04, 2/17/04, 2/18/04, 2/20/04, 2/25/04, 2/27/04, 2/28/04, 3/2/04, 3/3/04, 3/5/04, 3/8/04, 3/11/04, 3/12/04, 3/18/04, 3/23/04, 3/24/04, 3/26/04, 3/29/04, 4/2/04, 4/6/04, 4/7/04, 4/8/04, 4/9/04, 4/13/04, 4/15/04, 4/16/04, 4/19/04, 4/20/04, 4/22/04, 4/26/04, 4/27/04, 4/28/04, 4/29/04, 5/4/04, 5/6/04, 5/11/04, 5/14/04, 5/18/04, 5/19/04, 5/20/04 and 6/4/04.

(j)     Records for patient Ralph Miles were sent by Defendants, Ficchi, Shenko, Ficchi, P.C., Ortho-Sport, and Bensalem to Marshall Bleefield, Esquire, Jeffrey Braham, Esquire, and Plaintiffs concerning claim number 38-K508-941. The records sent by Ficchi include, but may not be limited to, those dated 11/1/04 and 12/5/05.  The records sent by Shenko and Ortho-Sport include, but may not be limited to, those dated 10/20/04. The records sent by Ficchi, P.C. include, but may not be limited to, those dated 9/10/04, 9/17/04, 9/18/04, 9/22/04, 10/1/04, 10/4/04, 10/8/04, 10/11/04, 10/20/04, 10/25/04, 11/4/04, 11/11/04, 11/18/04, 11/23/04, 12/9/04, 1/20/05, 1/25/05, 2/15/05, 2/22/05, 3/3/05, 3/10/05, 5/19/05, 5/19/05 and 7/14/05.

(k)     Records for patient George Pratt were sent by Defendants, Ficchi, Shenko, Ficchi, P.C., and Ortho-Sport to Nancy Cohen, Esquire and Plaintiffs concerning claim number 38-K370-993. The records sent by Ficchi include, but may not be limited to, those dated 3/4/04 and 7/26/04.  The records sent by Shenko and Ortho-Sport include, but may not be limited to, those dated 4/1/04, 5/6/04, 5/20/04, 6/3/04, and 6/17/04.  The records sent by Ficchi, P.C. include, but may not be limited to, those dated 2/12/04, 2/18/04, 2/19/04, 3/1/04, 3/2/04, 3/6/04, 3/8/04, 3/10/04, 3/18/04, 3/23/04, 4/1/04, 4/21/04, 4/26/04, 4/28/04,

5/20/04, 5/21/04, 5/27/04, 6/1/04, 6/3/04, 6/17/04, 6/18/04, and 6/21/04.

(l)     Records for patient Edward Russo were sent by Defendants, Ficchi, Knox, Ficchi, P.C., and Bensalem to Robert Baccari, Esquire and Plaintiffs concerning claim number 38-K783-780.  The records sent by Ficchi and the Defendants include, but may not be limited to, those dated 11/28/05.  The records sent by Knox include, but may not be limited to, those dated 12/30/05.  The records sent by Ficchi, P.C. and Bensalem include, but may not be limited to, those dated 11/29/05, 11/30/05, 12/6/05, 12/8/05, 12/12/05, 12/14/05, 12/15/05, 12/20/05, 12/29/05, 12/30/05, 1/3/06, 1/5/06, 1/12/06, 1/15/06, 1/18/06, 1/20/06, 1/25/06, 2/1/06, 2/2/06 and 2/3/06.  The records sent by Bensalem include, but may not be limited to, those dated 11/28/05.

(m)     Records for patient Tyra Wilson were sent by Defendants, Ficchi, Knox, and Ficchi, P.C. to Robert Baccari, Esquire and Plaintiffs concerning claim number 38-K547-112.  The records sent by Ficchi and the Defendants include, but may not be limited to, those dated 6/15/05.  The records sent by Knox include, but may not be limited to, those dated 2/19/05.  The records sent by Ficchi, P.C. include, but may not be limited to, those dated 12/2/04, 12/4/04, 12/8/04, 12/9/04, 12/11/04, 12/15/04, 12/16/04, 12/18/04, 12/20/04, 12/23/04, 12/27/04, 12/28/04, 1/3/05, 1/13/05, 1/15/05, 1/20/05, 1/20/05, 1/26/05, 1/27/05, 1/29/05, 2/19/05, 3/19/05, 3/21/05, 3/22/05 and 3/24/05.

(n)     Records for patient Isiaka Balogun were sent by Defendants, Ficchi, Knox, and South Philly to Mark Kirby, Esquire and Plaintiffs concerning claim number 38-K695-698.  The records sent by Ficchi include, but may not be limited to, those dated 7/6/05, 7/7/05, 7/12/05, 7/15/05, 7/20/05, 7/21/05, 7/29/05, 8/1/05, 8/2/05, 8/03/05, 8/9/05, 8/11/05, 8/17/05, 8/18/05, 8/23/05, 8/26/05, 9/1/05, 9/8/05, 9/21/05, 9/29/05, 10/11/05, 10/27/05 and 6/19/06  The records sent by Knox include, but may not be limited to, those dated 7/12/05.

(o)     Records for patient Asa Berger were sent by Defendants, Ficchi, Knox, Ficchi, P.C., and Bensalem to Ellen Kahhane, Esquire and Plaintiffs concerning claim number 38-K602-455.  The records sent by Ficchi include, but may not be limited to, those dated 1/25/05.  The records sent by Knox include, but may not be limited to, those dated 2/17/05.  The records sent by

Ficchi, P.C. include, but may not be limited to, those dated
1/27/05, 2/4/05, 2/8/05, 2/15/05, 2/17/05, 3/3/05, 3/10/05,
3/17/05, 4/6/05, 5/6/05, 6/14/05, and 8/5/05.  The records sent
by Bensalem include, but may not be limited to, those dated
11/10/06.

(p)    Records for patient Joseph Maffei were sent by Defendants,
Ficchi, Shenko, Ficchi, P.C., Ortho-Sport, Olney, and Bensalem
to Stacey Schwartz, Esquire and/or Plaintiffs concerning claim
number 38-K828-101.  The records sent by Ficchi include, but
may not be limited to, those dated 1/26/05 and 6/10/06.  The
records sent by Shenko and Ortho-Sport include, but may not be
limited to, those dated 5/2/06 and 5/16/06.  The records sent by
Olney include, but may not be limited to, those dated 2/2/06,
2/9/06, 2/16/06, 3/2/06, 3/9/06, 3/16/06, 3/23/06, 3/30/06,
4/6/06, 4/28/06, 5/2/06, 5/9/06, 5/16/06, 5/23/06, 5/30/06,
6/6/06, 6/9/06, and 6/10/06.  The records sent by Bensalem
include, but may not be limited to, those dated 4/24/06.

(q)    Records for patient Raymond Johnson were sent by
Defendants, Shenko, Knox, Ortho-Sport, and Olney to Plaintiffs
concerning claim number 38-L398-793.  The records sent by
Shenko and Ortho-Sport include, but may not be limited to,
those dated 2/29/08.  The records sent by Knox include, but may
not be limited to, those dated 2/27/08.  The records sent by
Olney include, but may not be limited to, those dated 3/10/08,
3/17/08, 3/18/08, 3/24/08, 3/26/08, 3/28/08, 4/2/08, 4/8/08,
4/12/08, 4/14/08, 4/21/08, 4/23/08, 4/26/08, 4/28/08, 4/30/08,
5/8/08, 5/13/08, 5/15/08, 5/17/08, 5/22/08, 5/27/08, 5/29/08,
5/31/08, 6/2/08, 6/4/08, 6/12/08, 6/16/08, 6/18/08, 6/20/08,
6/25/08, 6/30/08, 7/7/08, 7/11/08, 7/14/08, 7/16/08, 7/18/08,
7/23/08, 7/30/08, 8/2/08, 8/4/08, 8/13/08, and 8/19/08.

