**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE FARM MUTUAL AUTOMOBILE** | : | |
| **INSURANCE COMPANY, <u>et al.</u>,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **STEPHEN FICCHI, <u>et al.</u>,** | : | |
| | : | **NO. 10-555** |
| **Defendants.** | : | |

**<u>M E M O R A N D U M</u>**

**GENE E.K. PRATTER, J.,**                                **MAY 4, 2012**

## I.     INTRODUCTION

If at first you don't succeed, try, try again.  Such is the case of State Farm Mutual

Automobile Insurance Company and State Farm Fire and Casualty Company's (collectively

"State Farm") attempts to bring claims of insurance fraud against several doctors and their

respective medical offices.  In now its Second Amended Complaint, State Farm alleges once

again that Drs. Stephen Ficchi, J. William Knox, and Frank Shenko, and their associated

practices conspired to defraud State Farm of money by submitting false claims for services not

actually rendered and not medically necessary, by referring patients to each other for such

services, and by treating all patients according to a standardized and predetermined treatment

plan.

State Farm contends that the doctors and their respective practices committed fraud,

statutory insurance fraud, conspiracy, and concerted tortious action, that they violated and conspired to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), that the doctors and their practices were unjustly enriched by their actions and that State Farm is entitled to restitution as a result.

The defendants have filed two separate motions to dismiss the Second Amended Complaint, and Drs. Shenko and Knox and their associated medical practices have filed a motion for Rule 11 sanctions against counsel for State Farm.  For the reasons that follow, the Court denies all three motions.

## II.      FACTUAL AND PROCEDURAL HISTORY

### A.  Factual Background

Dr. Ficchi, the owner of Ficchi P.C., Olney Pain Management, LLC, Bensalem Pain Management Center, LLC, and South Philadelphia Pain Management LLC, provides chiropractic, medical, diagnostic, and physical therapy treatment, testing, services and goods to individuals injured in accidents.  Second Am. Compl. ¶¶ 2-5, 7, 19.  Dr. Shenko, the owner of Ortho-Sport Rehabilitation, LLC, provides physical therapy services including consultations, evaluations, kinesio taping, and strapping.  Id. ¶¶ 6, 8, 20, 28.  Dr. Knox operates a business in his personal name that provides services including consultations, evaluations, psychological services, and biofeedback.  Id. ¶¶ 9, 21, 32.[1]

---

[1] Dr. Ficchi and his associated medical practices are hereinafter referred to as the "Ficchi Defendants."  Dr. Shenko, Dr. Knox, and their respective medical practices are hereinafter referred to as the "Knox/Shenko Defendants."  The doctors' associated medical practices are hereinafter referred to as the "Defendant Medical Offices."

As with its two previously filed complaints, State Farm alleges that the Ficchi Defendants and the Knox/Shenko Defendants were active participants in a conspiracy and scheme to defraud State Farm.  Specifically, State Farm contends that the Defendants[2] submitted false, fraudulent or misleading bills and medical records to State Farm on behalf of individuals involved in accidents to induce State Farm to make payments to the defendants for insurance claims.  Id. ¶¶ 14, 52. State Farm contends that individuals claiming to be injured in motor vehicle accidents[3] went to the Defendant Medical Offices, often at the referral of their personal injury attorneys.  Then, instead of assessing patients, identifying their injuries, and providing individualized treatment, Drs. Ficchi, Shenko, and Knox placed patients on a standardized and predetermined treatment plan established and implemented by the doctors.  Id. ¶¶ 22-23.  The treatment plan included referrals for unnecessary consultations, examinations, and services, and was implemented not for the medical necessity or benefit to the patients, but to magnify or misstate the condition of the patients, which provided a basis for past and future billing for services and supported claims asserted in personal injury lawsuits.[4]  Id. ¶ 23.  This, in turn, further encouraged the referral of patients from personal injury attorneys.  Id. ¶¶ 22-23.

---

[2] Numerous paragraphs in the Second Amended Complaint refers to "the Defendants" when it sets forth factual allegations instead of specifying which of the specific defendants were involved in the alleged conduct.  Accordingly, where the general "Defendants" is used, the Court will assume that the particular paragraph refers to all defendants.

[3] These individuals included State Farm's insureds, individuals allegedly harmed by State Farm's insureds, or individuals allegedly harmed by individuals with or without sufficient motor vehicle insurance.  Id. ¶¶ 15-17, 24.

[4] State Farm also contends the defendants generated standard medical reports that contained false or exaggerated details about individuals with whom there was no doctor-patient relationship. Attorneys who had referred patients to the defendants also allegedly used these reports to support personal injury claims.  Id. ¶ 27.

The fraudulent documents the defendants allegedly submitted to State Farm listed false and exaggerated medical conditions, and noted treatments that either were: (1) not provided, (2) not provided for the medical necessity or medical benefit to the patient, (3) misrepresented as if provided specifically by Dr. Ficchi or a licensed provider when in fact that did not occur, (4) excessive, (5) inappropriate and represent significant, gross and intentional deviations from accepted standards of care, (6) not reimbursable under applicable law, and (7) not provided pursuant to applicable law. Id. ¶¶ 25, 26, 43, 44.

Examples of these purportedly fraudulent documents are detailed in paragraphs 39(a)-(o) and 52 of the Second Amended Complaint. Specifically, State Farm identifies in paragraph 52, the records of 48 patients that it alleges were sent through the mails or wires in furtherance of the scheme to defraud described above. See id. ¶¶ 39, 52. For each of these specific individuals listed in paragraph 52, State Farm identified the patient's name, the claim number, the date the defendants sent the medical records, the specific sender of the record, and the recipient of the allegedly fraudulent records. Id. ¶ 52. Moreover, in paragraph 39(a)-(o), State Farm attempted to add substantive detail to 15 of the 48 allegedly fraudulent examples listed in paragraph 52. Id. ¶ 39.

State Farm asserts that the defendants, with the knowledge and consent of Drs. Ficchi, Shenko, and Knox, prepared these false reports and bills and sent them to State Farm to obtain payments. Id. ¶¶ 37, 38. State Farm further alleges that the defendants knew that the submissions were false and that State Farm would rely on the false submissions when making payment decisions. Id. ¶¶ 50, 54-56. State Farm also alleges that Drs. Ficchi, Knox and Shenko communicated with each other regarding the allegedly unwarranted patient services and knew

4

that the patients were to be treated according to the standardized plan for which they could bill State Farm.  All understood how the actions of the others benefitted them all, however each acted for his "sole financial benefit."  <u>Id</u>. ¶¶ 23, 31, 35, 37.

State Farm contends that the Knox/Shenko Defendants paid kickbacks to the Ficchi Defendants in exchange for the exclusive right to provide and bill for services at the Ficchi Defendants' medical offices, and the exclusive referral of patients from the Ficchi Defendants regardless of the patients' complaints, injuries, prognosis, or actual medical needs.  <u>Id</u>. ¶¶ 29-30, 33-34, 36.  The Knox/Shenko Defendants would then confirm the diagnosis of the first doctor, conclude falsely that the patient had an abnormal condition as a result of an accident, and recommend additional, unnecessary treatment.  <u>Id</u>. ¶¶ 30, 34.  The supposed independent diagnoses and conclusions of Drs. Knox and Shenko further supported the need to make payments and facilitated the scheme to defraud the insurance company.  Id. ¶ 57.