(r)    Records for patient Rhonda Stith were sent by Defendants,
Ficchi, Shenko, Knox, Ortho-Sport, and Olney to Plaintiffs
concerning claim number 38-L229-857.  The records sent by
Ficchi include, but may not be limited to, those dated 5/16/07
and 8/14/07.  The records sent by Shenko and Ortho-Sport
include, but may not be limited to, those dated 5/16/07 and
5/18/07.  The records sent by Knox include, but may not be
limited to, those dated 5/23/07.  The records sent by Olney
include, but may not be limited to, those dated 5/17/07, 5/18/07,
5/22/07, 5/23/07, 5/24/07, 5/29/07, 5/30/07, 5/31/07, 6/5/07,
6/7/07, 6/10/07, 6/12/07, 6/13/07, 6/14/07, 6/19/07, 6/20/07,
6/21/07, 6/26/07, 6/27/07, 6/28/07, 7/3/07, 7/5/07, 7/6/07,

7/8/07, 7/10/07, 7/11/07, 7/12/07, 7/17/07, 7/24/07, 7/25/07, 7/31/07, 8/1/07, 8/7/07, 8/16/07 and 10/29/07.

(s)   Records for patient Gregory Tucker were sent by Defendant, South Philly to Andrew Gay, Esquire and Plaintiffs concerning claim number 38-L434-317. The records sent by South Philly include, but may not be limited to, those dated 4/1/08, 4/2/08, 4/3/08, 4/7/08, 4/8/08, 4/10/08, 4/14/08, 4/15/08, 4/17/08, 4/21/08, 4/22/08, 4/24/08, 4/28/08, 5/5/08, 5/10/08, 5/12/08, 5/17/08, 5/27/08, 6/3/08, 6/18/08 and 8/22/08. The records sent by Knox include, but may not be limited to, those dated 4/3/08. The records sent by Shenko and Ortho-Sport include, but may not be limited to, those dated 5/6/08. The records sent by Ficchi include, but may not be limited to, those dated 4/1/08.

(t)   Records for patient Erica Anderson were sent by Defendants, Ficchi, Knox, Shenko, Ortho-Sport and South Philly to David Fine, Esquire and/or Plaintiffs concerning claim number 20-6305-647. The records sent by Ficchi include, but may not be limited to, those dated 8/31/07. The records sent by Knox include, but may not be limited to, those dated 9/6/07. The records sent by Shenko and Ortho-Sport include, but may not be limited to those dated 9/20/07. The records sent by South Philly include, but may not be limited to, those dated 8/31/07, 9/6/07, 9/7/07, 9/11/07, 9/14/07, 9/20/07, 9/21/07, 10/10/07, 10/11/07, 10/25/07, 10/26/07, 11/7/07, 11/12/07, 12/2/07, 12/14/07, 12/26/07, 1/4/08, 1/8/08, 1/12/08, 2/7/08, 3/3/08, 3/13/08, 3/25/08, 3/27/08, 4/10/08, 4/17/08, 5/20/08 and 1/27/09.

(u)   Records for patient David Bradley were sent by Defendants, Shenko, Knox, Ficchi, P.C., Ortho-Sport, and/or South Philly to John Costalas, Esquire and Plaintiffs concerning claim number 38-L207-431. The records sent by Shenko and Ortho-Sport include, but may not be limited to, those dated 4/11/07. The records sent by Knox include, but may not be limited to, those dated 4/19/07. The records sent by Ficchi and South Philly include, but may not be limited to, those dated 3/22/07, 3/26/07, 3/29/07, 4/11/07, 4/19/07, 4/26/07, 5/1/07, 5/3/07, 6/1/07, 6/12/07, 6/22/07, 7/2/07, 7/12/07, 7/16/07, 7/25/07 and 8/6/07.

(v)   Records for patient Carolina Colon were sent by Defendants, Shenko, Knox, Ficchi, P.C., Ortho-Sport, and South Philly to Attarah Feenane, Esquire and Plaintiffs concerning

claim number 30-V885-713.  The records sent by Shenko and
Ortho-Sport include, but may not be limited to, those dated
2/21/07 and 5/16/07.  The records sent by Knox include, but
may not be limited to, those dated 2/20/07.  The records sent by
Ficchi, South Philly, and Ficchi, P.C. include, but may not be
limited to, those dated 2/15/07.  The records sent by South
Philly include, but may not be limited to, those dated 2/20/07,
2/21/07, 2/24/07, 2/26/07, 2/26/07, 2/27/07, 3/1/07, 3/6/07,
3/7/07, 3/8/07, 3/14/07, 3/15/07, 3/27/07, 3/28/07, 3/29/07,
4/4/07, 4/5/07, 4/6/07, 4/10/07, 4/11/07, 4/14/07, 4/19/07,
4/23/07, 4/24/07, 5/2/07, 5/3/07, 5/8/07, 5/14/07, 5/15/07,
5/16/07, 5/18/07, 5/21/07, 5/30/07, 5/31/07, 6/4/07, 6/6/07,
6/11/07, 6/14/07, 6/17/07, 6/19/07, 6/27/07, 7/11/07, 7/20/07,
8/3/07, and 10/31/07.

(w)     Records for patient Donna Angarola were sent by
Defendants, Shenko, Knox, Ficchi, P.C., Ortho-Sport, and South
Philly to Plaintiffs concerning claim number 38-K965-809.  The
records sent by Shenko and Ortho-Sport include, but may not be
limited to, those dated 9/18/06, 9/20/06, 11/7/06, and 11/13/06.
The records sent by Knox include, but may not be limited to,
those dated 9/22/06.  The records sent by Ficchi, Ficchi, P.C.,
and South Philly include, but may not be limited to, those dated
9/11/06, 9/13/06, 9/14/06, 9/18/06, 9/22/06, 9/25/06, 9/26/06,
9/27/06 11/13/06.

(x)     Records for patient Nancy Fiocca were sent by Defendants,
Shenko, Knox, Ortho-Sport, and South Philly to Plaintiffs
concerning claim number 38-K965-809.  The records sent by
Shenko and Ortho-Sport include, but may not be limited to,
those dated 9/18/06, 9/19/06 and 11/29/06.  The records sent by
Knox include, but may not be limited to, those dated 9/19/06.
The records sent by Ficchi, Ficchi, P.C., and South Philly
include, but may not be limited to, those dated 9/11/06, 9/13/06,
9/14/06, 9/18/06, 9/19/06, 9/21/06, 9/25/06, 9/27/06, 10/2/06,
10/4/06, 10/9/06, 10/10/06, 10/12/06, 10/18/06, 10/19/06,
10/26/06, 10/28/06, 10/30/06, 11/1/06, 11/6/06, 11/8/06,
11/13/06, and 11/14/06.

(y)     Records for patient Tamekia Glenn were sent by
Defendants, Knox, Ficchi, P.C., and South Philly to Plaintiffs
concerning claim number 38-L506-830.  The records sent by
Knox include, but may not be limited to, those dated 7/31/08.
The records sent by Ficchi, South Philly, and Ficchi, P.C.
include, but may not be limited to, those dated 7/24/08 and
8/25/08.  The records sent by South Philly include, but may not

be limited to, those dated 7/25/08, 7/28/08, 7/30/08, 7/31/08,
8/4/08, 8/5/08, 8/7/08, 8/13/08, 8/14/08, 8/15/08, 8/18/08,
8/20/08, 8/21/08, 8/25/08, 8/27/08, 8/28/07, 9/3/08, 9/5/08,
9/8/08, 9/10/08, 9/12/08, 9/15/08, 9/17/08, 9/19/08, 9/23/08,
9/24/08, 9/25/08, 9/26/08, 10/1/08, 10/2/08, 10/3/08, 10/6/08,
10/8/08, 10/9/08, 10/15/08, 10/16/08, 10/17/08, 10/23/08,
10/24/08, 10/25/08, 10/29/08, 10/30/08, 10/31/08, 11/5/08,
11/6/08, 11/14/08, 11/26/08, 12/12/08 and 12/15/08.