State Farm alleges the defendants advanced their scheme and kept State Farm from discovering the scheme by falsifying documents, providing false testimony, and altering patient files.  <u>Id</u>. ¶ 59.  Due to the concerted efforts of all defendants to conceal their fraudulent activities, State Farm did not discover its injury and the source of the injury until February 8, 2008.  <u>Id</u>. ¶ 60.  As a result of the described behavior, from 2004 to the present, State Farm alleges it paid at least $1.5 million to the defendants.  <u>Id</u>. ¶¶ 47, 48.

### B.     Procedural History

In February 2010, State Farm filed a complaint alleging that Dr. Ficchi, in concert with Drs. Shenko and Knox and the treatment centers operated by the doctors, committed insurance

fraud by billing for treatments that did not occur and prescribing unnecessary treatments for patients covered by State Farm and billing for the same.  After the defendants filed a motion to dismiss, State Farm filed a First Amended Complaint on June 3, 2010, alleging eight counts: (1) fraud, (2) statutory insurance fraud, (3) RICO, (4) conspiracy to violate RICO, (5) conspiracy to commit fraud, (6) concerted tortious action (a scheme to defraud), (7) unjust enrichment, and (8) restitution.  The defendants promptly filed a second motion to dismiss.

On June 13, 2011, the Court granted the defendants' motion to dismiss without prejudice to State Farm filing a second amended complaint.  State Farm Mut. Auto. Ins. Co. v. Ficchi, No. 10-555, 2011 WL 2313203, at *1 (E.D. Pa. June 13, 2011).  The Court ruled that State Farm failed to plead its claims sounding in fraud with the requisite particularity required by Rule 9(b). Id. at *6-8.  After noting that State Farm had alleged the "general outline" of an insurance fraud in "superficially rigorous detail," the Court explained that "regardless of the extent of the detail contained in that description of the fraud's general design, or the ardor and passion that underscores the allegations," merely alleging the contour of a fraud, as State Farm did in its First Amended Complaint, is not sufficient in and of itself to overcome a motion to dismiss.  Id. at *5. Specifically, the Court observed that in paragraph 49 of the First Amended Complaint, State Farm identified 87 examples (relating to 42 claim numbers) of invoices and records that it alleged contained fraudulent information and which one or more of the defendants sent via mail or wire to an attorney or State Farm in furtherance of the billing fraud scheme.  State Farm added that for each of those claim numbers, Drs. Shenko and/or Knox sent records to an unidentified recipient on a specific date.  Id.[5]

---

[5] As the Court noted "by way of illustration" in its Memorandum and Order, State Farm's "examples" relating to Claim No. 38-K-795-778 were as follows:

The Court determined that State Farm's examples of allegedly fraudulent communications pled in this manner failed to inject sufficient particularity as is required by Rule 9(b). Id. at *6-8. With respect to the alleged fraudulent representations purportedly implicating all defendants (i.e., allegations like subparagraph (pp)), the Court ruled that State Farm's pleadings failed to identify the specific actor who made the material misrepresentations at issue and did not provide a date for or specify the type of action alleged to be contained in the misrepresentation. Id. at *7.[6] Regarding the allegations specific to Drs. Knox, Shenko and their constituent businesses, the Court concluded State Farm failed to specify "to whom these misrepresentations were made," and failed to clarify "the substance of the misrepresentation[s]." Id. at *8. Accordingly, the Court dismissed the fraud claims alleged against the defendants. In light of State Farm's failure to adequately plead fraud, State Farm's RICO, conspiracy, and other counts in which fraudulent intent was an element failed as well. However, the Court analyzed each count in full and concluded that State Farm had sufficiently pled the remaining elements of each claim.[7]

_____

> (pp) Records sent by Defendants, Ficchi, Shenko, Knox, South Philly, Bensalem, Ortho-Sport, and/or Bensalem to Ricky Liss, Esquire, George Marion, Esquire and/or Plaintiffs concerning claim number 38-K795-778 (12/10/05 – 5/11/06).
> (dddd) Records sent by Knox dated 12/13/05 concerning claim number 38-K795-778.
> (eeee) Records sent by Knox dated 3/9/06 concerning claim number 38-K795-778.
> (ffff) Records sent by Knox dated 12/13/05 and Shenko dated 1/11/06, 2/22/06 and 3/6/06 concerning claim number 38-K795-778.

Id.

[6] The Court noted that the use of the term "and/or" in relation to a paragraph listing the various types of fraudulent misrepresentations created alternative misrepresentations. See id. at *8.

[7] However, the Court ruled that State Farm's state law conspiracy claims were barred by the intracorporate conspiracy doctrine absent clarification by State Farm as to how its conspiracy claim fits within a narrow exception to the doctrine. See Ficchi, 2011 WL 2313203 at *12-13; see also Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003);

In an effort to remedy the deficiencies in its prior two complaints, on July 15, 2011, State Farm filed a Second Amended Complaint seeking to inject the requisite particularity to survive a motion to dismiss. State Farm's allegations in its Second Amended Complaint, presently before the Court, mirror, in most respects, the allegations contained in its First Amended Complaint, particularly with respect to the general design of the purported fraud.[8] The primary substantive changes in State Farm's Second Amended Complaint include replacing the "and/or" phrase with "and," removing the phrase "upon information and belief," adding paragraph 39(a)-(o), and consolidating and adding detail to paragraph 52 (paragraph 49 in the First Amended Complaint).[9]

---

Heffernan v. Hunter, 189 F.3d 405, 412 (3d Cir. 1999).

[8] The precise allegations of State Farm's First Amended Complaint are set forth in detail in the Court's June 13, 2011 Memorandum and Order. See Ficchi, 2011 WL 2313203, at *1-3, 5.

[9] By way of comparison to the First Amended Complaint, State Farm's examples relating to Claim No. 38-K-795-778 quoted in footnote 5 supra and now contained in paragraph 52(oo), read as follows:

> Records for patients Carlena Hayes, Tamyra Riggs, and Demetrius Hayes were sent by Defendants, Ficchi, Ficchi, P.C., Shenko, Knox, South Philly, Ortho-Sport, and Bensalem to Ricky Liss, Esquire, George Marion, Esquire and Plaintiffs concerning claim number 38-K-795-778. The records sent by Ficchi include but may not be limited to those dated 12/12/05, 12/13/05, 12/15/05, 12/19/05, 12/20/05, 12/21/05, 12/22/05, 12/23/05, 12/27/05, 12/28/05, 12/29/05, 1/3/06, 1/4/06, 1/5/06, 1/9/06, 1/10/06, and 1/11/06. The records sent by Ficchi include but may not be limited to those dated 12/10/05 and 12/12/05. The records sent by Shenko and Ortho-Sport include but may not be limited to those dated 1/11/06, 2/22/06, and 3/16/06. The records sent by Knox include but may not be limited to those dated 12/13/05 and 3/9/06. The records sent by Ficchi, Fichi, P.C., and South Philly include but may not be limited to those dated 1/19/06, 1/20/06, 1/21/06, 1/23/06, 1/24/06, 1/25/06, 1/30/06, 1/31/06, 2/2/06, 2/7/06, 2/8/06, 2/14/06, 2/15/06, 2/16/06, 2/17/06, 2/21/06, 2/22/06, 2/23/06, 2/24/06, 2/27/06, 2/28/06, 3/1/06, 3/6/06, 3/7/06, 3/9/06, 3/10/06, 3/14/06, 3/15/06, 3/16/06, 3/20/06, 3/21/06, 3/23/06, 3/27/06, 3/29/06, 3/30/06, 4/3/06, 4/7/06, 4/10/06, 4/11/06, 4/20/06, 5/11/06, 8/23/06, 8/25/06, and 6/18/07. The records sent by Bensalem include but may not be limited to those dated 12/12/05.