(z)     Records for patient Lendora Gordon were sent by
Defendants, Shenko, Knox, Ficchi, P.C., Ortho-Sport, and South
Philly to Plaintiffs concerning claim number 28-L522-822.  The
records sent by Shenko and Ortho-Sport include but may not be
limited to those dated 10/15/08.  The records sent by Knox
include but may not be limited to those dated 8/28/08, 9/2/08,
9/4/08.  The records sent by Ficchi, Ficchi, P.C., and South
Philly include but may not be limited to those dated 8/21/08,
8/25/08, 8/28/08, 8/29/08, 9/2/08, 9/4/08, 9/5/08, 9/8/08,
9/11/08, 9/15/08, 9/18/08, 9/19/08, 9/22/08, 9/25/08, 10/2/08,
10/3/08, 10/6/08, 10/9/08, 10/10/08, 10/15/08 10/16/08,
10/17/08, 10/18/08, 10/21/08, 10/23/08, 10/28/08, 10/29/08,
10/30/08, 11/4/08, 11/6/08, 11/7/08, 11/10/08, 11/11/08,
11/13/08, 11/14/08, 11/18/08, 11/21/08, 11/25/08, 11/29/08,
12/1/08, 12/2/08, 12/5/08, 12/8/08, 12/12/06, 12/15/06,
12/16/08, 12/18/08, and 3/23/09.

(aa)    Records for patient David Guess were sent by Defendants,
Knox, Ficchi, P.C., and South Philly to Plaintiffs concerning
claim number 38-L449-194.  The records sent by Knox include
but may not be limited to those dated 4/29/08. The records sent
by Ficchi, Ficchi, P.C., and South Philly include but may not be
limited to those dated 4/24/08, 4/25/08, 4/26/08, 4/29/08,
5/1/08, 5/2/08, 5/6/08, 5/7/08, 5/8/08, 5/13/08, 5/15/08, 5/16/08,
5/20/08, 5/21/08, 5/22/08, 5/23/08, 5/28/08, 5/29/08, 6/3/08,
6/4/08, 6/5/08, 6/11/08, 6/12/08, 6/13/08, 6/18/08, 6/19/08,
6/20/08, 6/24/08, 6/25/08, 6/28/08, 7/1/08, 7/2/08, 7/3/08,
7/9/08, 7/10/08, 7/11/08, 7/16/08, 7/18/08, 7/21/08, 7/22/08,
7/24/08, 7/28/08, 7/31/08, 8/5/08, 8/7/08, 8/19/08, 8/28/08,
9/11/08, and 9/25/08.

(bb)    Records for patient Jerome Palumbo were sent by
Defendants, Ficchi, Knox, and South Philly, to Michael Mullen,
Esquire and Plaintiffs concerning claim number 08-5168-949.
The records sent by Knox include but may not be limited to
those dated 2/1/07.  The records sent by Ficchi, Ficchi, P.C., and
South Philly include but may not be limited to those dated

1/10/07, 1/11/07, 1/13/07, 1/15/07, 1/17/07, 1/19/07, 1/22/07, 1/24/07, 1/26/07, 1/29/07, 2/1/07, 2/6/07, 2/7/07, 2/12/07, 2/13/07, 2/19/07, 2/21/07, 2/27/07, 3/1/07, 3/5/07, 3/9/07, 3/14/07, 3/15/07, 3/22/07, and 7/23/07.

(cc)   Records for patient Vincenzo Rudi were sent by Defendants, Shenko, Knox, and South Philly to Plaintiffs concerning claim number 38-L645-531. The records sent by Knox include but may not be limited to those dated 4/3/07. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 4/4/07. The records sent by Ficchi, Ficchi, P.C., and South Philly include but may not be limited to those dated 4/10/07 and 10/16/07 and between 3/29/07 through 9/18/07.

(dd)   Records for patient Eric Wiley were sent by Defendants, Knox, Ortho-Sport, Ficchi, P.C. and South Philly to Plaintiffs concerning claim number 38-L427-044. The records sent by Knox include but may not be limited to those dated 3/13/08. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 3/27/08. The records sent by Ficchi, Ficchi, P.C., and South Philly include but may not be limited to those dated 3/11/08, 3/12/08, 3/13/08, 3/17/08, 3/18/08, 3/20/08, 3/24/08, 3/25/08, 3/27/08, 3/31/08, 4/1/08, 4/3/08, 4/7/08, 4/8/08, 4/10/08, 4/14/08, 4/15/08, 4/17/08, 4/21/08, 4/22/08, 4/23/08, 4/24/08, 4/29/08, 5/1/08, 5/5/08, 5/6/08, 5/8/08, 5/12/08, 5/13/08, 5/15/08, 5/19/08, 5/20/08, 5/22/08, 5/27/08, 5/28/08, 5/29/08, 6/2/08, 6/3/08, 6/5/08, 6/9/08, 6/12/08, 6/16/08, 6/17/08, 6/25/08, 7/17/08, 8/22/08, 9/18/08, 10/9/08, 10/23/08, 2/19/08.

(ee)   Records for patient James Corbett were sent by Defendants, Ficchi, and Ficchi, P.C. to Christopher Giddings, Esq. and Plaintiffs concerning claim number 38-L652-729. The records sent by Ficchi  include but may not be limited to those dated 7/18/05, 7/22/05, 7/26/05, 7/28/05, 8/1/05, 8/3/05, 8/8/05, 8/15/05, 8/19/05, 8/22/05, 8/24/05, 8/31/05, 9/15/05, 9/19/05, 9/22/05, 10/1/05, and 10/8/05. The records sent by Ficchi, P.C. include but may not be limited to those dated 7/16/05 and 10/18/05.

(ff)   Records for patient Porsch Corbett were sent by Defendants Ficchi, Olney, and Ficchi, P.C. to Christopher Giddings and Plaintiffs concerning claim number 38-L652-729. The records sent by Ficchi include but may not be limited to those dated 7/18/05, 7/22/05, 7/28/05, 8/1/05, 8/3/05, 8/8/05, 8/15/05,

8/19/05, 8/22/05, 8/24/05, 8/31/05, 9/8/05, 9/15/05, 9/19/05, 9/22/05, 10/1/05, 10/6/05, and 10/8/05. The records sent by Olney include but may not be limited to those dated 2/23/06, 3/9/06, and 3/13/06.  The records sent by Ficchi, P.C. include but may not be limited to those dated 7/16/05.

(gg)     Records for patient Debra Wood were sent by Defendants, Ficchi P.C., Knox, Shenko, Ortho-Sport and Olney to Plaintiffs concerning claim number 38-L361-926.  The records sent by Knox include but may not be limited to those dated 1/2/08.  The records sent by Shenko and Ortho-sport include but may not be limited to those dated 1/2/08.  The records sent by Ficchi, Ficchi, P.C., and Olney include but may not be limited to those dated 12/13/07, 12/15/07, 12/20/07, 12/22/07, 12/27/07, 1/2/8, 1/4/08, 1/5/08, 1/8/08, 1/9/08, 1/10/08, 1/15/08, 1/16/08, 1/17/08, 1/24/08, 1/25/08, 1/28/08, 1/29/08, 2/1/08, 2/5/08, 2/7/08, 2/11/08, 2/13/08, 2/14/08, 2/19/08, 2/20/08, 2/23/08, 2/25/08, 2/27/08, 2/29/08, 3/3/08, 3/7/08, 3/12/08, 3/13/08, 3/15/08, 3/17/08, 3/18/08, 3/20/08, 3/26/08, 3/27/08, 3/31/08, 4/2/08, 4/3/08, 4/9/08, 4/11/08, 4/17/08, 4/18/08, 4/22/08, 4/29/08, 5/1/08, 5/8/08, 5/13/08, 5/16/08, 5/20/08, 5/21/08, 5/28/08, 5/29/08, 6/2/08, and 7/3/08.