Second Am. Compl. ¶ 52(oo).

In spite of the changes made to State Farm's pleadings, the Ficchi Defendants and the Knox/Shenko Defendants maintain that State Farm still fails to clarify the substance of the allegedly fraudulent representations in the documents submitted to State Farm, listed in paragraph 52, and described in paragraph 39. Accordingly, the two sets of defendants filed separate motions to dismiss. Approximately two months after the Court held oral argument, the Knox/Shenko Defendants filed a motion for Rule 11 sanctions against counsel for State Farm.

## III.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-55 (2007) (quoting Conley, 355 U.S. at 47), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (citations omitted). To survive a motion to dismiss, a civil complaint must allege "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (confirming that Twombly applies to all civil cases).

The Court "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v.

King & Spalding, 467 U.S. 69, 73 (1984)); <u>see</u> <u>also</u> <u>Twombly</u>, 550 U.S. at 555 (stating that

courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)").

The Court must also accept as true all reasonable inferences that may be drawn from the

allegations, and view those facts and inferences in the light most favorable to the non-moving

party.  <u>Rocks v. Philadelphia</u>, 868 F.2d 644, 645 (3d Cir. 1989).  The Court, however, need not

accept as true "unsupported conclusions and unwarranted inferences," <u>Doug Grant, Inc. v. Greate</u>

<u>Bay Casino Corp.</u>, 232 F.3d 173, 183-84 (3d Cir. 2000) (citing <u>City of Pittsburgh v. West Penn</u>

<u>Power Co.</u>, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal

conclusions."  <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d. 902, 906 (3d Cir. 1997).


## IV.    DISCUSSION

Both the Ficchi Defendants and the Knox/Shenko Defendants argue that the allegations in

the Second Amended Complaint are insufficient to state a claim for relief under the pleading

standards of Rule 8(a), as interpreted by <u>Twombly</u> and <u>Iqbal</u>, or of Rule 9(b).  As with their

motion to dismiss State Farm's First Amended Complaint, both sets of defendants argue that

State Farm failed to plead the allegedly fraudulent communications underlying each of the

various fraud-based counts of its Second Amended Complaint with the particularity required by

Rule 9(b).  The defendants also assert that State Farm's RICO and state law conspiracy claims

must be dismissed because State Farm failed to allege the Defendants acted with a commonality

of purpose.  Finally, the Knox/Shenko Defendants filed a separate motion against counsel for

State Farm arguing that State Farm has no evidentiary support to sustain the allegations contained

in paragraphs 39(b) and 39(c) of the Second Amended Complaint and that Rule 11 sanctions are therefore appropriate.

The Court addresses these arguments in turn.

### A.  Fraud-based Claims

 "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  To satisfy the Rule 9(b) pleading requirements, a complaint may either describe "the circumstances of the alleged fraud with precise allegations of date, time, or place" or may use "some [other] means of injecting precision and some measure of substantiation into their allegations of fraud."  Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 172 n.10 (3d Cir. 2002) (citation omitted) (internal quotations omitted); see also Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998), abrogation on other grounds recognized by, Forbes v. Eagleson, 228 F.3d 471, 483-84 (3d Cir. 2000); Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).  At the very least, "[p]laintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation."  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004).  This pleading standard not only gives defendants notice of the claims against them, but also combats "frivolous suits brought solely to extract settlements" from defendants and "provides an increased measure of protection for their reputations."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997).

While a significant purpose of Rule 9(b) is to provide notice of the precise misconduct at issue, courts "should . . . apply the rule with some flexibility and should not require plaintiffs to

11

plead issues that may have been concealed by the defendants." Rolo, 155 F.3d at 658.

Accordingly, the particularity rule is somewhat relaxed when key factual information remains

within the defendants' control. Burlington, 114 F.3d at 1418. "Relaxation," however, does not

translate into, or otherwise authorize, boilerplate and conclusory allegations, and plaintiffs "must

accompany their legal theory with factual allegations that make their theoretically viable claim

plausible." Id. Allegations "based upon information and belief" are permissible, "but only if the

pleading sets forth specific facts upon which the belief is reasonably based." Hollander v. Ortho-

McNeil-Janssen Pharm., Inc., No. 10-cv-0836-RB, 2010 WL 4159265, at *4 (E.D. Pa. Oct. 21,

2010) (citation omitted) (internal quotations omitted); see also Weiner v. Quaker Oats Co., 129

F.3d 310, 319 (3d Cir. 1997) ("[A] boilerplate allegation that plaintiffs believe the necessary

information 'lies in defendants' exclusive control,' if made, must be accompanied by a statement

of facts upon which their allegation is based." (quoting Shapiro v. UJB Fin. Corp., 964 F.2d 272,

285 (3d Cir. 1992) (internal quotations omitted)); Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d

628, 645 (3d Cir. 1989) (determining that in cases of corporate fraud, "even under a non-

restrictive application of [Rule 9(b)], pleaders must allege that the necessary information lies

within defendants' control, and their allegations must be accompanied by a statement of the facts

upon which the allegations are based"). In other words, even a "relaxed fit" requires some

tailoring.

To determine whether a particular claim is subject to and meets the Rule 9(b) pleading

standard, the Third Circuit Court of Appeals has held that "where the plaintiff grounds [her]

claims in allegations of fraud—and the claims thus 'sound in fraud'—the heightened pleading

requirements of Rule 9(b) apply." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 270

12

(3d Cir. 2006); see also Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 161-62 (3d

Cir. 2004).  Conversely, "claims . . . that do not sound in fraud are not held to the heightened

pleading requirements of Fed. R. Civ. P. 9(b)."  In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267,

273 n.5 (3d Cir. 2004) (citing Shapiro, 964 F.2d at 288).  However, there is no requirement that

fraud or mistake be a necessary element of a prima facie claim in order for Rule 9(b) to apply.

See Chubb, 394 F.3d at 161 (discussing this law with respect to a section 11 Securities Act

claim); see also Vess v. Ciba–Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) ("In cases

where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in

the complaint that the defendant has engaged in fraudulent conduct.  In some cases, the plaintiff

may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as

the basis of a claim.  In that event, the claim is said to be 'grounded in fraud' or to 'sound in

fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of

Rule 9(b).").

Likewise, Rule 8 continues to apply even when, under Rule 9(b), "[m]alice, intent,

knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P.

9(b).  For purposes of its meaningful presence in Rule 9(b), "'generally' is a relative term" and

"it is to be compared to the particularity requirement applicable to fraud or mistake."  Iqbal, 556

U.S. at 686.  By way of example, "Rule 9 merely excuses a party from pleading discriminatory

intent under an elevated pleading standard.  It does not give him license to evade the less rigid-

though still operative-strictures of Rule 8."  Id. at 686-87; cf. Burlington, 114 F.3d at 1418

("[P]laintiffs must still allege facts that show the court their basis for inferring that the defendants

acted with 'scienter.'"); United States ex rel. Pilecki-Simko v. Chubb Instit., 443 F. App'x 754,

759 (3d Cir. 2011) (recognizing that under Iqbal, "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." (quoting Iqbal, 556 U.S. at 687)).[10]

As was the case with State Farm's First Amended Complaint, Counts I-VI of State Farm's Second Amended Complaint – fraud, statutory insurance fraud, RICO (with mail and wire fraud as the identified predicate offenses), conspiracy to violate RICO (mail and wire fraud), concerted tortious action (where the tortious act is fraud), and conspiracy (to commit statutory insurance fraud, fraud, and concerted tortious acts) – sound in fraud and are based entirely on the allegedly fraudulent communications from the Ficchi and Knox/Shenko Defendants to State Farm.  Both the Ficchi and Knox/Shenko Defendants seek dismissal of these fraud-based claims under Rule 9(b) and Rule 8(a).  In particular, they argue that State Farm failed to plead the fraudulent misrepresentations underlying its claims of fraud, statutory insurance fraud, and mail and wire fraud with sufficient particularity under Rule 9(b) and plausibility under Rule 8(a).