(hh)     Records for patient Rueben Lee were sent by Defendants, Ficchi, Knox, Ficchi, P.C., and Olney to Stephan Matanovic, Esquire and Plaintiffs concerning claim number 38-K653-975. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 4/29/05.  The records sent by Ficchi, Ficchi, P.C., and Olney include but may not be limited to those dated 4/22/05, 4/23/05, 4/26/05, 4/27/05, 4/29/05, 5/2/05, 5/4/05, 5/9/05, 5/11/05, 5/12/05, 5/16/05, 5/17/05, 5/18/05, 5/23/05, 5/24/05, 5/26/05, 5/31/05, 6/1/05, 6/2/05, 6/6/05, 6/7/05, 6/9/05, 6/13/05, 6/15/05, 6/17/05, 6/20/05, 6/21/05, 6/23/05, 6/27/05, 6/28/05, 6/29/05, 7/5/05, 7/7/05, 7/9/05, 7/11/05, 7/13/05, 7/15/05, 7/18/05, 7/20/05, 7/22/05, 7/25/05, 7/27/05, 7/29/05, 8/1/05, 8/3/05, 8/5/05, 8/8/05, 8/10/05, 8/12/05, 8/15/05, 8/17/05, 8/19/05, 8/22/05, 8/24/05, 8/26/05, 8/29/05, 8/31/05, 9/2/05, 9/6/05, 9/8/05, 9/10/05, 9/12/05, 9/14/05, 9/20/05, 9/28/05, 10/5/05, 10/12/05, 10/19/05, 10/26/05, 11/2/05, 11/9/05, 11/17/05, 11/23/05, 11/30/05, 12/7/05, 12/5/05, 12/15/05, 12/21/05, 12/28/05, 1/4/06, and 1/11/06.  The records sent by Knox include but may not be limited to those dated 4/26/05.

(ii)     Records for patient Abbass Olukayode were sent by Defendants, Shenko, Knox, Ortho-Sport, Ficchi, P.C., South

Philly and Bensalem to Marc Greenfield, Esquire and Plaintiffs concerning claim number 38-K990-102. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 2/15/07. The records sent by Knox include but may not be limited to those dated 2/8/07. The records sent by Ficchi, Ficchi, P.C., and Bensalem include but may not be limited to those dated 12/15/06, 2/6/07, 2/8/07, 2/15/07, 2/22/07, 3/1/07, 3/6/07, 3/8/07, 3/15/07, 3/26/07, 4/11/07, 4/23/07, 4/19/07, 5/1/07, 5/4/07, 5/14/07, 5/22/07, 5/29/07, 5/30/07, 6/5/07, 6/6/07, 6/12/07, 7/24/07, 4/25/08, and 5/28/08.

(jj)   Records for patient Denise Mitchell were sent by Defendants, Ficchi, Shenko, Knox, Ortho-Sport, Ficchi, P.C., and South Philly to Kenneth Saffren, Esquire and Plaintiffs concerning claim number 38-K731-920. The records sent by Ficchi, Ficchi, P.C., and South Philly include but may not be limited to those dated 5/11/05, 5/12/05, 5/13/05, 5/16/05, 5/17/05, 5/18/05, 5/24/05, 5/25/05, 5/26/05, 6/1/05, 6/2/05, 6/3/05, 6/7/05, 6/8/05, 6/14/05, 6/15/05, 6/16/05, 6/20/05, 6/22/05, 6/23/05, 6/27/05, 6/28/05, 6/29/05, 7/6/05, 7/13/05, 7/14/05, 7/16/05, 7/19/05, 7/21/05, 7/25/05, 7/27/05, 7/29/05, 8/1/05, 8/2/05, 8/5/05, 8/15/05, 8/16/05, 8/19/05, 8/24/05, 9/1/05, 9/7/05, 9/8/05, 9/13/05, 9/20/05, 10/10/05, 10/18/05, and 11/21/05. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 5/12/05, 6/2/05, and 6/16/05. The records sent by Knox include but may not be limited to those dated 5/12/05 and 6/23/05. The records sent by Ficchi, P.C. include but may not be limited to those dated 5/10/05, 5/19/05, 6/6/05, and 6/9/05. The records sent by South Philly include but may not be limited to those dated 9/11/06 and 10/16/06.

(kk)   Records for patient William Miles were sent by Defendants, Shenko, Otho-Sport, Ficchi, P.C., and Bensalem to James Vernile, Esquire and Plaintiffs concerning claim number 38-L108-828. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 11/22/06. The records sent by Ficchi and Ficchi, P.C. include but may not be limited to those dated 9/21/07. The records sent by Ficchi, Ficchi, P.C., and Bensalem include but may not be limited to those dated 11/21/06, 11/22/06, 11/23/06, 11/30/06, 12/11/06, 12/15/06, 12/26/06, 12/28/06, 1/29/07, and 1/30/07.

(ll)   Records for patients Lucille Doyle and Jolanda Woods were sent by Defendants, Ficchi, P.C., Shenko, Knox, Ortho-Sport, South Philly and Olney to Brett Tessler, Esquire and

Plaintiffs concerning claim number 38-L108-588. The records
sent by Ficchi, P.C. include but may not be limited to those
dated 11/16/06 and 5/15/07. The records sent by Shenko and
Ortho-Sport include but may not be limited to those dated
11/28/06, 12/5/06, 12/8/06, 12/12/06, 12/19/06, 12/26/06,
1/23/07, and 1/30/07. The records sent by Knox include but
may not be limited to those dated 11/20/06 and 5/22/07. The
records sent by South Philly include but may not be limited to
those dated 5/16/07, 5/22/07, 5/25/07, 6/1/07, 6/21/079/13/07,
9/18/07, 9/27/07, 10/4/07, 1/4/08, and 1/21/08. The records sent
by Olney include but may not be limited to those dated
11/20/06, 11/21/06, 11/22/06, 11/27/06, 11/28/07, 12/1/06,
12/5/06, 12/7/06, 12/9/06, 12/11/06, 12/12/06, 12/14/06,
12/19/06, 12/20/06, 12/21/06, 12/26/06, 12/27/06, 12/28/06,
1/8/06, 1/23/07, 1/30/07, 2/20/07, 3/6/07, 3/13/07, 3/19/07,
3/22/07, 3/27/07, 3/24/07, 4/3/07, 4/5/07, 4/10/07, 4/12/07, and
8/1/07.

(mm)    Records for patient Edward Harris were sent by
Defendants, Ficchi, Ficchi, P.C., Knox and Olney to Kenneth
Saffren, Esquire and Plaintiffs concerning claim number 38-
L265-202. The records sent by Ficchi include but may not be
limited to those dated 10/25/07. The records sent by Ficchi,
P.C. include but may not be limited to those dated 7/21/07. The
records sent by Knox include but may not be limited to those
dated 8/8/07. The records sent by Olney include but may not be
limited to those dated 7/24/07, 7/25/07, 7/26/07, 7/30/07,
7/31/07, 8/2/07, 8/4/07, 8/7/07, 8/8/07, 8/14/07, 8/15/07,
8/18/07, 8/21/07, 8/22/07, 8/23/07, 8/28/07, 8/29/07, 8/30/07,
9/4/07, 9/5/07, 9/6/07, 9/10/07, 9/12/07, 9/13/07, 9/17/07,
9/19/07, 9/20/07, 9/25/07, 9/26/07, 9/27/07, 10/2/07, 10/4/07,
10/9/07, 10/11/07, 10/16/07, 10/18/07, 10/23/07, 10/25/07,
11/1/07, 11/8/07, 11/15/07, 11/24/07, 11/29/07, and 1/5/08.