A claim for fraud under Pennsylvania law requires allegations of "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was

---

[10] The Ficchi Defendants have argued at length both at oral argument and in supplemental briefing that the Third Circuit Court of Appeals' October 24, 2011 decision in the case Burtch v. Milberg Factors, Inc., 662 F.3d 212 (3d Cir. 2011), mandates dismissal of State Farm's Second Amended Complaint.  The Burtch decision, however, did not relate to the heightened pleading requirements of Rule 9(b), and although it seemingly reinforces the Rule 8 plausibility requirements enunciated by the Supreme Court in Twombly and Iqbal, the Court does not read the Burtch decision to impose any *additional* pleading requirements on State Farm to survive a motion to dismiss.

proximately caused by the reliance." Giordano v. Claudio, 714 F. Supp. 2d 508, 518 (E.D. Pa.

2010); see also Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994).  Likewise, Pennsylvania's

Insurance Fraud Statute, 18 Pa. C. S. § 4117, creates a private cause of action to protect against

various types of insurance fraud.  State Farm asserts that the Defendants violated §§ 4117(a)(2),

(a)(3), (a)(5), (a)(6), (b)(2), and (b)(3).[11]  All claims under § 4117(a) concern the Ficchi and

Knox/Shenko Defendants' alleged fraudulent representations and the benefits they received as a

result.[12]  To state a claim for mail or wire fraud State Farm must allege (1) the defendant's

---

[11] 18 Pa. C. S. §§ 4117(b)(2) and (b)(3) are the statute's anti-kickback provisions.  An offense is committed if a person does any of the following:

> (2) With respect to an insurance benefit or claim covered by this section, a health care provider may not compensate or give anything of value to a person to recommend or secure the provider's service to or employment by a patient or as a reward for having made a recommendation resulting in the provider's service to or employment by a patient. . . .
>
> (3) A lawyer or health care provider may not compensate or give anything of value to a person for providing names, addresses, telephone numbers or other identifying information of individuals seeking or receiving medical or rehabilitative care for accident, sickness or disease, except to the extent a referral and receipt of compensation is permitted under applicable professional rules of conduct. A person may not knowingly transmit such referral information to a lawyer or health care professional for the purpose of receiving compensation or anything of value. Attempts to circumvent this paragraph through use of any other person, including, but not limited to, employees, agents or servants, shall also be prohibited.

18 Pa. C. S. § 4117(b)(2) and (b)(3).

   Because State Farm does not need to prove a fraudulent representation or omission to sustain its causes of action under either of these sections, State Farm need only satisfy the pleading requirements of Rule 8(a) to state a claim under either of these sections.

[12] Pursuant to Section 4117(a), a person commits an offense if the person does any of the following:

> (2) Knowingly and with the intent to defraud any insurer . . . , presents or causes to be presented to any insurer . . .  any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.
>
> (3) Knowingly and with the intent to defraud any insurer . . . , assists, abets, solicits or conspires with another to prepare or make any statement that is intended to be presented to any insurer . . . in connection with, or in support of, a claim that contains any false,

15

knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to

defraud, and (3) the use of the mails or interstate wire communications in furtherance of the

scheme." United States v. Hedaithy, 392 F.3d 580, 590 (3d Cir. 2004) (citations omitted). "[A]

scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of

fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary

prudence and comprehension." Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494,

528 (3d Cir. 1998) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir.

1991)).

Once again, State Farm has alleged the general framework of a fraudulent scheme.

Indeed, the defendants only challenge these six counts on the ground that State Farm failed to

allege false or fraudulent representations in paragraphs 39 and 52 of the Second Amended

Complaint (i.e., the only paragraphs that identify particular fraudulent records and bills) with the

requisite plausibility and particularity.  Accordingly, the adequacy of State Farm's pleadings as to

these six counts depends on whether State Farm sufficiently alleged false representations in these

paragraphs.  The Court will examine the challenged representations in turn.

---

incomplete or misleading information concerning any fact of thing material to the claim, including information which documents or supports an amount claimed in excess of the actual loss sustained by the claimant.
(5) Knowingly benefits, directly or indirectly, from the proceeds derived from a violation of this section due to the assistance, conspiracy or urging of any person.
(6) Is the owner, administrator or employee of any health care facility and knowingly allows the use of such facility by any person in furtherance of a scheme or conspiracy to violate any of the provisions of this section . . . .
18 Pa. C. S. § 4117(a).

### 1.  **Paragraph 52**[13]

The defendants argue that State Farm failed to plead the purported fraudulent misrepresentations relating to the patients listed in paragraph 52 of the Second Amended Complaint with the requisite particularity.  As noted above, for each of the 48 subparagraphs of paragraph 52, State Farm identifies the patient's name, the claim number, the date the defendants sent the medical records, the specific sender of the record, and the recipient of the allegedly fraudulent records.  Second Am. Compl. ¶ 52.  However, nowhere in paragraph 52 does State Farm clarify the substance of the alleged misrepresentations contained in each of the alleged fraudulent communications.  See Lum, 361 F.3d at 224 (holding that the plaintiff must allege the "content of the misrepresentation").  Instead, State Farm lists the specific services provided by the Defendants in paragraph 23 (i.e. consultations, testing, physical therapy, etc.),[14] and the specific types of fraudulent misrepresentations allegedly contained in the records in paragraph 25.[15]  But there is no nexus between the documentation provided in paragraph 52, the supposed

---

[13] Paragraph 39 of the Second Amended Complaint describes the alleged fraud in greater detail for 15 of the 48 subparagraphs of paragraph 52.  These subparagraphs include 39(a) -52(f), 39(b)-52(jj), 39(c)-52(hh), 39(d)-52(ss), 39(e)-52(uu), 39(f)-52(g), 39(g)-52(a), 39(h)-52(h), 39(i)-52(tt), 39(j)-52(d), 39(k)-52(e), 39(l)-52(vv), 39(m)-52(l), 39(n)-52(o), and 39(o)-52(kk).  Accordingly, these 15 subparagraphs of paragraph 52 will be considered along with the Court's analysis of paragraph 39.

[14] Paragraph 23 provides in relevant part that the "standardized and predetermined treatment plan consisted of, but was not limited to, physical therapy services, kinesio taping or strapping, psychological services, biofeedback, electromyography (EMG) and nerve conduction testing, MRIs, orthopedic consultations and other purported medical, physical therapy and chiropractic testing and services."  Second Am. Compl. ¶ 23.

[15] Paragraph 25 provides:
> It was further part of the conspiracy and scheme to defraud that many of the documented examinations, modalities, testing, consultations, and other treatments and services purportedly provided at the Defendant Medical Offices and by the Defendants and their staff, including but not limited to, the examples listed in paragraphs 39 and 52, [1] were

misrepresentations listed in paragraph 25, and the supposed treatments listed in paragraph 23.