(nn)    Records for patient Doris Kitchen were sent by Defendants,
Ficchi, P.C., Knox and Olney to Kenneth Saffren, Esquire and
Plaintiffs concerning claim number 38-L351-297. The records
sent by Knox include but may not be limited to those dated
6/5/06. The records sent by Ficchi, Ficchi, P.C., and Olney
include but may not be limited to those dated 5/27/06, 5/30/06,
6/5/06, 6/7/06, 6/16/06, 10/10/06, 10/24/06, 10/25/06, 10/26/06,
11/1/06, 11/6/06, 11/29/06, 11/21/06, 12/11/06, 12/19/06, and
1/10/07.

(oo)    Records for patients Carlena Hayes, Tamyra Riggs, and
Demetrius Hayes were sent by Defendants, Ficchi, Ficchi, P.C.,

Shenko, Knox, South Philly, Ortho-Sport, and Bensalem to Ricky Liss, Esquire, George Marion, Esquire and Plaintiffs concerning claim number 38-K795-778. The records sent by Ficchi include but may not be limited to those dated 12/12/05, 12/13/05, 12/15/05, 12/19/05, 12/20/05, 12/21/05, 12/22/05, 12/23/05, 12/27/05, 12/28/05, 12/29/05, 1/3/06, 1/4/06, 1/5/06, 1/9/06, 1/10/06, and 1/11/06. The records sent by Ficchi include but may not be limited to those dated 12/10/05 and 12/12/05. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 1/11/06, 2/22/06, and 3/16/06. The records sent by Knox include but may not be limited to those dated 12/13/05 and 3/9/06. The records sent by Ficchi, Ficchi, P.C., and South Philly include but may not be limited to those dated 1/19/06, 1/20/06, 1/21/06, 1/23/06, 1/24/06, 1/25/06, 1/30/06, 1/31/06, 2/2/06, 2/7/06, 2/8/06, 2/14/06, 2/15/06, 2/16/06, 2/17/06, 2/21/06, 2/22/06, 2/23/06, 2/24/06, 2/27/06, 2/28/06, 3/1/06, 3/6/06, 3/7/06, 3/9/06, 3/10/06, 3/14/06, 3/15/06, 3/16/06, 3/20/06, 3/21/06, 3/23/06, 3/27/06, 3/29/06, 3/30/06, 4/3/06, 4/7/06, 4/10/06, 4/11/06, 4/20/06, 5/11/06, 8/23/06, 8/25/06, and 6/18/07. The records sent by Bensalem include but may not be limited to those dated 12/12/05.

(pp)     Records for patient Desiree Lewis were sent by Defendants, Ficchi, Knox, Ficchi, P.C., and Olney to William Lawson, III, Esquire and Plaintiffs concerning claim number 38-K723-636. The records sent by Ficchi include but may not be limited to those dated 8/29/05, 9/1/05, 9/6/05, 9/8/05, 9/10/05, 9/12/05, 9/14/05, 9/19/05, 9/28/05, 10/1/05, 10/3/05, 10/6/05, 10/8/05, 10/11/05, 10/18/05, 10/20/05, 10/24/05, 10/27/05, 10/29/05, 10/31/05, 11/2/05, 11/7/05, 11/10/05, 11/12/05, 11/14/05, 11/23/05, 11/28/05, 12/2/05, 12/6/05, 12/13/05, 12/21/05, 12/22/05, 12/29/05, 1/5/06, 1/9/06, 1/11/06, and 1/12/06. The records sent by Knox include but may not be limited to those dated 8/29/05. The records sent by Ficchi and Ficchi, P.C. include but may not be limited to those dated 8/23/05, 11/17/05, 11/18/05, and 3/6/06. The records sent by Ficchi, Ficchi, P.C. and Olney include but may not be limited to those dated 1/7/06, 1/18/06, 1/19/06, 1/20/06, 1/24/06, 1/27/06, 1/30/06, 2/7/06, 2/8/06, 2/10/06, 2/16/06, 2/17/06, 2/21/06, 2/22/06, 3/6/06, 3/8/06, 4/4/06, 4/5/06, 5/15/06, 6/6/06, 6/17/06, and 8/24/06.

(qq)     Records for patient Andre Young were sent by Defendants, Shenko, Knox, Ficchi, P.C., Ficchi, and Ortho-Sport to Robert Baccari, Esquire and Plaintiffs concerning claim number 38-

K607-537. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 3/3/05, 3/24/05, 4/5/05, 5/5/05, and 5/26/05. The records sent by Knox include but may not be limited to those dated 2/17/05. The records sent by Ficchi and Ficchi, P.C. include but may not be limited to those dated 2/8/05 and 8/29/05. The records sent by Ficchi include but may not be limited to those dated 3/3/05, 3/8/05, 3/10/05, 3/16/05, 3/18/05, 3/22/05, 3/24/05, 3/29/05, 3/31/05, 4/5/05, 4/12/05, 4/14/05, 4/19/05, 4/21/05, 4/25/05, 4/26/05, 5/3/05, 5/5/05, 5/10/05, 5/17/05, 5/19/05, 5/24/05, 5/26/05, 5/31/05, 6/2/05, 6/7/05, 6/9/05, 6/14/05, 6/16/05, 6/23/05, 6/28/05, and 10/20/05.

(rr)   Records for patients Phakdey Nget and Chea Meas were sent by Defendants, Ficchi, Shenko, Ficchi, P.C., Ortho-Sport and Ficchi to Stanley Ellenberg, Esquire and Plaintiffs concerning claim number 38-K557-180. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 3/3/05. The records sent by Ficchi, P.C. include but may not be limited to those dated 1/25/05 and 12/19/05. The records sent by Ficchi include but may not be limited to those dated 1/27/05, 2/3/05, 3/3/05, 3/7/05, 3/9/05, 3/10/05, 3/14/05, 3/17/05, 3/21/05, 3/23/05, 3/24/05, 3/29/05, 3/30/05, 3/31/05, 4/6/05, 4/7/05, 4/8/05, 4/13/05, 4/18/05, 4/19/05, 4/20/05, 4/27/05, 5/12/05, 5/18/05, 5/19/05, 5/25/05, 5/26/05, 6/1/05, 6/2/05, 6/8/05, 6/9/05, and 6/22/05.

(ss)   Records for patient Nicole Anderson were sent by Defendants, Ficchi, Ficchi, P.C. and South Philly to Marc R. Gordon, Esquire and Plaintiffs concerning claim number 38-L219-039. The records sent by Ficchi, Ficchi, P.C., and South Philly include but may not be limited to those dated 5/24/07, 5/30/07, 6/5/07, 6/21/07, 7/12/07, 7/17/07, 7/23/07, 7/26/07, 8/2/07, 8/3/07, 9/14/07, 10/4/07, 10/16/07, 10/25/07, 11/12/07, 11/16/07, 11/26/07, 11/29/07, 12/6/07, and 12/18/07.

(tt)   Records for patient Harvey Boyd were sent by Defendants, Ficchi, Ficchi, P.C., South Philly, Shenko, Ortho-Sport, and Knox to Plaintiffs concerning claim number 38-L434-214. The records sent by Shenko and Ortho-Sport include but may not be limited to 5/1/08 and 5/20/08. The records sent by Knox include but may not be limited to 4/1/08. The records sent by Ficchi, Ficchi, P.C., and South Philly include but may not be limited to 3/28/08, 3/31/08, 4/1/08, 4/2/08, 4/7/08, 4/9/08, 4/14/08, 4/16/08, 4/18/08, 4/22/08, 4/24/08, 4/28/08, 5/1/08, 5/2/08, 5/6/08, 5/8/08, 5/9/08, 5/13/08, 5/15/08, 5/20/08, 5/22/08, 5/28/08, and 5/30/08.