Stated differently, despite the addition of the dates and recipients of each mailing or wire, the

defendants are still left to guess which of the services listed in paragraph 23 rendered to patients

listed in paragraph 52 were fraudulent, and, most importantly, how those services were

fraudulent under paragraph 25.

Allied Medical Assoc. v. State Farm Mut. Auto Ins. Co., No. 08-2434, 2009 WL 1066932

(E.D. Pa. Apr. 16, 2009) is instructive. There, the plaintiffs alleged that the allegations in State

Farm's counterclaims were not particular enough to satisfy Rule 9(b). The Allied court agreed

and dismissed certain paragraphs from the counterclaims where State Farm had "lumped together

all non-enumerated reimbursement requests, averring that 'all, or in the alternative, many' of the

reimbursement requests 'contain fraudulent misrepresentations.'" Id. at *5. In other words, State

Farm failed to delineate which mailings contained which representations. However, the Allied

court permitted some counterclaims to go forward that "bucketed" the specific mailings by type

of fraud. Id. at *4. For example, the Court permitted an averment to proceed to discovery where

State Farm did not itemize which procedures were not performed, but identified both the

reimbursement requests and that the requests sought reimbursement for medical procedures that

were not performed. Id. The Court let another allegation proceed where it listed only the ID

numbers of four patients who received unnecessary treatment. Id. Here, State Farm does not

---

not provided, [2] were not provided for the medical necessity or medical benefit to the
patient, [3] were misrepresented as if provided specifically by Ficchi or a licensed
provider when in fact that did not occur, [4] were excessive, [5] were inappropriate and
represent significant, gross and intentional deviations from accepted standards of care, [6]
were not reimbursable under applicable law, and [7] were not provided pursuant to
applicable law.
Second Am. Compl. ¶ 25.

place the particular communications listed in paragraph 52 into buckets, and offers no indication of the particular type of misrepresentations contained in each mailing for the majority of subparagraphs in paragraph 52.  Accordingly, paragraph 52, suffers from the same deficiencies as the paragraphs dismissed from the complaint in <u>Allied</u>.

State Farm maintains that because it specifically identified the medical records relating to each of the defendants by claim number, patient, and date, and because the defendants have the records in their possession, the defendants should know what treatments they did or did not provide to each patient on each date.  While that may be true, it does little to identify for the defendants (1) which treatments in each record were fraudulent and (2) why those treatments were fraudulent.

State Farm also asserts that its substitution of the term "and" for "and/or" in paragraphs 23 and 25 injected the requisite precision to its allegations of fraud because it now alleges that each and every treatment in each and every bill, record, and other document listed in paragraph 52 were fraudulent in <u>all</u> of the ways listed in paragraph 25.  However, even though State Farm removed all instances of "and/or" from its complaint, the deficiencies persist in State Farm's allegations.  The result is that State Farm has pled contradictory allegations of fraud.  For example, the defendants could not have failed to provide treatment and, at the same time, misrepresented the identity of the health care provider who rendered the treatment.  Nor could the treatments have been not provided and excessive at the same time.  In other words, it would be impossible for the defendants to have engaged in all alleged forms of fraud with respect to every treatment of every patient.

Accordingly, if one were to look only at the 33 subparagraphs of paragraph 52, the Court would conclude that State Farm has failed to allege fraud with the requisite particularity–until one examines the provisions described with greater particularity in paragraph 39.

### 2.  Paragraph 39

Both the Ficchi Defendants and the Knox/Shenko Defendants next challenge State Farm's allegations contained in paragraph 39 of the Second Amended Complaint.  The Ficchi Defendants argue that State Farm's allegations in subparts (b), (c), (g), (h), (i), (j), (k), (l), (m), (n), and (o) of paragraph 39 fail to show a plausible basis for fraud under Rule 9(b) once all conclusory allegations couched in factual language are stripped away, and request that the Court dismiss those subparagraphs.  Likewise, the Knox/Shenko Defendants contend that none of the subparagraphs of paragraph 39 add any substantive particularity to the fraud allegations, and accordingly the entire Second Amended Complaint should be dismissed as to the allegations against them.  The Court will address the allegations as they relate to each set of defendants in turn.

### a.  Knox/Shenko defendants

The Knox/Shenko Defendants argue that the only revisions to State Farm's allegations of fraud against them from the First Amended Complaint to the Second Amended Complaint that attempt to add substantive particularity and specificity are contained in paragraph 39 of the Second Amended Complaint.  However, in relation to them, they assert that the allegations are

non-specific and repetitive.  In most of the 14 subparts of paragraph 39 implicating Drs. Knox

and/or Shenko,[16] the only reference to either Drs. Shenko or Knox reads as follows:

> [Knox/Shenko] provided services to [x patient] on [x dates] which were unnecessary and
> listed false and exaggerated injuries.  These services were rendered pursuant to the
> predetermined treatment plan identified above and pursuant to the kickback arrangement
> as described above.

Second Am. Compl. ¶ 39(a)-(c), (e)-(o).[17]  The Knox/Shenko Defendants assert that the Second

Amended Complaint—particularly paragraph 39—leaves them uncertain as to (1) what particular

service each doctor provided each patient that was in and of itself fraudulent, and (2) what

specific services of the alleged predetermined treatment plan described in paragraph 23 were

fraudulently rendered by whom and to whom.

However, unlike with the purported fraudulent misrepresentations detailed only in

paragraph 52, State Farm's allegations against Drs. Shenko and Knox in each subparagraph of

paragraph 39 clarify the substance of the misrepresentations in each allegedly fraudulent wire or

mailing.  Although formulaic, the allegations in paragraph 39 make clear that State Farm alleges

the submitted documents were fraudulent because (1) the services provided were unnecessary,

and (2) the documents listed false and exaggerated injuries.  State Farm's allegation that the

injuries were exaggerated explains how the injuries in each document were fraudulent.   Whereas

in its First Amended Complaint State Farm merely cross-referenced a paragraph cataloguing a

---

[16] Subparagraph 39(d) does not contain any allegations relating to Drs. Knox or Shenko.

[17] Additionally, in subparagraphs 39(a), 39(b), 39(f), 39(g), 39(h), and 39(i), State Farm added
the allegation, "Ficchi, Shenko, and Knox knew that the records and reports would be used by [x
attorney] in prosecuting personal injury claims for [x patient]."

list of possible misrepresentations similar to paragraph 25 of the Second Amended Complaint, here, State Farm added particularity by noting which of the listed fraudulent conduct applied to each particular mailing.  Accordingly, with respect to Drs. Shenko and Knox, State Farm clarified the substance of the misrepresentations.

The Knox/Shenko Defendants ask the Court to analyze each subparagraph of paragraph 39 in isolation and ignore the remainder of the Second Amended Complaint.  Indeed, if the Court were to analyze each subparagraph of paragraph 39 in isolation as the Knox/Shenko Defendants ask it to, the Court would almost certainly reach the Knox/Shenko Defendants' desired conclusion.  However, "courts must determine whether the complaint as a whole contains sufficient factual matter to state a facially plausible claim."  Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) (citing Iqbal, 556 U.S. at 678).  Looking to the allegations of the entire complaint, the Court concludes that State Farm has adequately pled fraudulent misrepresentations on the part of the Knox/Shenko Defendants.