(uu)     Records for patient Khalid Watson were sent by
Defendants, Ficchi, Ficchi, P.C., Olney, Shenko, Ortho-Sport,
and Knox to Paul M. Benn, Esquire and Plaintiffs concerning
claim number 38-L553-262.  The records sent by Shenko and
Ortho-Sport include but may not be limited to 10/31/08 and
11/5/08.  The records sent by Knox include but may not be
limited to 10/29/08.  The records sent by Ficchi, Ficchi, P.C.,
and Olney include but may not be limited to 10/22/08, 10/29/08,
10/31/08, 11/4/08, 11/5/08, 11/7/08, 11/11/08, 11/12/08,
11/14/08, 11/17/08, 11/25/08, 12/1/08, 12/9/08, 12/10/08,
12/12/08, 12/17/08, 12/19/08, 12/22/08, and 3/24/09.

(vv)     Records for patient Donald West were sent by Defendants,
Ficchi, Ficchi, P.C., Olney, Shenko, Ortho-Sport, and Knox to
Patrick Rodden, Esquire and Plaintiffs concerning claim number
38-L176-574.  The records sent by Shenko and Ortho-Sport
include but may not be limited to 4/10/07.  The records sent by
Knox include but may not be limited to 4/11/07, 4/25/07, and
5/16/07.  The records sent by Ficchi, Ficchi, P.C. and Olney
include but may not be limited to 4/5/07, 4/7/07, 4/9/07,
4/10/07, 4/11/07, 4/19/07, 4/20/07, 4/23/07, 4/25/07, 4/28/07,
5/1/07, 5/4/07, 5/7/07, 5/10/07, 5/11/07, 5/16/07, 5/18/07,
5/22/07, 5/24/07, 5/29/07, 5/30/07, 6/19/07, 6/22/07, 6/25/07,
6/27/07, 6/28/07, 10/4/07, 10/12/07, and 10/18/07.

The mailings were sent by the identified individuals and entities on or around the dates
noted.  The mailings were received by the identified individuals and entities shortly
thereafter.  The mailings included the misrepresentations of the identified sender or
senders.  The mailings noted above in paragraph 39 and 52 are examples of records
prepared for the patients who have treated with the Defendants that are false, misleading,
inaccurate and fraudulent.

53.     Each use of the mailings and wires in connection with the scheme and
artifice to defraud constitutes the offense of mail and wire fraud as proscribed and
prohibited by 18 U.S.C. §1343.

54.     In connection with the activities of all Defendants giving rise to this action, all Defendants conspired to engage in the various activities and aided and abetted one another in the said activities as described herein.

55.     In connection with the activities of all Defendants giving rise to this action, the Defendants acted with malice, intent and knowledge.  The Defendants knew that the productions and submissions were false and that the false submissions would be relied upon by Plaintiffs when making payment decisions.

56.     At all times relevant hereto, Defendants knew, or should have known, that Plaintiffs were relying on the truth and accuracy of Defendants' submissions in determining amounts payable to Defendants, to uninsured and underinsured claimants and to claimants making bodily injury claims against those individuals insured by Plaintiffs.

57.     The scheme to systematically defraud insurance carriers by submitting, through the mail, false and inaccurate bills and records for medical treatment, services and testing, which were not provided, not medically necessary, not reimbursable under Pennsylvania law or were provided in violation of Pennsylvania law, was facilitated, aided and assisted with the cooperation, assistance and allegiance of consulting providers, like Knox and Shenko whose purported independent conclusions supported the treatment and testing and induced Plaintiffs to make payments.

58.     Each predicate act (e.g. the submission of each false bill, report and/or record via US Mail) was committed with the same purpose (to collect payment from Plaintiffs and other insurance companies and bolster personal injury claims), the same result (the actual collection of payments from Plaintiffs for the benefit of Defendants), the

same participants (the individual Defendants, as well as the Defendant Medical Offices, Ortho-Sport, and others who acted at their direction), the same victims (Plaintiffs and other insurance companies), and the same method of commission (submitting bills, reports and records).  Plaintiffs allege that each predicate act was related to the others insofar as each one was the result of a common plan, consistently applied using standard practices, and producing a consistent result.

59.    It was a further part of the conspiracy and scheme that the Defendants fraudulently concealed their involvement in the conspiracy and scheme and concealed the conspiracy and scheme as described in this Second Amended Complaint.  During the relevant times, in connection with the activities of the Defendants giving rise to this action, Defendants intentionally acted to fraudulently conceal the nature of their activities in order to insulate themselves from liability for the fraudulent and illegal activities they were undertaking, including but not limited to, preparing medical records, bills and reports in a manner that a reasonable insurance company would believe that the treatment was provided, was provided for the medical benefit of the patient, was provided by a licensed provider, and was provided by the provider identified in the records; by refusing to provide truthful testimony during depositions; by providing false testimony; by removing  documentation from patient files before providing such files to Plaintiffs; and by concealing the fact that medical evaluations, physical therapy treatments and other evaluations, testing, services and treatments were provided for the individual financial gain of the Defendants and not for the medical benefit of the patient or for medical necessity.

60.     Due to the concerted efforts of all Defendants to conceal their fraudulent activities, Plaintiffs did not discover their injury and the source of their injury, despite the exercise of reasonable diligence, until after February 8, 2008.  Plaintiffs' exercise of reasonable diligence included, but is not limited to, the employment of claim representatives to review and evaluate claims, which included but was not limited to, the review the records submitted by the Defendants.

61.     Plaintiffs were injured in their business and property in an undetermined amount by Defendants' misrepresentations, violations of law, fraudulent conduct and other acts and omissions committed by the Defendants as set forth above in paragraphs 14 through 60.  Such injury includes:  the deprivation of the ability to conduct the Plaintiffs' insurance business on the basis of true, accurate and complete assessments of the numbers and amounts of legitimate compensable claims; the loss of monies paid pursuant to and/or a result of false, fraudulent, inflated and/or misrepresented claims for medical benefits, uninsured motorist benefits, underinsured motorist benefits and liability for bodily injury; the expenses incurred in the review, adjustment and payment of the claims created and supported through the conspiracy and scheme; the losses and financial expenses which have been and now are being incurred to create, establish and carry out systems and policies to detect and discover false, fraudulent and inflated claims; the hiring of claims adjusters, consultants and attorneys to detect and rebut said claims and other injury as may be proved at the trial hereof.  The relief sought by Plaintiffs against Defendants includes compensatory damages, payments made by Plaintiffs to Defendants and individuals allegedly treated by Defendants, claims handling expenses,  treble

damages pursuant to 18 U.S.C.§ 1964(c), treble damages pursuant to 18 Pa.C.S.A. §

4117(g), costs of investigation and suit, interest and attorneys' fees.

## COUNT I
### Fraud Against All Defendants

62.     Plaintiffs incorporate herein by reference the allegations set forth in

paragraphs 1 through 61 of this Second Amended Complaint.

63.     The representations, violations of law, fraudulent conduct and other acts

and omissions committed by the Defendants as set forth above in paragraphs 14 through

61 constitute false and fraudulent representations.

64.     Defendants intended that Plaintiffs would be induced by such false and

fraudulent representations to provide payment to Defendants and to individuals making

claims with Plaintiffs for uninsured motorist benefits, underinsured motorist benefits and

liability for bodily injury.

65.     Plaintiffs and others justifiably relied on these representations made by the

Defendants as described in this Second Amended Complaint, including but not limited to

the representations described in paragraph 39 and 52, in making payment to Defendants

and others in the belief that treatment, testing, and services as reflected in the

documentation was accurate, were medically necessary, reimbursable under applicable

law, and provided in accordance with applicable law and the records reflected true

medical conditions, complaints and injuries.