The Knox/Shenko Defendants' also caution the Court that State Farm's allegations leave them to guess which of the many services each doctor provided to each patient that were fraudulent.  The Court does not share the Knox/Shenko Defendants' concern.  First, paragraph 23 provides an exhaustive list of the treatments included in the standardized treatment plan.  Second Am. Compl. ¶ 23.  Standing alone, paragraph 23 does not particularize the services that the Knox/Shenko Defendants allegedly rendered fraudulently.[18]  However, each subparagraph of

---

[18] The Court is not persuaded by the Knox/Shenko Defendants' argument that it is unclear from the complaint whether State Farm alleges Dr. Knox, a psychologist, provided physical therapy services and Dr. Shenko, a physical therapist, provided psychological services.  Paragraph 29 makes clear that Dr. Shenko provided physical therapy services, evaluations, kinesio taping and strapping, whereas paragraph 32 clarifies that Dr. Knox provided services which included consultations, evaluations, psychological services and biofeedback.  Considering the Court must

paragraph 39 cross-references a corresponding subparagraph of paragraph 52.  Those

subparagraphs of paragraph 52 include the patient's name, the claim number, the date of the

medical records that were sent by the Knox/Shenko Defendants, the specific sender of the record,

and the recipient of the allegedly fraudulent records.  Because the Knox/Shenko Defendants are

in possession of all these specifically identified records, there is little mystery as to what services

State Farm alleges were unnecessary and which injuries State Farm alleges were exaggerated.

Each service described in each record listed in paragraph 52 was unnecessary because the alleged

injury or injuries, also described in each record, were exaggerated.

Simply because State Farm alleges that all injuries on a particular record were

exaggerated, and all services described in the same record were consequently unnecessary does

not render the allegations any less particular or any less plausible.  The Knox/Shenko

Defendants' argument that State Farm pleads "all fraud, all the time," is simply incorrect.

Rather, State Farm pleads a particular kind of fraud in specifically identified documents.[19]  See

Allied, 2009 WL 1066932, at *5 (allowing counterclaims to proceed where claims merely

identified a billing number and alleged that the patients did not receive the treatment documented

in records and bills without elaborating on the specific injury); cf. Seville, 742 F.2d 786 (holding

the plaintiff adequately pled fraud under Rule 9(b) where the plaintiff incorporated into the

---

view the allegations of the Second Amended Complaint in the light most favorable to State Farm,
the Court concludes that the Knox/Shenko Defendants need not strain credulity to glean from the
Second Amended Complaint which services State Farm alleges each doctor performed.

[19] Contrary to the concern discussed above regarding the replacement of "and/or" with "and"
when describing the multiple different kinds of fraud in paragraph 25, here, the allegation that all
services were unnecessary and all injuries were exaggerated does not result in contradictory or
unclear allegations.

complaint a list identifying with specificity the pieces of machinery that were the subject of the alleged fraud and linked each piece of machinery to particular fraudulent transactions).  Though State Farm implicates a broad set of documents encompassing a wide array of patients, the fraud alleged by State Farm in paragraph 39 with relation to the Knox/Shenko Defendants passes muster – albeit, perhaps only barely – under Rules 8(a) and 9(b).

### b.  Ficchi defendants

The Ficchi Defendants attack the allegations contained in paragraph 39, subparts (b), (g), (h), (i), (j), (k), (l), (m), (n), and (o) on the grounds that State Farm fails to demonstrate a plausible basis for relief under Rule 8(a) and Rule 9(b) once all conclusory allegations are stripped away.  Specifically, the Ficchi Defendants argue that the alleged fraudulent discharge reports, standardized and predetermined treatment plans, and kickbacks, which State Farm alleges are improper,[20] when stripped of conclusory and inflammatory language more likely describe proper conduct than inappropriate conduct.  They also assert, as did the Knox/Shenko Defendants, that paragraph 39(c) is simply false.  Accordingly, the Ficchi Defendants ask that the Court dismiss particular subparagraphs of paragraph 39.

Both the Ficchi Defendants and the Knox/Shenko Defendants argue that the allegations contained in paragraph 39(c) are false and that State Farm is simply incorrect that patient Reuben Lee received treatment to his leg when it was not injured.  The plaintiffs have attached Mr. Lee's medical records which the defendants suggest show that Mr. Lee did not receive any treatment to

---

[20] The sufficiency of the allegations relating to the kickback arrangement is discussed below in the section related to the Pennsylvania Insurance Fraud statute.

his leg, and that State Farm was not billed by the Ficchi Defendants for any treatment to the leg. See Ficchi Exhibit B.

In deciding motions to dismiss pursuant to Rule 12(b)(6), the Court may consider allegations in the complaint, exhibits attached to the complaint, matters of public record, and records of which the Court may take judicial notice.  See Tellabs, Inc. v. Makor Issues & Rts., 551 U.S. 308, 322 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d cir. 1993).  The court "has complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion . . ." subject to the dictates of Rule 12(d).  5C Wright and Miller, Federal Practice and Procedure § 1366 (3d ed. 2011); see Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Although both sets of defendants assert that the documents contained in Exhibit B are the same documents referenced in paragraphs 39(c) and 52(hh), and clarify that Mr. Lee did not receive treatment to his leg, the Court declines to consider these documents at this stage of the proceeding in light of the paucity of discovery that has occurred thus far, and the minimal effect those documents would have on the final resolution of this matter.  Tolan v. United States, 176 F.R.D. 507, 511 (E.D. Pa. 1998) (citing 5A C. Wright and A. Miller, Federal Practice and Procedure § 1364 (1990 & 1997 Supp.) ("[W]hile a wide range of material may be introduced in conjunction with a Rule 12(b) motion, it is subject to the court's discretion to reject the evidence if it feels that it is not substantial or comprehensive enough to facilitate the disposition of the action.").

25

The Ficchi Defendants, and to a lesser extent, the Knox/Shenko Defendants, also challenge the allegations in subparts (b), (g), (h), (i), (j), (k), (l), (m), (n), and (o) of paragraph 39 on the basis that there is nothing inherently fraudulent about placing patients on a standardized and predetermined treatment plan.  Without question, that simple statement is correct.  However, the Ficchi Defendants ignore other paragraphs of the Second Amended Complaint that supply particularity and plausibility to the fraudulent nature of the alleged treatment plan at issue.

First, State Farm alleges that Dr. Ficchi "established and implemented" the standardized and predetermined treatment plan along with Drs. Shenko and Knox.  Second Am. Compl. ¶ 23.  The Ficchi Defendants allegedly placed their patients on this plan instead of properly assessing them, identifying their injuries, and providing them with individualized treatment.  Id.  State Farm also contends that all of the identified patients at the Defendant Medical Offices were referred to Drs. Knox and Shenko irrespective of the patients' complaints, injuries, prognosis, or medical needs.  Id. ¶ 36.  Moreover, all the Doctors "had access to the medical files of the patients at the Defendant Medical Offices, all communicated with each other relating to alleged patient services at the Defendant Medical Offices, and all knew that all patients were to be treated according to the standardized and predetermined treatment plan."  Id. ¶ 37.

Second, State Farm alleges that the defendants collectively implemented the plan, in part, "to magnify and misstate the condition of the patients," to further the conspiracy and scheme to defraud, and for the financial benefit of the defendants.  Id. ¶ 23.  This is consistent with State Farm's allegation that the services rendered pursuant to the predetermined treatment plan by the Knox/Shenko Defendants were unnecessary because the documented injuries were exaggerated.