66.     As a result of the false and fraudulent representations by Defendants,

Plaintiffs suffered injury as set forth above in paragraphs 48 and 61 and as described

throughout this Second Amended Complaint.

67.     The false and fraudulent representations by Defendants were made with malice, vindictiveness and wanton disregard for the rights of Plaintiffs.

WHEREFORE, Plaintiffs pray this Court enter judgment in favor of Plaintiffs and against all Defendants, jointly and severally, for an amount exceeding $75,000.00, for compensatory damages, consequential damages, treble damages, exemplary damages, attorney's fees, litigation expenses, and any additional relief this Court finds just and equitable and warranted by applicable law.

## COUNT II

### Statutory Insurance Fraud
### Violations of 18 Pa.C.S. § 4117 *et. seq.*
### <u>Against All Defendants</u>

68.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 67 of this Second Amended Complaint.

69.     Plaintiffs are "insurers" and an "insurance company" within the meaning of 18 Pa.C.S. §§ 4117 <u>et</u> <u>seq</u>.

70.     Each Defendant is a "person" within the meaning of 18 Pa.C.S. §§ 4117 <u>et</u> <u>seq</u>.

71.     The reports, bills, and other records and documents produced by Defendants are "statements" within the meaning of 18 Pa.C.S. §§ 4117 <u>et</u> <u>seq</u>.

72.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(2), through the acts set forth above in paragraphs 14 through 61, by presenting or causing to be presented to Plaintiffs statements forming a part of, or in support of, insurance claims which set forth false, fraudulent, incomplete and misleading information concerning facts

material to such insurance claims. These claims include, but are not limited to, the claims identified in paragraphs 39 and 52.

73.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(3), through the acts set forth above in paragraphs 14 through 61, by knowingly and with an intent to defraud Plaintiffs, assisting, abetting, soliciting and/or conspiring with others to prepare statements that were intended to be presented to Plaintiffs in connection with, or in support of, insurance claims that set forth false, fraudulent, incomplete, and misleading information concerning facts material to such insurance claims.

74.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(5) by knowingly benefiting, directly and indirectly, from the proceeds derived from violations of the provisions of 18 Pa.C.S. § 4117(a)(2) due to the assistance, conspiracy and urging of other persons, including the other Defendants.

75.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(5) by knowingly benefiting, directly and indirectly, from the proceeds derived from violations of the provisions of 18 Pa. C.S. § 4117(a)(3) as set forth above due to the assistance, conspiracy and urging of other persons, including the other Defendants.

76.     Each Defendant is the owner, administrator or employee of a health care facility within the meaning of 18 Pa.C.S. § 4117(a)(6).

77.     Each Defendant has acted in violation of 18 Pa. C. S. § 4117(a)(6) by knowingly allowing the use of a health care facility by other persons, including the other Defendants, in furtherance of the scheme and conspiracy to violate the provisions of 18 Pa.C.S. § 4117(a)(2) and (a)(3), as set forth above.

78.     Each Defendant has acted in violation of 18 Pa.C.S. § 4117(a)(5)

by knowingly benefiting, directly and/or indirectly, from the proceeds derived from violations of the provisions of 18 Pa. C.S. § 4117(a) as set forth above due to the assistance, conspiracy and urging of other persons, including the other Defendants.

79.     Each Defendant has acted in violation of 18 Pa.C.S. §4117(b)(3), by compensating and giving something of value to person(s) for providing names, addresses, telephone numbers or other identifying information of individuals seeking or receiving medical or rehabilitative care for accident, sickness or disease.

80.     Each Defendant has acted in violation of 18 Pa. C.S. §4117(b)(2) by compensating and giving something of value to person(s) to recommend or secure the Defendant(s)' service to or as a reward for having made a recommendation resulting in the Defendant(s)' service to or employment by a patient, and by receiving compensation or something of value for recommending a patient or securing services of a patient for another healthcare provider.

81.     These acts of fraud described above were both related and continuous, thereby constituting a pattern of fraud under 18 Pa.C.S. § 4117(g).

82.     Plaintiffs were injured by the conduct of Defendants as set forth above in paragraphs 48 and 561 and described throughout this Second Amended Complaint.

WHEREFORE, pursuant to 18 Pa.C.S. §4117(g), Plaintiffs demand that judgment be entered in their favor and against all Defendants jointly and severally for compensatory damages, consequential damages, treble damages, exemplary damages, attorneys fees, litigation expenses, claims handling expenses, costs of investigation, interest and costs and any other relief the Court finds just and equitable and warranted by applicable law.

## COUNT III

### Violation of RICO, 18 U.S.C.
### §§ 1962(c), 1964(c) Against All Defendants

83.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 82 of this Second Amended Complaint.

84.     Plaintiffs are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

85.     Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

86.     At all times material to this Second Amended Complaint, Defendants and other individuals were associated in fact and thus are an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (hereinafter "the enterprise").

87.     At all times material to this Second Amended Complaint, the enterprise was engaged in and its activities affected interstate commerce and the facilities of interstate commerce, including the United States mails, highways and telephone lines.

88.     At all times material to this Second Amended Complaint, each Defendant was associated-in-fact although distinct from the enterprise.

89.     At all times material to this Second Amended Complaint, each Defendant conducted or participated in the conduct of the enterprise's affairs and each Defendant had a role in directing or managing the operations or affairs of the enterprises.

90.     The Defendants who are associated in-fact were not acting in furtherance of the corporate Defendants' legitimate pursuits when committing acts of mail fraud and other wrongful acts as described in this Second Amended Complaint.

91.     From at least 2004, Defendants devised and participated in a scheme to defraud Plaintiffs as set forth above in paragraphs 14 through 61.

92.     Each Defendant conducted or participated directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity consisting of, but not limited to, the multiple instances of mail and wire fraud as set forth above in paragraphs 39 and 52.

93.     These acts of mail fraud were both related and continuous, thereby constituting a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5).

94.     The conduct of each of the Defendants constitutes a violation of 18 U.S.C. §1962(c).

95.     Plaintiffs were directly injured in their business and property as set forth in paragraphs 48 and 61 by Defendants' violations of 18 U.S.C. §1962(c).

WHEREFORE, pursuant to 18 U.S.C. §1964(c), Plaintiffs demand that judgment be entered in their favor and against all Defendants jointly and severally for compensatory damages, treble damages, exemplary damages, interest, costs, attorneys' fees and such other relief as the court shall find just and equitable and warranted by applicable law.

## COUNT IV

### Conspiracy To Violate RICO, 18 U.S.C. §1962(c)
### In Violation Of 18 U.S.C. §1962(d) Against All Defendants

96.     Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 95 of this Second Amended Complaint.

97.     Plaintiffs are "persons" within the meaning of 18 U.S.C. §1961(3) and 1964(c).

98.     Each Defendant is a "person" within the meaning of 18 U.S.C. §§1961(3) and 1962(c).

99.     At all times material to this Second Amended Complaint, Defendants and other individuals were associated in fact and thus are an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(c).

100.     At all times material to this Second Amended Complaint, the enterprise was engaged in and its activities affected interstate commerce and the facilities of interstate commerce, including the United States mails, highways and telephone lines.

101.     At all times material to this Second Amended Complaint, each Defendant was associated-in-fact although distinct from the enterprise.

102.     From at least 2004, Defendants devised and participated in a scheme to defraud Plaintiffs as set forth above in paragraphs 14 through 61.

103.     Each Defendant conspired and agreed among themselves and with other co-conspirators to violate 18 U.S.C. §1962(c), that is to conduct or participate directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity, including the numerous acts of mail and wire fraud as set forth above in paragraphs 39 and 52.

104.     These acts of mail and wire fraud were both related and continuous, thereby constituting a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5).