Third, the allegations contained in each corresponding subparagraph of paragraph 52

26

identify the purportedly fraudulent records the Ficchi Defendants sent to State Farm. These records allegedly set forth the specific injuries that were exaggerated and the specific treatments that were consequently unnecessary. Although these records may document treatments performed by Drs. Knox or Shenko, the other allegations of the Second Amended Complaint sufficiently allege that the Ficchi Defendants were aware of and actively participated in formulating the Knox/Shenko Defendants' course of treatment.

When considered in conjunction with the allegations referenced in the remainder of the Second Amended Complaint, the allegations regarding the standardized treatment plan in this specific case allege fraud with the requisite particularity and plausibility.[21] Because each of the subparagraphs challenged by the Ficchi Defendants included allegations regarding the standardized and predetermined treatment plan, the Court concludes that State Farm pled fraud by the Ficchi Defendants with the requisite plausibility and particularity as is required under Rule 8(a) and Rule 9(b).

### 3. Kickback arrangement

As noted above, the allegations relating to the purported kickback arrangement between the Ficchi Defendants and the Knox/Shenko Defendants do not encompass the alleged misrepresentations that are the subject of any of the fraud counts. Rather, the purported kickback arrangement stands as the basis for State Farm's stand-alone claims under the anti-kickback provisions of the Pennsylvania Insurance Fraud Statute, 18 Pa. C. S. § 4117(b)(2) and (b)(3),

---

[21] Because the Court concludes that the allegations relating to the standardized treatment plan satisfy the pleading requirements of Rule 9(b) and Rule 8(a), the Court need not address the merits of the Ficchi Defendants' arguments regarding the alleged fraudulent discharge reports contained in subparagraphs 39(b), (h), (k), and (l).

27

where proof of a fraudulent representation is not necessary to sustain the causes of action. Although State Farm also seems to allege that the kickback arrangement advanced the overarching fraudulent scheme, the kickback arrangement is not necessary to state a claim of fraud.  Accordingly, the allegations related to the alleged kickback arrangement are subject to the pleading requirements of Rule 8(a) only; not Rule 9(b).

However, perhaps sensing that the kickback arrangement adds context to the alleged fraud, the Ficchi Defendants address the alleged kickback arrangement along with their argument that State Farm did not plausibly show that the Ficchi Defendants engaged in fraud.  Therefore, the Court will address the sufficiency of the allegations relating to the kickback arrangement here.

State Farm alleges that both Drs. Knox and Shenko paid money to the Ficchi Defendants in exchange for the exclusive rights to provide their services to the Ficchi Defendants' patients at the Defendant Medical Offices pursuant to the predetermined treatment plan, and to bill State Farm for the services provided to the patients.  State Farm further alleges that as part of the kickback arrangement, Drs. Knox and Shenko would confirm the diagnoses of the doctors of the Defendant Medical Offices to facilitate the scheme to defraud.  Second Am. Compl. ¶¶ 29, 30, 33, 34, 57.

The Ficchi Defendants go to great lengths to try to convince the Court that the kickback-related claims are insufficient to state a plausible claim for relief under the standards enunciated by the Supreme Court in Twombly and Iqbal once all conclusory language is stripped from the allegations.  However, the Court is not persuaded.  Merely declaring language conclusory does not necessarily make it so.  The Ficchi Defendants ask the Court to strip State Farm's Second

Amended Complaint not only of all conclusory language, but also of all language that is seemingly adverse to their position.  In fact, the Ficchi Defendants go so far as to argue that "the kickback allegations, when stripped of their conclusory language, claim no more than that money was transferred between Defendants."  Ficchi Mot. at 20; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (citing Iqbal, 556 U.S. at 679) (noting that the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  The Court is not convinced that State Farm's barest allegations are as innocuous as the Ficchi Defendants suggest.

In Allied Medical, the District Court dismissed State Farm's claims under §§ 4117(b)(2) and (b)(3) because State Farm merely recited the statutory text and offered no particular averments in support.  2009 WL 1066932 at *6.  The Court took particular issue with State Farm's failure to plead facts describing the nature or type of kickbacks paid, who paid the kickbacks, and who received the kickbacks.  Here, State Farm has clearly alleged that "[Drs. Knox and Shenko] paid money to Dr. Ficchi and the Defendant Medical Offices" for the exclusive privilege of seeing and . . . treating patients and for billing State Farm in furtherance of the scheme to defraud.  Second Am. Compl. ¶¶ 29, 30, 79-80.  These factual allegations are sufficient to state a plausible claim for relief under §§ 4117(b)(2) and (b)(3).

### D.  RICO and Conspiracy

In Counts III, and VI of the Second Amended Complaint, State Farm alleges that the Ficchi Defendants and the Knox/Shenko Defendants violated RICO, 18 U.S.C. § 1962(c), and conspired to violate the Pennsylvania Insurance Fraud statute and commit common law fraud.

The Knox/Shenko Defendants argue that these counts must be dismissed because the Second Amended Complaint fails to allege the defendants acted with a common purpose sufficient to form a RICO enterprise or a conspiracy.[22]

A RICO claim requires the plaintiff to plead four basic elements: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. Lum, 361 F.3d at 223. "[A]n enterprise includes any union or group of individuals associated in fact." United States v. Turkette, 452 U.S. 576, 580 (1981). One necessary element of an association-in-fact enterprise is that it must have a "common purpose." See Boyle v. United States, 556 U.S. 938, 948 (2009). Likewise, "[u]nder Pennsylvania common law, to plead a claim for civil conspiracy, [State Farm] must show that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Wenglicki v. Tribeca Lending Corp., No. 07-4522, 2009 WL 2195221, at *6 (E.D. Pa. July 22, 2009) (quotations omitted). To plead conspiracy, a plaintiff must allege a particular object of the conspiracy. See Shearin v. E.F. Hutton Grp., Inc., 885 F.2d 1162, 1166 (3d Cir. 1989), abrogated on other grounds by Beck v. Prupris, 529 U.S. 494 (2000). Accordingly, to state a claim of a RICO violation or a common law conspiracy, State Farm must allege that the defendants acted with a common purpose and that their conspiracy had a particular object.

In the Court's June 13, 2011 Memorandum and Order, it ruled that except for State Farm's failure to plead fraud with particularity, State Farm had sufficiently pled the remaining

_____

[22] Only the Knox/Shenko Defendants argue that State Farm failed to plead commonality of purpose. See Knox/Shenko Mot. at 34-37. However, the Ficchi Defendants incorporated the arguments of the Knox/Shenko Defendants by reference in their brief insofar as if the Court determines that State Farm's RICO and state-law conspiracy claims fail against the Knox/Shenko Defendants, they must likewise fail against the Ficchi Defendants. See Ficchi Mot. at 31.

elements of a RICO violation.  In particular, relying on various paragraphs in the First Amended Complaint the Court found that State Farm adequately pled that the defendants acted with the common purpose of fraudulently inducing payment by State Farm.  <u>Ficchi</u>, 2011 WL 2313203, at *9-10.

The Knox/Shenko Defendants argue that paragraphs 31 and 35 of the Second Amended Complaint have created a "seismic shift" in the nature of State Farm's allegations so as to call into question whether the defendants acted with a common purpose.  Specifically, paragraphs 31 and 35 now allege that Drs. Knox and Shenko provided their respective "standardized and predetermined treatment plan" services "for [their respective] sole financial benefit" and that "despite this fact, [their] conduct financially benefitted the other Defendants."  Second Am. Compl. ¶¶ 31, 35.[23]  The Knox/Shenko Defendants assert State Farm's allegations that Drs. Knox and Shenko acted for their "sole financial benefit," rather than for the financial benefit of the defendants as a whole, render State Farm's RICO and conspiracy allegations inadequate and undercut State Farm's allegations that the defendants acted collectively or with a common purpose.