105.     Said conduct constitutes a violation of 18 U.S.C. §1962(d).

106.    Plaintiffs were directly injured by the Defendants in their business and

property as set forth above in paragraphs 48 and 61 and described throughout the Second

Amended Complaint.

WHEREFORE, pursuant to 18 U.S.C. §1964(c), Plaintiffs demand that judgment

be entered in their favor and against all Defendants jointly and severally for

compensatory damages, treble damages, exemplary damages, interest, costs, attorneys'

fees and such other relief as the court shall find just and equitable and warranted by

applicable law.

### COUNT V

### **Concerted Tortious Action**

107.    Plaintiffs incorporate herein by reference the allegations set forth in

paragraphs 1 through 103 of this Second Amended Complaint.

108.    Ficchi, Shenko, Knox, Ortho-Sport, Ficchi P.C., Olney, Bensalem, South

Philadelphia, and others did various tortious acts in concert with each other as set forth

above in paragraphs 14 through 61.

109.    These tortious acts were committed pursuant to a conspiracy and scheme

to defraud insurance companies including Plaintiffs as set forth above in paragraphs 14

through 61.

110.    Ficchi gave substantial assistance and encouragement to the other

Defendants and others to engage in the tortious acts as set forth above in paragraphs 14

through 61.

111.    Shenko gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in paragraphs 14 through 61.

112.    Knox gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in paragraphs 14 through 61.

113.    Ortho-Sport gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in paragraphs 14 through 61.

114.    Ficchi P.C. gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in paragraphs 14 through 61.

115.    Olney gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in paragraphs 14 through 61.

116.    Bensalem gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in paragraphs 14 through 61.

117.    South Philadelphia gave substantial assistance and encouragement to the other Defendants and others to engage in the tortious acts as set forth above in paragraphs 14 through 61.

118.    The above described acts of Ficchi, Shenko, Knox, Ortho-Sport, Ficchi P.C., Olney, Bensalem and South Philadelphia, violate 18 Pa.C.S. § 4117 et. seq., 18

U.S.C. §§ 1962(c), 1964(c) and 1964(d) and also constitute fraud and caused Plaintiffs harm as set forth above in paragraphs 14 through 61.

119.    The Defendants conduct was malicious and outrageous as set forth above in paragraphs 14 through 61.

WHEREFORE Plaintiffs demand that judgment be entered in their favor and against all Defendants jointly and severally, for an amount exceeding $75,000.00, for compensatory damages, consequential damages, exemplary damages, interest, costs, attorneys' fees and such other relief as the court shall find just and equitable and warranted by applicable law.

## COUNT VI

### Conspiracy

120.    Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 119 of this Second Amended Complaint.

121.    Defendants and others conspired together to engage in actions that violated the Pennsylvania Insurance Fraud statute as described in this Second Amended Complaint.

122.    Defendants and others conspired together to commit fraud and tortious acts against Plaintiffs as described in this Second Amended Complaint.

123.    Defendants engaged in numerous overt acts in furtherance of this common purpose, including but not limited to, actions detailed in paragraphs 14 to 61.

124.    Plaintiffs were damaged by the actions of the Defendants as set forth in paragraphs 48 and 61.

125.   The Defendants' conduct was malicious and outrageous as set forth in paragraphs 14 through 61.

WHEREFORE Plaintiffs demand that judgment be entered in their favor and against all Defendants jointly and severally, for compensatory damages, consequential damages, exemplary damages, attorneys fees, litigation expenses, claims handling expenses, costs of investigation, interest and costs, and any other relief the Court finds just and equitable.

## COUNT VII

### Unjust Enrichment Against All Defendants

126.   Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 125 of this Second Amended Complaint.

127.   Defendants' retention of amounts paid by Plaintiffs was wrongful because these monies were obtained as a direct result of fraud and other wrongful acts set forth in this Second Amended Complaint.

128.   Plaintiffs have been harmed by Defendants' acts in wrongfully obtaining and retaining these monies because Plaintiffs would not have paid Defendants' bills if it had known at the time it paid these claims that Defendants acts were wrongful, fraudulent and illegal.

129.   Defendants' retention of these payments violates fundamental principles of justice, equity and good conscience.

130.   Additionally, Defendants' retention of money received from Plaintiffs due to Defendants' fraudulent and wrongful practices as described in this Second Amended Complaint is wrong and unjust.

131.    Plaintiffs have been harmed by Defendants' misrepresentations.

132.    Defendants have been unjustly enriched and to allow Defendants to retain these amounts would violate fundamental principles of justice, fairness, equity and good conscience.

WHEREFORE, Plaintiffs demand this Court enter judgment in favor of Plaintiffs and against all Defendants for an amount exceeding $75,000.00, plus any additional relief this Court deems proper.

## COUNT VIII

### Restitution for Mistaken Payment Against All Defendants

133.    Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 132 of this Second Amended Complaint.

134.    When Plaintiffs paid monies on medical payments, uninsured motorist, underinsured motorist and bodily injury claims based on documentation provided at Defendant Medical Offices, it did so under a mistaken factual belief.

135.    This belief was mistaken because the medical records, reports, bills, statements, other documents and representations submitted to Plaintiffs were false, misleading, inaccurate and fraudulent and the documented examinations, modalities, testing, consultations and services purportedly provided at the Defendant Medical Offices, were not provided, were not provided for the medical necessity or medical benefit to the patient, were misrepresented, were excessive, were inappropriate and represent significant and intentional deviations from accepted standards of care, were not reimbursable under applicable law and were not provided pursuant to applicable law.

136.    If Plaintiffs had known the facts set forth in the preceding paragraphs, it would not have paid Defendants.

137.    Plaintiffs are entitled to recover from Defendants, each of who have been unjustly enriched, in an amount equal to the portions of the payments Plaintiffs made.

WHEREFORE, Plaintiffs demand this Court enter judgment in favor of Plaintiffs and against all Defendants for an amount exceeding $75,000.00, plus any additional relief this court deems proper.

GOLDBERG, MILLER & RUBIN, P.C.


By:    ___CG1287_____
       CY GOLDBERG, ESQUIRE
       Attorney for Plaintiffs

DATED:  7/15/2011

## VERIFICATION

JOHN COSTANZO is authorized to make this Verification on Plaintiffs' behalf in this action and he verifies that the statements made in the foregoing Second Amended Complaint are true and correct to the best of his knowledge, information and belief and upon advice of counsel.  The undersigned understands that the statements therein are made subject to the penalties of 18 Pa C.S. § 4904 related to unsworn falsifications to authorities.

By: _____
   JOHN COSTANZO

Date: 7/15/2011

THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM FIRE AND CASUALTY COMPANY | : : : : : : | CIVIL ACTION NO:  10-0555 |
| vs. | : : | JURY TRIAL DEMAND |
| STEPHEN FICCHI, D.O., and FRANK SHENKO, MSPT, CPT, and J. WILLIAM KNOX, Ph.D., and ORTHO-SPORT REHABILITATION, LLC, and FICCHI, STEPHEN, D.O.P.C., and OLNEY PAIN MANAGEMENT, LLC, and BENSALEM PAIN MANAGEMENT CENTER, LLC, and SOUTH PHILADELPHIA PAIN MANAGEMENT, LLC, | : : : : : : : : : : : : : : : | |

## CERTIFICATE OF SERVICE

I, CY GOLDBERG, ESQUIRE, do hereby certify that service of a true and correct copy of the foregoing Plaintiffs' Second Amended Complaint has been forwarded to all counsel of record via Hand Delivery, U.S. First Class Mail, postage prepaid and/or electronic notification.

*GOLDBERG, MILLER & RUBIN, P.C.*

By:     CG1287
         CY GOLDBERG, ESQUIRE
         I.D. No. 35369
         121 S. Broad Street, Suite 1500
         Philadelphia, PA  19107
         (215) 735-3994
         Attorney for Plaintiffs

Dated:  7/15/2011