Although the Knox/Shenko Defendants take great stock in the linguistic differences in these two paragraphs between State Farm's First Amended Complaint and Second Amended Complaint, the Court is not persuaded that State Farm's Second Amended Complaint fails to allege a common purpose on the part of the defendants.  Were paragraphs 31 and 35 the only paragraphs of the Second Amended Complaint that purport to allege a common purpose between

---

[23] On the other hand, Paragraphs 30 and 34 of the First Amended Complaint alleged that Drs. Knox and Shenko provided services "for the financial benefit of Ficchi, [Shenko or Knox], [Ortho-Sport], [and] the other Defendants . . . ."  <u>See</u> First Am. Compl. ¶¶ 30, 34.

the defendants, perhaps the Knox/Shenko Defendants' argument would carry more weight. However, that is simply not the case.

State Farm has made it abundantly clear throughout its Second Amended Complaint that each predicate act of fraud (i.e., the submission of each false bill, report or record via the mails) was committed by the defendants with the purpose to "collect payment from [State Farm] and other insurance companies and bolster personal injury claims." See Second Am. Compl. ¶ 58; see also id. ¶¶ 14-17, 19, 23, 36, 38, 58. Each of these paragraphs not only suggests, but plainly states that the defendants acted with a common purpose. See, e.g., id. ¶ 23 (alleging the defendants collectively implemented the standardized and predetermined treatment plan "for the personal financial benefit of Ficchi, Shenko, Ortho-Sport, Knox, and the Defendant Medical Offices . . . [and] to magnify and misstate the condition of the patients which in turn further encouraged the referral of patients/plaintiffs from personal injury attorneys to the Defendants' financial benefit. . . ."); id. ¶ 37 ("Knox, Shenko, Ficchi, the Defendant Medical Offices, and others understood their roles and the roles of the other Defendants and others in the conspiracy and how the actions of each person and entity benefitted them all.").

State Farm's allegations relating to Drs. Knox and Shenko acting for their "sole financial benefit" likely were not merely added out of the blue. In the Court's June 13, 2011 Memorandum and Order, it noted that "for state-law conspiracy claims in Pennsylvania, the intracorporate conspiracy doctrine holds that no claim for conspiracy can arise between an entity and its employees," but that narrow exceptions to the rule exist; "notably, the doctrine does not bar state law conspiracy claims when the employees have acted for their sole personal benefit." See Ficchi, 2011 WL 2313203, at *12. The Court continued that absent clarification from State

Farm as to how its state law conspiracy claims fit into such an exception, the intracorporate conspiracy doctrine precluded the assertion of State Farm's state law conspiracy claims. State Farm's substitution of the challenged language was merely an attempt to cure the deficiencies in its state law conspiracy claims. Indeed, no challenge to State Farm's state-law conspiracy claims was made based on the intracorporate conspiracy doctrine, presumably on account of this change.

Accordingly, the Court finds that the addition of the language to paragraphs 31 and 35 does not render State Farm's RICO and conspiracy allegations insufficient.


### E.  Motion For Rule 11 Sanctions

"The imposition of Rule 11 sanctions . . . requires only a showing of objectively unreasonable conduct." Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc., 57 F.3d 1215, 1225 (3d Cir. 1995). Rule 11 sanctions are appropriate "only if the filing of the Complaint constituted abusive litigation or misuse of the Court's process." Teamsters Local Union No. 430 v. Cement Express Inc., 841 F.2d 66, 68 (3d Cir.), cert. denied, 488 U.S. 848 (1988). The Third Circuit Court of Appeals has explained that sanctions, including fees, are appropriate only "in  . . . 'exceptional circumstance,' . . . where a claim or motion is patently unmeritorious or frivolous." Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 297 (3d Cir. 2010) (quoting Doering v. Union Cty. Bd. Of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988)).

The Knox/Shenko defendants assert that paragraph 39(b) (related to patient Denise Mitchell), and paragraph 39(c) (related to patient Rueben Lee) in the Second Amended Complaint lack evidentiary support and should serve as the basis for Rule 11 sanctions against

counsel for State Farm.  With respect to paragraph 39(b), the Knox/Shenko Defendants argue

that State Farm's allegation that Dr. Knox prepared two "virtually verbatim" medical reports for

two different accidents involving Ms. Mitchell is false, and they present a redline comparison of

the two reports to demonstrate that the documents are not in fact "verbatim."  As for paragraph

39(c), the Knox/Shenko Defendants again argue that they did not treat, bill, or document a leg

injury to Mr. Lee, and offer Dr. Shenko's therapy notes and Dr. Knox's report to demonstrate the

falsity of the allegation.

　　　　As an initial matter, the Court notes that at the time the Knox/Shenko Defendants filed

this motion, their motion to dismiss, which raised precisely the same arguments related to the

merits—rather than the sufficiency—of State Farm's pleadings, was pending before the Court.

At oral argument on both pending motions to dismiss, the Court explained to counsel that it

would not consider the merits of the documentary evidence attached to the Knox/Shenko motion.

Oral Arg. Tr. at 15-16.  Then, four days after oral argument, counsel for the Knox/Shenko

Defendants sent to counsel for State Farm the first of two communications threatening to pursue

Rule 11 sanctions unless they (1) offered satisfactory evidentiary support for their allegations or

(2) acceded to withdrawing the subject allegations from the Second Amended Complaint.  See

Knox/Shenko Rule 11 Mot. Ex. 1.  Approximately two months later, the Knox/Shenko

Defendants filed the pending motion.

　　　　Although the Court will not speculate about the motivations of defense counsel – indeed,

the Court presumes that defense counsel filed the instant motion out of a deep-seated belief in the

merits of his clients' position – the timing and tenor of this Rule 11 motion are curious at best.

Though the Knox/Shenko Defendants may well be vindicated in the end, a Rule 11 motion

34

"should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings where other motions are available for those purposes."[24]  Fed. R. Civ. P. 11 advisory committee's note.   Likewise, "Rule 11 motions [should not] be prepared to emphasize the merits of a party's position . . . [or] to intimidate an adversary into withdrawing contentions that are fairly debatable."  Id.

In light of this Court's ruling that State Farm's Second Amended Complaint has satisfied the pleading requirements of Rule 8(a) and Rule 9(b), the Court's words of caution that it would not consider documents extraneous to the Second Amended Complaint, and the Advisory Committee Notes cautioning against the inappropriate uses for Rule 11 motions, the Court cannot conclude at this time that the filing of the Second Amended Complaint constituted abusive litigation or misuse of the Court's process that would justify the institution of sanctions against counsel for State Farm at this time.[25]  Accordingly, the Knox/Shenko Defendants' motion for sanctions is denied.

---

[24] Indeed, the Knox/Shenko Defendants had already filed a motion to dismiss pursuant to Rule 12(b)(6).

[25] The Court's ruling should not be read to preclude the Knox/Shenko Defendants from renewing their Rule 11 motion at a later stage in the proceedings in the event discovery renders such a renewal appropriate.

**V.      CONCLUSION**

For the foregoing reasons, the Court will deny the Ficchi Defendants' motion to dismiss and Knox/Shenko Defendants' motions to dismiss and for Rule 11 sanctions.

An appropriate order consistent with this Memorandum follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge